UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC UTILITY DISTRICT NO. 1 OF<br>PEND OREILLE COUNTY, WASHINGTON<br>P.O. Box 190<br>Newport, WA 99156-0190<br><br>   Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>THE INTERIOR,<br>1849 C Street, N.W.<br>Washington, D.C. 20240<br><br>   Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY RELIEF

### PRELIMINARY STATEMENT

1.  Plaintiff Public Utility District No. 1 of Pend Oreille County, Washington ("District") brings this action against defendant United States Department of the Interior ("Interior") to have declared unlawful certain of Interior's actions that have violated recently-enacted Federal legislation and due process with respect to onerous conditions that Interior specified for inclusion in the Box Canyon Hydroelectric Project ("Box Canyon Project" or "Project") license issued to the District. More specifically, the District requests that this Court hold unlawful and set aside certain of Interior's regulations and decisions that have denied the District access to a trial-type hearing and the other statutory requirements of Section 241 of the Energy Policy Act of 2005 ("EPAct"); and declare that the District has a right to a hearing, to

propose alternative conditions, and to have applied to the Box Canyon Project license the other provisions of Section 241.

2.   Under Sections 4(e) and 18 of the Federal Power Act ("FPA"), 16 U.S.C. §§ 797(e) and 811 (2000), Interior has the right to prescribe certain conditions that must be included in hydroelectric licenses issued by the Federal Energy Regulatory Commission ("FERC").

3.   Interior prescribed such conditions for the District's Box Canyon Project relicensing proceeding, certain of which would cause considerable expense and were based on a factual predicate not supported by the record.

4.   During the relicensing process for its Box Canyon Project, the District made requests for an administrative appeal within Interior and an evidentiary hearing at the FERC to test what the District considered to be the inadequate evidentiary basis for certain of the burdensome and expensive conditions that Interior prescribed for inclusion in the District's hydroelectric license. All such requests were denied.

5.   FERC issued an order granting the District a new license for the Box Canyon Project on July 11, 2005 including, as FERC's interpretation of the law required, some of the unsupported, burdensome and expensive conditions prescribed by Interior, and while that order is currently effective, it is not yet final because it is subject to a pending rehearing request at FERC.

6.   On August 8, 2005, the EPAct was enacted. Section 241 of that Act, in order to remedy the denials of due process suffered by the District and other hydroelectric license applicants at Interior and other Federal agencies with authority to prescribe license conditions, amended the FPA to require, among other things, that trial-type hearings be provided by Interior

2

and the other Federal agencies for the purpose of establishing a record on which the prescribed license conditions would be based, and that parties may propose alternative license conditions.

7. Interior and other Federal agencies jointly promulgated an Interim Final Rule, effective November 17, 2005, to implement the requirement under Section 241 of the EPAct that such agencies hold evidentiary hearings in connection with prescribed license conditions. One provision promulgated by the Interim Final Rule makes the arbitrary and unfounded distinction, unsupported by anything in the EPAct, that the new hearing procedures only apply to hydroelectric proceedings in which no licensing order had been issued by FERC as of November 17, 2005. (*See* Exhibit A)

8. Considering the arbitrary eligibility parameters in the Interim Final Rule to be unlawful, the District made a formal request to Interior for an evidentiary hearing and submitted proposed alternative conditions pursuant to Section 241 of the EPAct. By letter dated February 1, 2006, Interior informed the District that it was rejecting the District's hearing request and proposed conditions on the basis that FERC issued a licensing order for the Box Canyon Project prior to November 17, 2005, and therefore the Box Canyon Project did not satisfy the eligibility parameters in the Interim Final Rule. (*See* Exhibit B)

9. Plaintiff brings this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and seeks a judicial declaration that Interior has abused its discretion and acted arbitrarily, capriciously, and otherwise contrary to law by (a) promulgating the provision of the Interim Final Rule on November 17, 2005, which set eligibility parameters for hearings that unlawfully, and arbitrarily and capriciously, excluded the Box Canyon Project licensing proceeding from the protections legislated by Section 241 of the EPAct, (b) rejecting the District's specific request for

3

a hearing and the application of other provisions of Section 241 of the EPAct to the Box Canyon Project license, and (c) denying the District fundamental due process rights before imposing burdensome and expensive conditions on the Box Canyon Project license.

## JURISDICTION AND VENUE

10. This case arises under the United States Constitution and the laws of the United States, and this Court therefore has Federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiffs' cause of action also arises under the judicial review provisions for administrative agency action in the APA, 5 U.S.C. §§ 701-706.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(2), because defendant Interior is headquartered in the District of Columbia.

12. This Court has the authority to grant the declaratory relief with respect to the actual controversy stated herein pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, and the APA, 5 U.S.C. § 706.

## THE PARTIES

13. Plaintiff District is a municipal corporation, organized under Title 54 of the Revised Code of Washington, which owns and operates an electric and water utility serving about 7,000 customers in Pend Oreille County, Washington. The District owns and operates the Box Canyon Project on the Pend Oreille River pursuant to an initial license issued by the Federal Power Commission in 1952 under Part I of the FPA.

14. Defendant Interior is an agency of the United States Government that has the responsibility, under certain circumstances, to formulate conditions to be included in hydroelectric licenses issued by FERC pursuant to the FPA, and is one of the agencies of the

Federal government to which administration and enforcement of the EPAct has been delegated by Congress. Energy Policy Act of 2005, Pub. Law 109-58, §241, 119 Stat. 594, 674-75 (2005).

## FACTS

### The Box Canyon Project

15. In 1952, the Federal Power Commission, the predecessor agency to FERC, granted the District a license pursuant to the FPA authorizing construction and operation of the Box Canyon Project on the Pend Oreille River for a 50-year term. The District began construction in 1952, and the Project commenced operations in 1955. The Project, designated by the Commission as Project No. 2042, is located near Ione, Washington.

16. The Box Canyon Project is located primarily on non-federal lands, but some of the lands occupied by parts of the reservoir are located within the Kalispel Indian Reservation.

17. The Box Canyon Project includes a 160-foot-long, 46-foot-high concrete dam; a 217-foot-long, horseshoe-shaped diversion tunnel; a forebay channel approximately 1,200 feet long and 60 feet wide; and a powerhouse containing four 15,000 kilowatt generators. The reservoir behind the dam to the south is nearly 56 miles long and encompasses nearly 9,000 acres.

### The District's Application for a New License for the Box Canyon Project

18. On January 21, 2000, the District filed an application with the FERC for a new license authorizing the continued operation of the Box Canyon Project. The Project operated under annual licenses while the relicensing proceeding was pending after its original license expired in February 2002.

19. Under Part I of the FPA, the FERC has the ultimate authority to issue a license for a non-federal hydroelectric project such as the Box Canyon Project, but Sections 4(e) and 18 of

5

the FPA confer mandatory hydroelectric license conditioning authority for certain matters to, among other agencies, Interior. 16 U.S.C. §§ 797(e) and 811 (2000). Under Section 4(e), Interior has the right to prescribe conditions for hydroelectric licenses that it believes are necessary to protect reservations under its jurisdiction, and under Section 18, Interior has the right to prescribe the inclusion of fishways for fish passage as a requirement for hydroelectric licenses. Up until the enactment of the EPAct, license applicants were not given an explicit statutory right to an administrative forum, such as a hearing, to challenge or assert disputes of material fact pertaining to Interior's issuance of a mandatory condition or prescription.

20. FERC interprets the Supreme Court's *Escondido* case to mean that FERC generally has no authority to modify conditions submitted for inclusion in a license by Interior under Sections 4(e) and 18 of the FPA, and that such conditions must be placed in the license even if FERC believes that they are unnecessary and unsupported by the record. *See Escondido Mut. Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765, 776-79 (1984).

21. On May 21, 2004, Interior issued conditions and prescriptions in the Box Canyon Project relicensing proceeding. Interior premised many of its FPA Section 4(e) and Section 18 conditions and prescriptions on erroneous conclusions about the impact of the Project on the environment, which were contrary to the record evidence. Specifically, Interior incorrectly asserted that the Project caused significant changes from pre-Project conditions in temperature, water levels, water velocities, aquatic plant occurrence, fish populations and makeup, and wildlife habitat areas. Although the District filed many reports, studies, data, and analyses with Interior in an attempt to show conclusively what the actual Project effects were, and why the conclusions drawn by Interior needed to be revised, Interior arbitrarily and capriciously ignored

this information. Interior's conditions and prescriptions would require actions by the District that would result in considerable expense.

22. On September 9, 2004, the District filed comments with Interior in response to an Interior Notice of Proposed Rulemaking, 69 Fed. Reg. 54602, that proposed to improve its deficient process for issuing mandatory license conditions by incorporating an expeditious administrative appeal process. The District in its comments urged Interior to adopt an administrative appeals process, apply it to the Box Canyon Project proceeding, and also to provide for trial-type hearings. Interior never finalized this Notice of Proposed Rulemaking.

23. By letter dated November 17, 2004, Interior denied the District's request to apply the proposed administrative appeal process to the Box Canyon Project mandatory license conditions.

24. Having failed to obtain an adequate forum at Interior to test the basis for Interior's burdensome license conditions, on December 10, 2004, the District filed with FERC a motion for an expedited evidentiary hearing on key disputed issues of material fact related to Interior's mandatory conditions. The District contended, *inter alia*, that it was entitled to a trial-type hearing pursuant to the APA because the disputed material facts could not be resolved on the written record. *See* 5 U.S.C. §§ 554, 556, 557, and 706(2)(A) (2000). FERC denied this motion in the context of its July 11, 2005 licensing order, stating generally that under FERC's regulations, hydroelectric proceedings are normally conducted using notice-and-comment hearings, but otherwise FERC did not address the need for trial-type hearings for mandatory conditions.

25. On July 11, 2005, the Commission granted the District a new 50-year license for the Project. 112 FERC ¶ 61,005 (2005) ("Order"). The new license contains the unneeded and

7

oppressively expensive conditions and prescriptions mandated by Interior. Significantly, two of the four sitting FERC Commissioners explicitly commented in the course of issuing the license that some of Interior's license conditions were not factually supported. FERC's then Chairman Pat Wood, in his concurrence, and FERC Commissioner Joseph T. Kelliher, in his partial dissent to the Order, specifically found that the record does not support Interior's mandatory fishway prescriptions. Nevertheless, these same conditions are now part of the new license Order because FERC does not believe it has authority to change them under the FPA.

26. Under the terms and conditions of its new license, due in large part to the unnecessary and unsupported conditions mandated by Interior, the cost of Project power will nearly double. This will have serious negative impacts on the economy of rural Pend Oreille County, including placing the future of the County's largest private employer, Ponderay Newsprint Company ("PNC"), at risk. PNC located in Pend Oreille County due to the availability of affordable power from the Box Canyon Project. PNC must keep its operating costs down to remain viable in the highly competitive global newsprint market. The closure of PNC as a result of this relicensing would have a potentially devastating economic impact on the 14,000 citizens of Pend Oreille County.

**The Energy Policy Act of 2005 and Section 241 Trial-Type Hearing Provisions**

27. The EPAct was signed into law by the President of the United States on August 8, 2005. Pub. Law 109-58, 119 Stat. 594 (2005). No language in the EPAct species its effective date. Therefore, according to established statutory interpretation principles, the EPAct was effective on the date of enactment, *i.e.*, the date signed by the President.

28. Unlike other legislation where Congress specified that newly enacted provisions would be effective only for future orders or proceedings, the EPAct is silent on this issue. Instead, it provides no direction as to the applicability of the EPAct to pending cases.

29. Section 241 of the EPAct, which amends the FPA, contains licensing reforms that constitute a major improvement in the hydroelectric licensing process and that will help assure that the mandatory license conditions and prescriptions issued by Interior and other agencies under Sections 4(e) and 18 of the FPA for inclusion in hydroelectric licenses issued by the FERC are cost-effective and supported by a factual record.

30. Section 241 specifically seeks to remedy several fundamental due process inadequacies that had previously existed regarding mandatory conditioning authority by Interior and other agencies. It provides that license applicants and other parties to a licensing proceeding are entitled to a trial-type hearing of any disputed issues of material fact with respect to mandatory prescriptions and conditions.

31. In addition, Section 241 provides license applicants the right to propose alternative measures. The EPAct sets forth procedures for the consideration of alternative conditions and prescriptions that require Interior and other conditioning agencies to demonstrate that they have applied "equal consideration" to several factors, including energy supply and costs.

32. Among the significant changes mandated by Section 241 regarding the issuance of Section 4(e) conditions and Section 18 prescriptions are the following:

- A license applicant is given the explicit right to a determination on the record, after opportunity for a trial-type hearing before the relevant agency, including

- discovery and cross-examination of witnesses, of any disputed issues of material fact with respect to the mandatory conditions or prescriptions.
- A license applicant is given the right to propose a cost or energy-saving alternative condition or prescription that must be accepted by the relevant Secretary upon a showing that the alternative condition provides adequate protection to the reservation or that the prescription will be no less protective than the fishway initially prescribed by the Secretary.
- In considering such an alternative, the relevant Secretary must consider evidence in the record including implementation costs and operational impacts for electricity production.
- For any Section 4(e) condition or Section 18 prescription or alternative measure adopted, the relevant Secretary is obligated to submit a written statement explaining the basis for the condition or prescription, and reason for not accepting an alternative. The statement must demonstrate that the Secretary gave equal consideration to the effects of the condition, prescription, and alternatives not adopted on energy supply, distribution, cost, and use; flood control; navigation; water supply; and air quality (in addition to the preservation of other aspects of environmental quality).
- The Commission is given the obligation to review these final conditions and prescriptions, and make a finding as to whether they are consistent with Part 1 of the FPA or other applicable law; the Commission may also refer such disputes to the Commission's Dispute Resolution Service for a non-binding advisory.

33. The District immediately sought to have the provisions of Section 241 apply to the Box Canyon Project relicensing proceeding. On August 10, 2005, two days after the EPAct was enacted, the District filed at FERC a Request for Rehearing of the licensing Order. As part of its Request for Rehearing, the District requested that FERC reopen the record to apply the EPAct and also restated and amended its earlier motion to stay the effectiveness of certain of the license conditions to allow time for compliance with the new law. The District also requested that FERC defer all consideration of the requests for rehearing on the merits pending compliance with the EPAct.

34. FERC denied the District's stay request on November 17, 2005 on the basis, among others, that it did not believe that the extent of expenditures on the conditions required to be made while review was pending justified a stay. However, the licensing Order remains non-final because FERC has yet to act on the merits of the District's Request for Rehearing and the rehearing requests of other parties. Significantly, rights to judicial review under the FPA only vest after a party seeks rehearing and the Commission has issued an order on rehearing. 16 U.S.C. § 825l (2000). Section 313(a) of the FPA provides that an entity may not seek judicial review of a Commission order under the FPA unless the entity "made application to the Commission for a rehearing thereon." 16 U.S.C. §825l (a) (2000). Accordingly, a Commission order issuing a license does not have true finality until all requests for rehearing have been addressed. *See, e.g., Jack M. Fuls*, 36 FERC ¶ 61,136 (1986).

35. Given that the Commission is still considering the Box Canyon Project's non-final licensing order, and the Commission routinely adduces additional record evidence during the pendency of non-final licensing orders, there is no reason to deny application of the new remedial statutory protections of the EPAct to the Box Canyon Project licensing proceeding.

## The Interim Final Rule

36.     Section 241 provides that within 90 days of the date of enactment of the EPAct, "the Secretaries of the Interior, Commerce, and Agriculture shall establish jointly, by rule, the procedures" for trial-type hearings.

37.     On November 17, 2005, the Departments of Interior, Commerce, and Agriculture jointly issued an Interim Final Rule implementing the trial-type hearing provisions of Section 241. *Resource Agency Procedures for Conditions and Prescriptions in Hydropower Licenses*, 70 Fed. Reg. 69,804 (Nov. 17, 2005) (to be codified at 7 C.F.R. pt. 1 (Agriculture), 43 C.F.R. pt. 45 (Interior), and 50 C.F.R. pt. 221 (Commerce)). The Rule was issued without the benefit of public comment and was a "final" rule made effective immediately to determine the rights of the parties subject to it. (*See* Exhibit A)

38.     A provision of the Interim Final Rule arbitrarily, and with no basis in the EPAct, restricts application of the statutory hearing procedures for licensing conditions to "any hydropower license proceeding for which the license has not been issued as of November 17, 2005." *See* "What is the purpose of this subpart, and to what license proceedings does it apply?", 43 C.F.R. § 45.1(d)(1), 70 Fed. Reg. at 69808, 69829-30.

39.     Notably, the Interim Final Rule cites as an example of a "material fact" that would be well-suited to resolution at a trial-type hearing precisely the type of disputed fact that the District would want to address at a trial-type hearing. The Interim Final Rule states:

> To use a fishway prescription as an example, issues of material fact could include but are not limited to issues such as whether the river has historically been a cold or warm water fishery or whether fish have historically been found above or below the dam. Such issues, if disputed and material to the prescription involved in a given case, appear well suited to the trial-type hearing mandated by EPAct.

70 Fed. Reg. at 69,809. The District has specifically disputed Interior's factual assertions about whether the river affected by the Box Canyon Project was historically a cold or

warm water fishery and whether certain species of fish have historically been found in the affected river reaches. Thus, Interior has acknowledged that such issues are well-suited to a trial-type hearing.

### Interior's Specific Denial of the District's Right to Trial-Type Hearing

40.     Two days following enactment of the EPAct, on August 10, 2005, the District wrote a letter to the Secretary of the Interior, the Honorable Gale A. Norton, requesting that Interior comply with its new hearing obligations under EPAct in a timely manner.

41.     In a letter, dated September 23, 2005, Lawrence A. Finfer, Interior Acting Director, Office of Policy Analysis, replied that the new statutory provisions would not be applied to the Box Canyon proceeding. That letter stated in part:

> As you are aware, however, on August 25, 2005, the Department filed with the Commission a petition entitled "Response to the Request for Rehearing of the Public Utility District No. 1 of Pend Oreille County, Washington." In that document, the Department stated its belief that "the new provisions in the EPA should not be applied retroactively to this licensing proceeding."

42.     On December 19, 2005, the District filed with Interior a formal request for hearing and proposed alternative conditions and prescriptions for the Box Canyon Project, in accordance with the procedures established under the Interim Final Rule.

43.     By letter dated February 1, 2006, Interior advised the District that it was rejecting the District's request for hearing and alternative conditions. Interior cited to its new regulations promulgated by the Interim Final Rule that limited the hearing procedures to those proceedings in which the FERC had not issued a licensing order as of November 17, 2005. (*See* Exhibit B)

### Actual Controversy with Ongoing Adverse Effects

44.     Interior's refusal to grant the District an evidentiary hearing is causing the District and the public immediate and substantial harm. If granted a trial-type evidentiary hearing, the District would demonstrate with record evidence that several of the factual assertions upon

13

which Interior is relying to impose burdensome and expensive license conditions are erroneous and unsupported, and that such conditions are not necessary or appropriate to mitigate any effects the Box Canyon Project is responsible for.

45.    Interior's burdensome and expensive conditions, which are based on its erroneous assertions, have now been incorporated into the license issued by FERC in 2005, which is presently effective. The District is currently required to expend funds to satisfy these conditions. These unnecessary and wasteful expenditures are currently causing and will continue to cause harm to the public interest by increasing the cost of power generated by this renewable resource.

46.    The District has exhausted all administrative remedies. Although Interior has requested comments on its Interim Final Rule, and the District has submitted comments, that Rule was final and effective as of November 17, 2005. There is no procedure at Interior for seeking rehearing of the Interim Final Rule. Interior's February 1, 2006 letter to the District rejected the District's hearing request on the basis of the Interim Final Rule, thus giving the Interim Final Rule a specific and immediate application to the District. The District knows of no procedure at Interior to seek further administrative review of the February 1, 2006 letter.

## CAUSES OF ACTION
### COUNT I

47.    Plaintiff repeats and realleges the assertions set forth in paragraphs 1 through 46 above as though fully set forth herein.

48.    Interior's promulgation of an applicability provision of the Interim Final Rule, specifically 43 C.F.R. §45.1(d)(1), which deprives the District access to a trial-type hearing on mandatory licensing conditions, is directly contrary to Section 241 of the EPAct, which provides that the District is entitled to such a hearing and license conditions that are based thereon. This

provision of Interior's Interim Final Rule is therefore not in accordance with law, in violation of 5 U.S.C. § 706(2)(A).

49. Nothing in the EPAct states that Section 241 shall not be applicable to pending proceedings such as the Box Canyon Project relicensing proceeding, and settled law and precedent supports the interpretation that new laws such as Section 241 should apply to pending proceedings in many circumstances, including, as here, where the change was procedural, remedial, and gives "comprehensive effective to a new law Congress considers salutatory." *Landgraf v. USI Film Products*, 511 U.S. 244, 267-76 (1994). Interior exceeded its statutory authority and acted contrary to the EPAct by selecting an arbitrary date for implementation of Section 241 of the EPAct that excluded its applicability to the District's pending proceeding.

## COUNT II

50. Plaintiff repeats and realleges the assertions set forth in paragraphs 1 through 46 above as though fully set forth herein.

51. Even if Interior had some discretion under Section 241 to adopt regulations that did not apply the statutory hearing procedures to certain hydroelectric licensing proceedings, the decision in the Interim Final Rule to exclude all pending licensing proceedings for which a non-final licensing order had been issued as of November 17, 2005, was unsupported, an abuse of discretion, arbitrary and capricious, and otherwise not in accordance with law in violation of 5 U.S.C. § 706(2)(A).

## COUNT III

52. Plaintiff repeats and realleges the assertions set forth in paragraphs 1 through 46 above as though fully set forth herein.

53.     Interior's agency action, as taken through its February 1, 2006 letter rejecting the District's request for a trial-type hearing and proposed alternative conditions, is directly contrary to Section 241 of the EPAct, which provides that the District is entitled to such a hearing and other procedures. That agency action is therefore an abuse of discretion, arbitrary and capricious, and otherwise not in accordance with law in violation of 5 U.S.C. § 706(2)(A).

## COUNT IV

54.     Plaintiff repeats and realleges the assertions set forth in paragraphs 1 through 46 above as though fully set forth herein.

55.     Interior's agency action, as taken through the promulgation of 43 C.F.R. § 45.1(d)(1) in the Interim Final Rule and as taken through the February 1, 2006 letter specifically rejecting the District's request for a trial-type hearing, violates procedural due process because it denies the District access to a forum in which it could address disputes of material fact with regard to conditions and prescriptions imposed by Interior. As the agency action in adopting mandatory licensing conditions has an immediate and adverse effect on the District and the public interest, Interior has violated the District's constitutional right to due process in violation of 5 U.S.C. § 706(2)(B). This action is therefore an abuse of discretion, arbitrary and capricious, and not in accordance with law.

WHEREFORE, Plaintiff respectfully requests the Court to issue an Order:

1.     Declaring Interior's action in promulgating 43 C.F.R. §45.1(d)(1) in the Interim Final Rule that excluded the District from receiving a trial-type hearing and other procedures as required by Section 241 of the EPAct to be arbitrary, capricious, and otherwise not according to law, and that 43 C.F.R. §45.1(d)(1) is therefore invalid;

2. Declaring Interior's specific rejection of the District's formal request for a trial-type hearing, the District's proposed alternative conditions and compliance with the other provisions of Section 241 of the EPAct to be arbitrary, capricious, and otherwise not according to law;

3. Declaring Interior's refusal to grant the District a hearing to be a violation of the District's due process rights and to be arbitrary, capricious, and otherwise not according to law;

4. Declaring that the District has a right to a trial-type hearing, to propose alternative license conditions, and to be accorded the benefits of all provisions in Section 241 of the EPAct with respect to conditions on its license for the Box Canyon Project;

5. Awarding to Plaintiffs their costs, fees, and expenses, including attorneys' fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6. Awarding the Plaintiffs such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

*/s/ James B. Vasile*

James B. Vasile (D.C. Bar No. 205591)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, NW, Suite 450
Washington, DC 20005
(202) 508-6600 (telephone)
(202) 509-6699 (facsimile)

Attorneys for Plaintiffs

Dated: March 1, 2006