IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC UTILITY DISTRICT NO. 1 OF<br>PEND OREILLE COUNTY, WASHINGTON | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06cv00365 RMC |
| | ) | |
| UNITED STATES DEPARTMENT OF THE<br>INTERIOR, | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| | ) | |

DEFENDANT'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM

## TABLE OF CONTENTS

PAGE

Motion and Introduction to Supporting Memorandum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     Statutory and Regulatory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     Administrative Procedure Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.     The Federal Power Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       C.     The Energy Policy Act of 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       D.     The Interim Final Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.    Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       A.     Plaintiffs' Complaint Should be Dismissed Pursuant to Rule
              12(b)(1) because Exclusive Jurisdiction over FERC License
              Orders is Vested in the Courts of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       B.     Plaintiffs' Complaint Should be Dismissed Pursuant to Rule 12(b)(6)
              because The Interim Final Rules are Consistent With and Based on
              the Express Language of Section 241 of the Act . . . . . . . . . . . . . . . . . . . . . . . 19

       C.     The Interim Final Rules and Interior's February 1, 2006 Letter are
              Lawful and did not Deny Plaintiff Due Process . . . . . . . . . . . . . . . . . . . . . . . . 23

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## **Motion and Introduction to Supporting Memorandum**

Defendant, United States Department of the Interior ("Interior"), hereby moves for dismissal of plaintiff's Complaint for Declaratory Relief pursuant to Rule 12(b)(1), or in the alternative Rule 12(b)(6).  The complaint challenges Interior's November 17, 2005 Interim Final Rules on procedures for developing environmental conditions and fishway prescriptions in hydropower licenses (hereafter "Interim Final Rules" or "rules").  70 Fed. Reg. 69804 *et seq.* These rules implement section 241 of the Energy Policy Act of 2005 ("the Act"), Public Law No. 109-58, which, among other things, amended sections 4(e) and 18 of the Federal Power Act, 16 U.S.C. § 791, to provide applicants and other parties to license proceedings the opportunity for trial-type hearings on disputed issues of material fact in connection with conditions and prescriptions recommended for inclusion in hydropower licenses and the opportunity to propose alternative conditions or fishway prescription.  Pub. L. No. 109-58, § 241(c), 16 U.S.C. §§ 823d(a)(1), (b)(1).

The rules expressly apply to proceedings "for which [a] license has not been issued as of November 17, 2005 ."  43 C.F.R. § 45.1(d).  Plaintiff, whose license was issued several months before enactment of the Act, contends that application of the rules only to pending license applications unlawfully prevents it from taking advantage of the Act's new procedures.  As explained below, the complaint constitutes a challenge to plaintiff's license itself, and Congress has vested exclusive jurisdiction over license challenges in the Courts of Appeal.  See FPA § 313, 16 U.S.C. § 825*l*(b).  Accordingly, this Court lacks subject matter jurisdiction and dismissal is required under Rule 12(b)(1).

Specifically, the Act and its implementing regulations establish new procedures which authorize applicants and other parties to hydropower license proceedings before the Federal Energy Regulatory Commission ("FERC" or "Commission") to (1) request trial-type hearings for resolving disputed issues of material fact underlying conditions and prescriptions in hydropower licenses; and (2) recommend alternative conditions and prescriptions.  Previously, applicants or other parties to licensing proceedings could dispute such facts or suggest alternatives through comments to FERC or Interior, rather than through trial-type hearings.  See, e.g., 18 C.F.R. § 5.23(e) (commenting to FERC); 70 Fed. Reg. 69804 (discussing Interior's "Mandatory Conditions Review Process," which authorizes public comment on conditions and prescriptions).  Consistent with the Act, Interior's regulations extend these new procedures to license applicants, but not to licensees such as plaintiff.

Notably, the conditions and prescriptions which plaintiff would seek to revisit through a trial-type hearing were imposed on plaintiff in a license issued on July 11, 2005, several weeks before the effective date of the new Act (August 8, 2005) and long before the challenged regulations were issued.  Although plaintiff characterizes its complaint not as a challenge to the license conditions themselves, but instead as a challenge to Interior's regulations and to Interior's February 1, 2006 letter rejecting a request for a hearing, among other things, plaintiff is irrefutably seeking relief from the license conditions.  See Complaint at ¶ 24 (referring to the "burdensome license conditions"); ¶26 (referring to the "unnecessary and unsupported conditions" as causing the "cost of project power" to "nearly double").   Thus, plaintiff is actually challenging the license itself, but such challenges may only be brought in the Courts of Appeals. 16 U.S.C. § 825*l*(b) ("[a]ny party  . . . aggrieved by an order issued by the Commission

. . . may obtain a review of such order in the United States Court of Appeals" and such jurisdiction "shall be exclusive"). Plaintiff may not, through artful pleading, circumvent this judicial review provision set by Congress. See California Save Our Streams Council, Inc. v. Yeutter, 887 F.2d 908, 912 (9th Cir. 1989) (characterizing a similar challenge as "an assault on an important ingredient of the FERC license" and concluding that jurisdiction lies in the courts of appeals). For this reason, defendant's 12(b)(1) motion to dismiss should be granted.

In the alternative, should this Court conclude that it has jurisdiction over plaintiff's claims, dismissal is nonetheless proper under Rule 12(b)(6) because plaintiff has not stated a claim upon which relief can be granted. As explained herein, the Interim Final Rules, particularly 43 C.F.R. § 45.4(d)(1), are consistent with the express language of section 241 of the Act, which applies only to a "license applicant" and any other party to a license proceeding. Plaintiff, however, is a licensee and section 241 of the Act neither requires nor authorizes Interior to provide trial-type hearings to licensees, or to consider alternative conditions or prescriptions recommended by a licensee. Thus, the new Act does not provide for the relief plaintiff seeks. For this same reason, Interior did not deny plaintiff due process. See Complaint ¶ 55. Neither the Interim Final Rules, particularly 43 C.F.R. § 45.1(d), nor Interior's February 1, 2006 letter, denied plaintiff anything to which it was entitled under section 241 of the Act. Consequently, plaintiff's complaint is legally insufficient, and dismissal is warranted under rule 12(b)(6).

I.      **Statutory and Regulatory Background.**

    A.      <u>Administrative Procedure Act</u>.

    The APA states that a reviewing court shall, "hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] (B) contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2).  At the merits stage of litigation, this highly deferential standard of review requires a court to determine whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." <u>National Committee for the New River v. FERC</u>, 373 F.3d 1323 (D.C. Cir. 2004), (quoting <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971)).  However, section 704 of the APA only creates a right to judicial review for "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy* in a court."  5 U.S.C. § 704 (emphasis added).  As explained below, a specific jurisdictional provision of the Federal Power Act, 16 U.S.C. § 825*l*(b), provides an adequate remedy in the Courts of Appeals. Therefore this Court lacks jurisdiction.

    B.      <u>The Federal Power Act</u>.

    The Federal Power Act ("FPA") authorizes FERC to issue licenses "for the development, transmission, and utilization of power across, along, from, or in" navigable waters and waters otherwise subject to congressional regulation under the Commerce Clause, and on public lands and reservations of the United States.  <u>See</u> 16 U.S.C. § 797(e).  Such licenses have terms of 30 to 50 years.  <u>See</u> 16 U.S.C. §§ 799, 808(e).  Interior exercises various FPA authorities, including

4

authority to develop conditions and prescriptions, in FERC license proceedings.  See 16 U.S.C. §§ 797(e), 803(a), 803(j) and 811.

Specifically, Section 4(e) of the FPA, 16 U.S.C. § 797(e), authorizes the Secretaries of Agriculture and Interior to establish mandatory conditions necessary for the adequate protection and utilization of reservations.[1]

> [L]icenses shall be subject to and contain such conditions as the Secretary of the department under whose supervision such reservation falls shall deem necessary for the adequate protection and utilization of such reservation.

Id.  The Supreme Court has held that FERC has no authority to reject or modify section 4(e) conditions deemed necessary by the Secretary of Agriculture or Interior.  See Escondido Mutual Water Co. v. La Jolla Band of Mission Indians, 466 U.S. 765, 772-79 (1984).  FERC may express its disagreement with the conditions, and it may elect not to issue a license, but it must include the conditions in any license it issues.  Id. at 779, n. 20.  Further, only a federal Court of Appeals, pursuant to 16 U.S.C. § 825l(b), may review the validity of such conditions.  Id. at 777.

Similarly, section 18 of the FPA, 16 U.S.C. § 811, authorizes the Secretaries of Commerce and Interior to prescribe fishways at FERC-licensed hydropower projects:

> The Commission shall require the construction, maintenance, and operation by a licensee at its own expense of such . . . fishways as may be prescribed by the Secretary of the Interior or the Secretary of Commerce, as appropriate.

As with section 4(e) conditions, FERC has no authority to reject or modify section 18 fishway prescriptions.  See Bangor Hydro-Electric Co. v. FERC, 78 F.3d 659, 662 (D.C. Cir. 1996); American Rivers, Inc. v. FERC, 201 F.3d 1186, 1210 (9th Cir. 2000); Wisconsin Power and

---

[1] The term "reservation," as used in the FPA, includes certain lands and facilities under the jurisdiction of the Secretary of Agriculture or Interior. 16 U.S.C. § 796(2).  With regard to Interior, the term expressly includes federal Indian reservations.  Id.

Light Co. v. FERC, 363 F.3d 453, 460 (D.C. Cir. 2004). FERC may express its disagreement with the prescriptions, but the federal Courts of Appeals, pursuant to 16 U.S.C. § 825*l*(b), possess the sole authority to review prescriptions once they have been incorporated into a license. See Wisconsin Power, 363 F.3d at 460.[2/]

      C.      The Energy Policy Act of 2005.

      On August 8, 2005, the President signed into law the Energy Policy Act of 2005 ("the Act"), Pub. L. No. 109-58 § 241. The Act amended sections 4(e) and 18 of the FPA to provide parties to a FERC licensing proceeding the opportunity for expedited trial-type hearings on disputed issues of material fact:

> [t]he license applicant and any party to the proceeding shall be entitled to a determination on the record, after opportunity for an agency trial-type hearing of no more than 90 days, on any disputed issues of material fact with respect to [section 4(e)] conditions [or section 18 fishways]. All disputed issues of material fact raised by any party shall be determined in a single trial-type hearing to be conducted by the relevant resource agency . . . . Within 90 days of [enactment], the Secretaries of the Interior, Commerce and Agriculture shall establish jointly, by rule, the procedures for such expedited trial-type hearing, including the opportunity to undertake discovery and cross-examine witnesses, in consultation with the Federal Energy Regulatory Commission.

Pub. L. No. 109-58, § 241(a), (b), 16 U.S.C. §§ 797(e), 811 (2005). Section 241 of the Act further requires that the trial-type hearing process fit within FERC's time frame for license proceedings.

_____

[2/] State and federal resource agencies and affected Indian tribes may also submit recommendations to FERC pursuant to section 10(a) of the FPA, 16 U.S.C. § 803(a), while state and federal fish and wildlife agencies may submit recommendations to FERC pursuant to section 10(j) of the FPA, 16 U.S.C. § 803(j). Unlike section 4(e) conditions and section 18 prescriptions, FERC may modify or reject section 10(a) recommendations if they are not in the public interest, or section 10(j) recommendations if FERC determines that they are inconsistent with the FPA or other applicable law and that FERC's alternative conditions satisfy the substantive standards of 16 U.S.C. § 803(j)(1).

The Act also added a new section 33 to the FPA which provides that "the license applicant or any other party to the license proceeding may propose an alternative" condition or fishway prescription.  Pub. L. No. 109-58, § 241(c), 16 U.S.C. §§ 823d(a)(1), (b)(1).  The Secretary of the applicable agency must accept the proposed alternative if the Secretary determines, "based on substantial evidence provided by the license applicant, any other party to the license proceeding, or otherwise available to the Secretary" that, (1) with respect to section 4(e) conditions, the alternative condition provides for the adequate protection and utilization of the reservation; or, (2) with respect to section 18 conditions, that the alternative prescription will be no less protective than the fishway originally prescribed by the Secretary.  Id.  In addition, adoption of the proposed alternative condition or prescription depends upon the appropriate Secretary's concurrence that such alternative condition or prescription will (1) cost significantly less to implement; or (2) result in improved electricity production.  Id.

D.      The Interim Final Rules.

In response to Congress's mandate, Interior, jointly with the Departments of Agriculture and Commerce, published regulations implementing section 241 of the Act on November 17, 2005.  70 Fed. Reg. 69804.  The Interim Final Rules became effective upon publishing in the Federal Register.  Id.  The three Departments published a single preamble for the regulations, and substantively identical regulations for each department.  Id.  Interior's regulations are codified at 43 C.F.R. Part 45,[3] and consistent with those of Agriculture and Commerce, are

_____

[3] The structure and content of the regulations for each Department are the same, but include references to different Departmental names and organizational components.  See 70 Fed. Reg. at 69808.  The three versions also vary somewhat in their references to FPA authorities because Agriculture does not develop section 18 prescriptions and Commerce does not develop section 4(e) conditions.  Interior may do either.  Id.  The regulations promulgated by the Department of

organized into three subsections: (1) General Provisions, (2) Hearing Process,[4] and (3) Alternatives Process.[5]  Id. at 69808-69815.

The General Provisions subsection makes clear that the trial-type hearings and alternatives processes apply only to cases in which Interior is exercising section 4(e) or section 18 mandatory authorities.  43 C.F.R. § 45.1(a).  It provides guidance for implementing the Act's express mandates by applying the new procedures to license proceedings where no license had been issued as of November 17, 2005 (the effective date of the regulations) and where Interior submits (or had submitted) one or more mandatory conditions or prescriptions.  43 C.F.R. § 45.1(d)(1).  In addition, the regulations include deadlines and instructions for filing trial-type hearing requests and alternative conditions or prescriptions in license proceedings where Interior already filed its preliminary conditions or prescriptions with FERC as of November 17, 2005.  43 C.F.R. §§ 45.1(d)(2), 45.4.

## II.     Factual Background

The Box Canyon Hydroelectric Project is located on the Pend Oreille River in Washington and Idaho.  Plaintiff's original license for the Project, issued in 1952, expired on

---

Agriculture are codified at 7 C.F.R. Part 1, while the regulations promulgated by the Department of Commerce are codified at 50 C.F.R. Part 221.

[4] The Hearing Process subsection includes detailed procedures for filing and processing trial-type hearing requests.  43 C.F.R. §§ 45.10-45.60.  This subsection is organized in several categories: Representatives, Document Filing and Service, Initiation of Hearing Process, General Provisions Related to Hearings, Prehearing Conferences and Discovery, and Hearing, Briefing, and Decision.  Id.

[5] The Alternatives Process subsection implements new section 33 of the FPA and addresses alternative conditions and prescriptions.  43 C.F.R. §§ 45.70-45.74.  This subsection guides parties participating in the alternatives process and, in addition, repeats the standards already set forth in the Act.  Id.

8

January 31, 2002.[6/]  <u>Public Utility District No. 1 of Pend Oreille County</u>, 112 FERC ¶ 61,055, 61,405 (July 11, 2005) (Order Issuing New License).  Plaintiff filed an application for a new license on January 21, 2000.  <u>Id</u>. at 61,406.

On September 4, 2001, FERC issued a notice that plaintiff's license application was ready for environmental analysis and solicited comments, recommendations, terms and conditions, and prescriptions.  <u>Id</u>.  Interior responded to this notice on November 5, 2001, by filing Preliminary Conditions, Prescriptions, and Recommendations pursuant to Sections 4(e), 18, 10(j), and 10(a) of the Federal Power Act.[7/]  <u>Id</u>.  Interior filed Modified Conditions and Prescriptions on May 21, 2004.  <u>Id</u>. at 61,412; Complaint at ¶ 21.

On July 11, 2005, FERC took action on plaintiff's pending license application, issuing a new 50-year license effective on that date, adopting various conditions and prescriptions in accordance with sections 797(e) and 811 of the FPA.  <u>Id</u>. at 61,424.  Since FERC issued the new license, plaintiff has made several unsuccessful attempts to avoid its binding effect.  First, the District sought to stay most of the license conditions, but FERC denied plaintiff's request.  <u>Public Utility District No. 1 of Pend Oreille County</u>, 113 FERC ¶ 61,166 (Nov. 17, 2005) (Order

---

[6/] Since that time and until FERC issued a new license on July 11, 2005, the District operated the Project under annual licenses issued by FERC.  112 FERC at 61,405.  These annual licenses allowed plaintiff to continue to operate the Project pursuant to the terms of its original license pending disposition of its new license application.  <u>Id</u>.

[7/] Interior's section 4(e) conditions are designed to protect the trust resources of the Kalispel Indian Reservation, approximately ten percent of which is flooded by the Box Canyon Project. 112 FERC at 61,409.  Among those resources is the reservation fishery, including native bull trout, which are listed as threatened under the Endangered Species Act, 16 U.S.C. 1531 et seq. Interior's section 18 prescriptions, and some of its section 4(e) conditions, are designed to protect this listed species.

Denying Stay and Granting Extension of Time).  Next, plaintiff sought similar relief through a

writ of mandamus filed in the District of Columbia Court of Appeals.  The court issued an

administrative stay for 47 days while it considered the merits of plaintiff's motion, then denied

the motion, and dissolved the administrative stay.  In re: Public Utility District No. 1 of Pend

Oreille County, Washington, No. 05-1307, 2005 U.S. App. Lexis 20935 (D.C. Cir. Sept. 26,

2005).  Finally, the District sought from FERC a six-month extension of license deadlines,

effectively asking again for a stay of the license.  FERC also denied this request.  Public Utility

District No. 1 of Pend Oreille County, P-2042-032 (Nov. 22, 2005) (Order Denying Extension of

Time To Comply With License Conditions).[9]  Plaintiff's new license has been effective since

issuance on July 11, 2005, and with the exception of the 47 days during the Court of Appeals'

administrative stay, it has been binding on plaintiff, a licensee, since that date.

      Since the enactment of section 241, plaintiff has twice requested that Interior apply the

provisions for trial-type hearings in section 241 of the Act to the Box Canyon License

Proceeding.  Complaint at ¶¶ 40-43.  On August 10, 2005, two days after enactment of the

Energy Policy Act, plaintiff first requested that Interior provide a trial-type hearing.  Consistent

with its August 25, 2005 response to plaintiff's request for rehearing, Interior responded on

September 23, 2005, stating that Interior would not apply section 241 retroactively to the Box

Canyon License proceeding.  After Interior published its Interim Final Rules, plaintiff submitted

a second request for hearing and alternative conditions and prescriptions on December 19, 2005.

Citing its Interim Final Rules, which apply only to proceedings for which FERC had not issued a

---

[9] Order publically available on FERC's website at http://www.ferc.gov/docs-filing/elibrary.asp.

license as of November 17, 2005, Interior rejected plaintiff's request on February 1, 2006.  <u>See</u>

Complaint Exhibit B.

## III.     STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(1), even though the defendant is the

movant, the plaintiff bears the burden of demonstrating that the Court has jurisdiction to decide

its case.  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994) ("Federal courts are

courts of limited jurisdiction . . . It is to be presumed that a cause lies outside this limited

jurisdiction, and the burden of establishing the contrary rests upon the party asserting

jurisdiction.") (citations omitted).  In considering the motion, the court must draw all reasonable

inferences in favor of the plaintiff.  <u>Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.</u>, 52

F.3d 373, 374 (D.C.Cir.1995).  However, "the court need not accept inferences drawn by

plaintiffs if such inferences are unsupported by the facts set out in the complaint."  <u>Kowal v.</u>

<u>MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C.Cir.1994).  "Nor must the court accept

legal conclusions cast in the form of factual allegations."  <u>Id</u>.  In resolving a motion to dismiss

for lack of subject matter jurisdiction, the Court is not limited to allegations in the complaint, but

may consider materials outside the pleadings.  <u>Shulman v. Voyou, LLC</u>, 305 F. Supp. 2d 36, 38-

39 (D.D.C. 2004).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), well-pleaded

allegations of the complaint must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972);

<u>Gross v. Winter</u>, 876 F.2d 165 (D.C. Cir. 1989).  So construed, the court may not dismiss the

complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of the claim which would entitle him or her to relief.  <u>Hishon v. King &</u>

Spalding, 467 U.S. 69, 73 (1984).  In spite of these standards, however, it is not proper for the

court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the

defendants have violated the . . . laws in ways that have not been alleged."  Associated General

Contractors v. California State Council, 459 U.S. 519, 526 (1983).

## IV.     ARGUMENT

### A.     Plaintiffs' Complaint Should be Dismissed Pursuant to Rule 12(b)(1) because Exclusive Jurisdiction over FERC License Orders is Vested in the Courts of Appeals.

Plaintiff presents what is in reality a challenge to its FERC license under the guise of a

procedural challenge to the inclusion of certain mandatory conditions in its hydropower license.

Plaintiff asserts that it has suffered a procedural deprivation: the denial of a trial-type hearing in

connection with conditions and prescriptions imposed by Interior in alleged contravention of

section 241 of the Act.  Plaintiff contends that jurisdiction is appropriate in district court under

the federal question statute, 28 U.S.C. § 1331, and the APA, 5 U.S.C. § 701 et seq.   Complaint

¶ 10.  As explained below, plaintiff is incorrect.

When a license is issued for a project on federal lands, Section 4(e) of the FPA requires

FERC to include in the license any conditions "deemed necessary" by the federal resource

agency that exercises jurisdiction over the public land at issue.  16 U.S.C. § 797(e); see also

Escondido Mutual Water Co. v. La Jolla Band of Mission Indians, 466 U.S. 765, 772-79 (1984).

Similarly, Section 18 of the FPA requires that FERC include in a license any fishway

prescriptions deemed necessary by the Secretary of the Interior or the Secretary of Commerce.

16 U.S.C. § 811; American Rivers v. FERC, 201 F.3d 1186 (9th Cir. 1999); Bangor Hydro-

Electric Co. v. FERC, 78 F.3d 659 (D.C. Cir. 1996).  The process by which Interior develops

12

section 4(e) conditions and section 18 prescriptions is incorporated into the FERC licensing

process.  See 70 Fed. Reg. at 69804, 69805-06.

As explained above, FERC issued an order granting plaintiff its license on July 11, 2004.

Public Utility District No. 1 of Pend Oreille County, 112 FERC ¶ 61,055, 61,405 (July 11,

2005).  The FPA makes clear that a party to a FERC licensing proceeding who is dissatisfied

with an order issued by FERC must file a petition for rehearing within 30 days of FERC's order.

FPA Section 313(a), 16 U.S.C. § 825*l*(a).  Plaintiff has done so, and its challenge is presently

pending before FERC, including the claim that plaintiff is entitled to a trial-type hearing.  If

plaintiff is dissatisfied with FERC's order on rehearing, it may appeal the order under the

exclusive review provision of the FPA, which directs that "[a]ny party . . . aggrieved by an order

issued by the Commission . . . may obtain a review of such order in the United States Court of

Appeals." 16 U.S.C. § 825*l*(b).  The jurisdiction of the Court of Appeals "shall be exclusive" and

is limited to issues that were "urged before the Commission in the application for rehearing." Id.

Several courts have acknowledged the exclusive jurisdiction of the Courts of Appeals in

license challenges under the FPA.  In California Save Our Streams Council, Inc. v. Yeutter, 887

F.2d 908, 912 (9th Cir. 1989), the Ninth Circuit considered the precise question at issue here:

whether the FPA's jurisdictional grant of authority to review FERC's actions extends to cover

actions of another agency taken in the course of a license proceeding.  The plaintiff in California

Save Our Streams had challenged the U.S. Forest Service's compliance with the procedural

requirements of the National Environmental Policy Act, 42 U.S.C. §4321 et seq. ("NEPA"),

when it imposed conditions in a FERC license proceeding. Id. at 910.[9]  The Ninth Circuit

concluded that exclusive jurisdiction rested with the Court of Appeals, reasoning that plaintiff's

case, in the end, was really just "an attempt to restrain the licensing procedures authorized by

FERC," and that "the practical effect of the action in district court is an assault on an important

ingredient of the FERC license."[10]  Id. at 912.  The court also noted the possibility for increased

delay and duplicative suits, stating, "[t]he point of creating a special review procedure in the first

place is to avoid duplication and inconsistency . . . . Appellants' theory would resurrect the very

problems that Congress sought to eliminate."  Id.  See also Florida Power & Light Co. v. Lorion,

470 U.S. 729, 740 (1985) (noting Congressional purpose of promoting efficiency by eliminating

redundancy and inconsistency at the district court level); Harrison v. PPG Industries, Inc., 446

U.S. 578, 593 (1980) ("The most obvious advantage of direct review by a court of appeals is the

time saved compared to review by a district court, followed by a second review on appeal").

_____

[9] In FERC license proceedings, FERC is the action agency and obligated to comply with NEPA. See LaFlamme v. FERC, 945 F.2d 1124, 1127 (9th Cir. 1991) ("[l]icensing decisions are also subject to NEPA," and "[t]he Commission was the lead agency in reviewing Sayles' license."). Under NEPA, FERC must evaluate the impacts associated with issuing a hydropower license for a term of 30 to 50 years.  FERC's assessment is incorporated into the licensing process, and FERC's regulations include specific guidance, depending on whether FERC issues a draft environmental document. 18 C.F.R. § 5.24 (Applications not requiring a draft NEPA document); 18 C.F.R. § 5.25 (Applications requiring a draft NEPA document).  FERC's NEPA process is a critical component of the licensing process.

[10] District courts in the Ninth Circuit have also concluded that section 313 of the FPA, 16 U.S.C. § 825l(b), grants the Courts of Appeals exclusive jurisdiction to hear challenges to FERC orders. See Idaho Rivers United v. Foss, 373 F. Supp. 2d 1158 (D. Idaho. 2005) (holding that section 313 of the FPA preempted district court jurisdiction to hear plaintiff's challenge to biological opinion issued in a FERC license proceeding); Southwest Center for Biological Diversity v. FERC, 967 F. Supp. 1166, 1177 (D. Ariz. 1997) (finding that FPA exclusive jurisdiction provision barred district court from exercising jurisdiction over claims alleging that the U.S. Forest Service violated the ESA by failing to recommend flow levels).

Decisions in this circuit are consistent with the holding in California Save Our Streams. Recently, this Court considered the FPA's exclusive jurisdictional provision in an analogous case involving a challenge in district court to a biological opinion issued by National Marine Fisheries Service ("NMFS") pursuant to section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq., in the course of a FERC license proceeding.[11]  See City of Tacoma v. NMFS, 383 F. Supp. 2d 89 (D. D.C. 2005).   The section 7 consultation process and biological opinion in City of Tacoma are analogous to the conditions imposed by Interior here, and were important ingredients of the FERC license.  Plaintiff had argued that its action was filed against NMFS, not FERC, and that it arose under the Endangered Species Act and the APA, not the FPA.  As such, plaintiff contended, an independent cause of action lies, because plaintiff is seeking review of alleged failures on the part of NMFS to follow certain procedural and substantive steps required by a statute other than the FPA.  This Court rejected these arguments. Noting that plaintiff had "carefully craft[ed] its complaint to avoid directly implicating the FPA," this Court concluded that the action was but a "thinly veiled collateral attack on the FERC licensing process."  Id. at 92.  To rule otherwise would allow the plaintiff to "evade the clear jurisdictional provision of the FPA, and Congress's clear intent in enacting the special FPA

_____

[11] In issuing a hydropower license, FERC must comply with Section 7 of the ESA, 16 U.S.C. § 1536, and consult with the U.S. Fish and Wildlife Service ("USFWS") or the National Marine Fisheries Service ("NMFS"), depending on the species affected by the action.  18 C.F.R. § 4.34(d) (2005).  As with processes for development of section 4(e) conditions and section 18 prescriptions, the Section 7 consultation process is incorporated into the FERC license proceeding, and FERC routinely includes license conditions deemed necessary by the USFWS and NMFS pursuant to section 7 of the ESA.  See San South Juaquin Irr. Dist. and Oakdale Irr. Dist., 114 FERC ¶ 62,081, 2006 FERC LEXIS 182, at 20-22 (2006); Portland General Electric Co., 113 FERC ¶ 62,186, 64,593 (2006); Portland General Electric Co. and The Confederated Tribes of the Warm Springs Reservation of Oregon, 111 FERC ¶ 61,450, 62,920-21 (2005).

15

review process." <u>Id.</u> at 93; <u>cf.</u> <u>California Save Our Streams</u>, 887 F.2d at 912 ("we do not believe

that the jurisdictional remedy prescribed by Congress hangs on the ingenuity of the complaint.").

This Court reached a similar result in another recent FPA case. In <u>Public Utility District</u>

<u>No. 1 of Snohomish Cty. v. FERC</u>, 315 F. Supp. 2d 89 (D. D.C. 2004), this Court granted

defendant's motion to dismiss a complaint in which plaintiff had alleged that FERC violated the

Sunshine Act, 5 U.S.C. § 552b, in an energy contract abrogation case pending before FERC.

This Court concluded that it lacked jurisdiction to review the underlying FERC order under 16

U.S.C. § 825*l*(b),  and dismissed the complaint. In doing so, this Court stated, "16 U.S.C.

§ 825*l*(b) provides that the exclusive method for challenging a final decision by the FERC lies in

the Courts of Appeals and there is a presumption against a circuit court and a district court

exercising concurrent jurisdiction over a pending matter." <u>Id</u>. at 93-94.  If this court were to

exercise jurisdiction and plaintiff were to appeal to the Ninth Circuit following a denial by FERC

of plaintiff's presently pending request for rehearing, the concern over two courts exercising

concurrent jurisdiction would be realized. Such a result should be avoided.

This Court's holdings in the FPA cases above are also fully consistent with D.C. Circuit

law in non-FPA cases. In <u>City of Rochester v. Bond</u>, 603 F.2d 927 (D.C. Cir. 1979), the

plaintiffs attempted to bring suit against the Federal Aviation Administration ("FAA") in district

court for alleged violations of NEPA, despite the fact that the Federal Aviation Act contained a

specific jurisdictional provision requiring challenges to FAA final actions to be brought in the

courts of appeals. 49 U.S.C. § 1486(d) (1976). Plaintiffs claimed that the jurisdictional

provisions did not apply, because their claims alleged violations of NEPA only, and therefore

jurisdiction was appropriate in the district court under the federal question statute, 28 U.S.C.

16

§ 1331.  Id. at 936-37.  The D.C. Circuit rejected this argument, holding that, where there is a prescribed statutory review procedure, non-statutory review may not be sought in the district court under generally applicable grants of jurisdiction.  Id. at 931.  In so holding, the court noted that the jurisdictional inquiry did not turn on the specific substantive grounds alleged by plaintiffs as the basis for their challenge to the agency action, id. at 937, but rather on whether the agency action ultimately under attack fell within the exclusive jurisdictional review provision: "we think that *all* issues concerning the lawfulness of an order subject to statutory review must be raised within the statutory proceeding if that remedy is otherwise adequate."  Id. at 938 (emphasis added).

        Likewise, in Media Access Project v. FCC, 883 F.2d 1063 (D.C. Cir. 1989), the D.C. Circuit rejected claims that a challenge to an order of the Federal Communication Commission ("FCC") could proceed in district court under general federal question jurisdiction where the FCC Act vested exclusive jurisdiction over challenges to FCC orders in the courts of appeals.  In so concluding, the D.C. Circuit stated that "[t]he courts uniformly hold that statutory review in the agency's specially designated forum prevails over general federal question jurisdiction in the district courts."  Id. at 1067.  As such, the Court of Appeals specifically rejected the argument that it lacked jurisdiction simply because the challenged agency action was issued pursuant to a statute other than the statute vesting jurisdiction in the Court of Appeals.  Id. at 1068.  Instead, the D.C. Circuit found that the relevant inquiry was not the statutory basis for plaintiffs' claim,

17

but whether the agency action under attack was within the exclusive jurisdictional review provision. Id. at 1067-68.[12]

Consistent with the foregoing case law, this Court should dismiss the complaint because the Federal Power Act vests exclusive jurisdiction over challenges to FERC license orders in the Courts of Appeals, regardless of whether the alleged violations are substantive or procedural. This is so even where the statutory basis of the alleged violation is found in statutes other than the FPA, such as NEPA, the ESA, or the Sunshine Act. And although plaintiff does not directly challenge the substance of the conditions or prescriptions – as unsupported by the evidence or for failing to meet the substantive standards of the FPA – it nonetheless seeks relief from the terms of the conditions. Plaintiff does not seek a trial-type hearing merely to savor the joy of that experience. Rather, it seeks a trial-type hearing to convince the agencies that the conditions should be modified, and to ensure that such modifications are incorporated into an amended FERC license. See Complaint at ¶ 1 (identifying its goal "to have declared unlawful certain of Interior's actions that have violated recently-enacted Federal legislation and due process with respect to onerous conditions that Interior specified for inclusion in [their] license"); see also id. at ¶ 24 (referring to the "burdensome license conditions"); ¶26 (referring to the "unnecessary and

---

[12] Similar determinations have also been made in non-FPA cases in other circuits. See, e.g., National Parks and Conservation Ass'n v. FAA, 998 F.2d 1523, 1528-29 (10th Cir. 1993) (affirming finding by district court that it lacked jurisdiction under the Federal Aviation Act's exclusive jurisdictional provision (49 U.S.C. § 1486(d)) over challenge to Bureau of Land Management ("BLM") amendment to a land plan that allowed disposal of public land for use by an airport, and reasoning that the actions of the BLM were taken to facilitate the actions of the FAA); Northwest Res. Info. Ctr., Inc. v. NMFS, 25 F.3d 872, 874-75 (9th Cir. 1994) (rejecting plaintiffs' attempt to bring an ESA citizen suit against the Bonneville Power Administration ("BPA") for alleged violations of the ESA in district court because the exclusive jurisdiction provision of the Northwest Power Act requires all challenges to BPA final actions to be brought in the Court of Appeals).

unsupported conditions" as causing the "cost of project power" to "nearly double").  Clearly,

plaintiff is challenging the conditions in its license by alleging procedural violations in the

licensing process, which, according to the case law cited above, are unquestionably claims that

fit within the exclusive review provisions of 16 U.S.C. §825l(b).  For this reason alone, the

complaint should be dismissed.

>   **B.     Plaintiffs' Complaint Should be Dismissed Pursuant to Rule 12(b)(6) because
>           The Interim Final Rules are Consistent With and Based on the Express
>           Language of Section 241 of the Act.**

In the event this Court concludes it has jurisdiction over plaintiff's claims, dismissal is

nonetheless warranted under rule 12(b)(6) because plaintiff has not stated a claim upon which

relief can be granted.   Plaintiff alleges that the Interim Final Rules, particularly 43 C.F.R.

§ 45.4(d)(1), violate section 706(2)(A) of the APA by making the new procedures unavailable to

it in its licensing proceeding, Complaint ¶¶ 9, 48, 51 (Counts I and II), and asserts that section

241 of the Act is silent as to whether it applies to license proceedings in which FERC issued a

license before enactment.  Id. at ¶ 49 (Count I).  Plaintiff is incorrect.  As explained below,

Congress provided clear and explicit guidance as to the temporal reach of the provision for trial-

type hearings in section 241.  The Interim Final Rules are consistent with, and are based on, the

language of section 241, which expressly applies to license applicants.  The Act employs that

same phrase in provisions (1) authorizing trial-type hearings, 16 U.S.C. §§ 797(e), 811; (2)

authorizing certain parties to propose alternative conditions, 16 U.S.C. § 823d(a)(1); and (3)

authorizing certain parties to propose alternative prescriptions, 16 U.S.C. § 236d(b)(1).  It must

be assumed that Congress used the phrase intentionally and that, by its very terms, the new

procedures in section 241 are limited to proceedings involving a "license applicant."

In the FERC context, the term "license applicant" designates a class of entities that are seeking a FERC license. Although neither the Act nor the FPA defines the term "license applicant," the FPA, which was amended by section 241 of the Act, does define the term "licensee" as "any person, State, or municipality *licensed*" to operate a hydroelectric project. 16 U.S.C. § 796(5) (emphasis added). Thus, for purposes of the FPA and section 241, a "license applicant" must be considered a person, state or municipality that has applied for, but to whom FERC has not yet issued, a license.

Once FERC issues a license, a "license applicant" becomes a "licensee" that is authorized to operate a project subject to the terms of its license. This distinction carries considerable legal and practical significance. Indeed, the FERC license in this case confers upon Plaintiff substantial rights and privileges – such as exclusive control over a navigable waterway and use of lands of the United States for a period of 50 years – that mere applicants quite obviously do not enjoy. It is simply untenable that the term "license applicant," as used in section 241, could be construed to include the term "licensee," particularly where that term is defined in such a way as to preclude such an interpretation. Plaintiff's construction would violate the canon that the plain meaning of a statute's language shall be applied "[a]bsent a clearly expressed legislative intention to the contrary." Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980) (noting the absence of any statutory language supporting petitioner's more restrictive construction of certain statutory terms and rejecting the challenge on that basis).

In the instant case, section 241 of the Act makes no mention of the term "licensee" and in no way suggests that a "licensee" falls within the scope of the section. The same is true of House Report 109-49 (April 19, 2005), Senate Report 109-78 (June 9, 2005), and the final report

on the Act, House Conference Report, 109-1900 (July 27, 2005).  None of these suggests that section 241 applies in any way to a "licensee."  Absent any mention of the term "licensee" or a clear indication that Congress intended to extend the new procedures to persons, states, or municipalities *already licensed*, Interior reasonably concluded that licensees are beyond the scope of section 241 and drafted the Interim Final Rules to make the new procedures applicable only to those license proceedings where FERC had *not* issued a license as of November 17, 2005.

Plaintiff's contention that its license is not final because the license order is subject to a request for rehearing before FERC, Complaint ¶ 5, does not change the fact that plaintiff is a "licensee," not a "license applicant."  FERC issued plaintiff a 50-year license on July 11, 2005, and plaintiff became subject to the terms of that license upon issuance.[13]  112 FERC at 61,424. In granting the license, FERC conferred upon plaintiff "licensee" status, with all attendant rights, privileges, and obligations, and that status will not change regardless of the outcome of plaintiff's pending request for rehearing.[14]  Indeed, if FERC rejects plaintiff's request for rehearing or finds against plaintiff on all claims, plaintiff will remain a "licensee" subject to the terms of FERC's July 11, 2005 license order.  See, e.g., Avondale Mills, Inc. & Enterprise Mill,

---

[13] Plaintiff mistakenly indicates that it operates the Project pursuant to an "initial license" issued by the Federal Power Commission in *1952*.  Complaint ¶ 13.  This, of course, is incorrect because plaintiff currently operates the Project pursuant to the terms of its *new* license.  See 112 FERC 61,055 (Order Issuing New License); 113 FERC ¶ 61,166 (Order Denying Stay).

[14] On rehearing, the pertinent document before the Commission for reconsideration is the license order.  16 U.S.C. § 825*l*(a) (stating, "the Commission shall have the power to grant or deny rehearing or to abrogate or modify its *order* without further order") (emphasis added).  Thus, FERC reviews the validity and reasonableness of the license order, not the license application already acted upon.

LLC, 114 FERC ¶ 61,037 (2006) (denying requests for rehearing and stay of license orders, such that petitioners remained licensees subject to terms of the challenged license orders). If, on the other hand, FERC decides in plaintiff's favor on the issues raised in its rehearing request, plaintiff will remain a "licensee" subject to the terms of an *amended* license order. See, e.g., Wisconsin Power & Light Co., 101 FERC ¶ 61,055 (Oct. 11, 2002) (issuing an amended license order on rehearing consistent with Interior's request for rehearing), petition for review denied, Wisconsin Power & Light Co. v. FERC, 363 F.3d 453 (D.C. Cir. 2004). In either case, plaintiff is and will remain a "licensee."[15] As such, plaintiff is not entitled to the new procedures mandated in section 241 or in the Interim Final Rules.[16]

As demonstrated above, the Interim Final Rules, particularly 43 C.F.R. § 45.1(d)(1), are consistent with, and are based on, the express language of section 241 of the Act, which affords the Act's new procedures to "license applicants," not licensees. Thus, contrary to plaintiff's contention, Complaint ¶ 28, Congress was not silent, but in fact provided clear direction as to the applicability of the Act. The United States Supreme Court has held that where Congress has

---

[15] FERC could decide on rehearing that the Box Canyon Project should not continue to operate and should not be licensed. Even if FERC were to take such action, however, plaintiff would not revert back to the status of "license applicant." Moreover, its complaint would be moot because Interior's mandatory conditions and prescriptions would cease to have any legal force or effect. See, e.g., Escondido Mut. Water Co., 466 U.S. at 779, n. 20 (noting that FERC may decide not to issue the license at all).

[16] Plaintiff argues that Interior's November 17, 2005 date of publication was arbitrary and that in selecting this date, Interior excluded plaintiff from the applicability of Section 241 of the Act and the Interim Final Rules. Complaint at ¶ 49. As discussed above, however, it is the terms of the Act, not the date the Interim Final Rules became effective, that renders the Act inapplicable to licensees, such as Plaintiff. Indeed, even had Interior chosen to have the Interim Final Rules become effective as of August 8, 2005 (the date of enactment), Plaintiff would not be entitled to the Act's procedures.

22

clearly defined the proper reach of new legislation, Congress's intent controls, and there is no need to look further. Landgraf v. USI Films Products, 511 U.S. 244, 280 (1994). In promulgating the challenged rule, therefore, Interior reasonably concluded that the new procedures in section 241 do not extend to licensees such as plaintiff.

For these reasons, Interior appropriately and reasonably limited the applicability of the Interim Final Rules to license applicants and other parties to license proceedings in which the Commission had not issued a license as of November 17, 2005. It crafted a rule which honors the plain meaning of the statutory language and which avoids an impermissibly retroactive application. For this reason, plaintiff has failed to state an actionable claim.

> ### C.     The Interim Final Rules and Interior's February 1, 2006 Letter are Lawful and did not Deny Plaintiff Due Process.

On December 19, 2005, plaintiff filed with Interior a request for a trial-type hearing and submitted to Interior proposed alternative conditions and prescriptions. Complaint ¶ 42. In a letter dated February 1, 2006, Interior rejected plaintiff's request. Id. at ¶ 43. Plaintiff contends that Interior's rejection was arbitrary, capricious, an abuse of discretion, and otherwise contrary to section 241 of the Act in violation of the APA, 5 U.S.C. ¶ 706(2)(A). Id. at ¶ 53. Plaintiff further claims that rules and the February 1, 2006 letter denied plaintiff due process in violation of 5 U.S.C. § 706(2)(B). Complaint at ¶ 55. Plaintiff is incorrect on both points.

In its February 1 letter, Interior rejected plaintiff's request for hearing and alternative conditions and prescriptions because the Interim Final Rules apply only to license proceedings in which FERC had not issued a license as of November 17, 2005, the day the rules were published in the Federal Register. Complaint Exhibit B. As discussed above, the Interim Final Rules are consistent with and based on the express language of section 241 of the Act. Section 241 and,

consequently, the Interim Final Rules, do not apply to "licensees" and license proceedings for which FERC has already issued a license order.  Because FERC issued plaintiff a license nearly one month before the enactment of section 241 and more than four months prior to the effective date of the Interim Final Rules, Interior lawfully rejected plaintiff's request.  Moreover, to support a due process claim, plaintiff must have rights under section 241 of the Act.  Because plaintiff, a licensee, has no rights under section 241, Interior could not have denied plaintiff due process.

## Conclusion

No matter how artfully characterized, plaintiff's allegations amount to a challenge to its FERC license.  As the foregoing demonstrates, this court lacks jurisdiction to consider plaintiffs' claims because Congress has vested exclusive jurisdiction over such claims in the courts of appeal.  Accordingly, this Court lacks subject matter jurisdiction and dismissal is required under Rule 12(b)(1).  Alternatively, the allegations of the complaint fail to demonstrate that, as a matter of law, plaintiff is entitled to the benefit of the new procedures established by the Act and implemented by the challenged rules.  Accordingly, plaintiff has not stated a claim upon which relief can be granted and dismissal is therefore warranted under Rule 12(b)(1).  For these reasons, defendants respectfully request that the complaint be dismissed.

May 8, 2006

Respectfully submitted,
SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division


        /S/  JOHN S. MOST
JOHN S. MOST, Virginia Bar #27176
Trial Attorney, Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
601 D Street Room 3536
Washington, D. C.  20004
(202) 616-3353, (202) 305-0274 (fax)

Counsel for Defendants

Of Counsel

J. Kevin Tanaka
Christopher Watson
Office of the Solicitor
U.S. Department of the Interior

CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of May, copies of the foregoing *Defendant's Motion to Dismiss and Supporting Memorandum* was served by electronic filing on the following:

James B. Vasile
DAVIS, WRIGHT, TREMAINE, LLP
1500 K Street, N. W.
Suite 450
Washington, D. C.  2005
(202) 508-6600 (telephone)
(202)509)6699 (facisimile)

        /S/   JOHN S. MOST
        JOHN S. MOST