UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC UTILITY DISTRICT NO. 1 OF
PEND OREILLE COUNTY,
WASHINGTON

                                        Civil Action No. 1:06CV00365RMC

Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE
INTERIOR

Defendant

and

KALISPEL TRIBE OF INDIANS

P.O. Box 39
(1981 N. LeClerc)
Usk, WA 99180-0039

Intervenor-Defendant.

**KALISPEL TRIBE OF INDIANS' MOTION TO INTERVENE**

Pursuant to Federal Rules of Civil Procedure 24(a) and (b) and LCvR 7(j), the Kalispel Tribe of Indians moves for intervention as of right as a defendant in this action and for leave to file the Tribe's proposed Answer, attached hereto. In the alternative, the Tribe requests that the Court grant the Tribe permissive intervention. This motion is supported by the accompanying Kalispel Tribe Of Indians' Memorandum In Support Of Motion To Intervene As Defendant and the Declaration of Deane Osterman in Support of

1

Kalispel Tribe of Indians' Motion to Intervene. Also submitted with this motion is a proposed Order Granting Leave to Intervene.

Counsel for Plaintiff, James B. Vasile, and counsel for defendant, John S. Most, were contacted and both counsel advised that they do not oppose the Tribe's intervention as a defendant.

Dated this 8th day of May, 2006.

>Respectfully submitted,
>
>  /s/ Riyaz A. Kanji
> Riyaz A. Kanji (D.C. Bar No. 455165)
> KANJI & KATZEN, PLLC
> 101 N. Main Street, Suite 555
> Ann Arbor, MI 48104
> Telephone: 734-769-5400
> Fax: 734-769-2701
> Email: rkanji@kanjikatzen.com
>
> Phillip E. Katzen
> KANJI & KATZEN, PLLC
> 100 S. King Street, Suite 560
> Seattle, WA 98104
> Telephone: 206-344-8100
> Fax: 866-283-0178
> Email: pkatzen@kanjikatzen.com
>
> *Attorneys for the Kalispel Tribe of Indians*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC UTILITY DISTRICT NO. 1 OF
PEND OREILLE COUNTY,
WASHINGTON

Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE
INTERIOR

Defendant.

Civil Action No. 1:06CV00365RMC

**KALISPEL TRIBE OF INDIANS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANT**

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 24, the Kalispel Tribe of Indians ("Tribe") respectfully moves to intervene as a defendant in this action. Counsel for the Department of the Interior, John Most, United States Department of Justice, and plaintiff's counsel, Richard Vasile, have stated that they do not oppose intervention.

The complaint filed by the Public Utility District No. 1 of Pend Oreille County, Washington ("PUD"), attacks the procedures by which the United States Department of the Interior ("Interior") established mandatory conditions to be included in the license issued to the PUD by the Federal Energy Regulatory Commission ("FERC"). Although the complaint ostensibly focuses on Interior's procedures, the ultimate outcome of a decision in the PUD's favor could seriously delay or weaken implementation of conditions necessary for the protection of natural resources of vital interest to the Kalispel Indian Tribe. Because the natural resources

1

that Interior sought to protect with its conditions are of critical importance to the Kalispel Tribe, and because any delay or diminishment in those conditions threatens those natural resources, the Tribe has an important interest in this case that could be impaired by a decision in favor of the PUD.  Because of their critical importance to the Kalispel Tribe, it has invested significant effort and expense in the establishment and implementation of those conditions.  The Tribe therefore seeks to intervene as a defendant to protect its interests.

## BACKGROUND

This case is one in a long series of challenges brought by the PUD to conditions imposed by federal agencies on the new license issued to the PUD by FERC.  It is also the latest in an even longer series of disputes between the Tribe and the PUD in which the Tribe has attempted to protect the lands of its reservation, and the water and other natural resources upon which its members rely, from the effects of the PUD's Box Canyon Dam project.  *See, e.g., U.S. v. Pend Oreille Public Utility District No. 1,* 926 F.2d 1502 (9th Cir. 1991) ("*Pend Oreille* I")*; U.S. v. Pend Oreille Public Utility District No. 1,*  28 F.3d 1544 (9th Cir. 1994) ("*Pend Oreille* II"); and *U.S. v. Pend Oreille Public Utility District No. 1*, 135 F.3d 602 (9th Cir. 1998) ("*Pend Oreille* III").  That series of cases found that the PUD unlawfully trespassed on the Tribe's lands for most of the duration of its original 50 year license.

The PUD applied for a new license for its Box Canyon Project on January 21, 2000.  Complaint at ¶18.  As part of the relicensing process, Interior, as well as other federal agencies, may impose mandatory conditions on any license issued by FERC.  16 U.S.C. §§ 797(e) and 811; Complaint ¶19.  During the several years the relicensing proceedings took place the Kalispel Tribe participated actively as an intervenor, especially with respect to the federal agency conditions intended to provide protection for natural resources on and near the Kalispel

Reservation.  Declaration of Deane Osterman in Support of Kalispel Tribe of Indians' Motion to Intervene (Osterman Dec.) ¶8.  On May 4, 2004, Interior imposed such conditions, including requirements for fish passage, trout restoration, erosion control, replacement of lost wildlife habitat on the Kalispel Indian Reservation, and many others.  *Pub. Util. Dist.No. 1 of Pend Oreille County,* Project No. 2042-013, Order Issuing New License, ("Licensing Order") July 11, 2005, 112 FERC ¶61,055, §§43-45, 49, Appendices A and C; Complaint ¶21; Osterman Dec. ¶9.  The PUD unsuccessfully sought an administrative appeal before Interior during the relicensing procedure, and also an evidentiary hearing before FERC, in order to challenge Interior's conditions.  Complaint at ¶¶4, 22-24.  These efforts were actively opposed by the Tribe.  Osterman Dec. ¶10.

     FERC issued a new license for the Box Canyon Project on July 11, 2005, which included mandatory conditions imposed by Interior.  Complaint at ¶5; License Order, §§43-45, 49, Appendices A and C.  The PUD then sought a stay of many of Interior's mandatory conditions before FERC, and, when no stay was immediately granted, the PUD filed an Emergency Motion For Writ of Mandamus before the District of Columbia Court of Appeals, *In Re Public Utility District No. 1, Pend Oreille County, Washington*, No. 05-1307, seeking a stay of the same Interior mandatory conditions (as well as conditions imposed by other agencies).  The Kalispel Tribe was granted leave by the Court of Appeals to file an opposition to the PUD's motion, which was also opposed by Interior, the Department of Agriculture and the Environmental Protection Agency ("EPA"), and the Circuit Court declined to issue the Writ.  Order of September 26, 2005.  FERC later also denied the stay requested by the PUD.  Order Denying Stay and Granting Extension of Time, Nov. 17, 2005, 113 FERC ¶61,166.

After the Energy Policy Act of 2005 ("EPAct") was enacted on August 8, 2005, the PUD again unsuccessfully requested a hearing before Interior to challenge the conditions that had already been incorporated into the PUD's license. Complaint at ¶¶42-43. That request was also actively opposed by the Kalispel Tribe. Osterman Dec. ¶11. On December 23, 2004, the PUD also filed suit in this Court against EPA seeking to overturn the EPA's § 401 certifications that FERC had included in the license. *Public Utility District No. 1 of Pend Oreille County, Washington v. Environmental Protection Agency*, No. 04-2224, D.C. District Court. The Kalispel Tribe has been granted intervenor status as a defendant in that case, which is still pending.

Thus the Tribe has been a party to most, if not all, the litigation and administrative proceedings that bear upon the proper scope of resource protection in which the Tribe has a significant interest, including specifically issues relating to implementation of EPAct in the context of the PUD's relicensing proceeding.

## I. THE KALISPEL TRIBE SATISFIES THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT.

### A. Requirements For Intervention As A Matter Of Right.

Fed. R. Civ. P. 24(a)(2) provides in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, an applicant for intervention as of right "must demonstrate: (1) the timeliness of the motion; (2) a cognizable interest in the action; (3) impairment of the interest; and (4) the lack of adequate representation in the lawsuit." *Admiral Ins. Co. v. National Casualty Co.*, 137 F.R.D.

4

176, 177 (D.D.C. 1991), citing *Williams & Humbert, Ltd. v. W & H Trade Marks, Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988), and *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). In this Circuit, Rule 24(a) is given a liberal application in favor of permitting intervention. *Nuesse v. Camp,* 385 F.2d 694, 702 (D.C. Cir. 1967). As shown below, the Tribe has satisfied each requirement.

  **B.** **The Tribe's Motion Is Timely.**

There have been no proceedings to date other than the filing of the complaint. The Tribe's intervention will not cause any undue delay in the litigation. It will not prejudice the adjudication of the rights of the existing parties to the case. The Tribe is moving to intervene before the existing parties have engaged in any substantive proceedings. Intervention is therefore timely.

  **C.** **Interests Of The Kalispel Tribe Justifying Intervention.**

In considering an intervention request, this Circuit has long recognized that the "interest" test under Rule 24(a)(2) "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp,* 385 F.2d 694, 700 (D.C. Cir. 1967). Properly applied, the Rule should promote judicial economy by facilitating the resolution of related issues in a single lawsuit, while preventing litigation from becoming unmanageably complex. *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969). Those principles should be applied here to determine that the Kalispel Tribe has a cognizable interest in the outcome of this case sufficient to support intervention as of right.

From time immemorial, the members of the Kalispel Tribe have depended upon the fish, wildlife, and vegetative resources in their environment for their subsistence, commercial, and cultural needs. Osterman Dec. ¶5. Those resources continue to be of vital importance to the

Tribe and its members, both within and near the Tribe's reservation. Osterman Dec. ¶5. The Kalispel Indian Reservation, which comprises about 5,060 acres, is located in a rural area of northeastern Washington near the town of Usk. Osterman Dec. ¶4. The area within and near the reservation continues to provide the Tribe with access to fish, wildlife, and vegetative resources. Osterman Dec. ¶6. As FERC recognized in the relicense it granted to the PUD, the Kalispel Indian Reservation was established, among other reasons, "to provide the Tribe with a permanent homeland where its members could continue to engage in their traditional practices of hunting, gathering, and fishing." License Order, p.13. Thus, the Tribe's Natural Resources Department actively works to protect, enhance and further the sound management of all the natural resources significant to the Tribe within and without the reservation. Osterman Dec. ¶3. The Kalispel Natural Resources Department (KNRD) currently employs approximately 30 persons, including professional biologists, anthropologists and others. Osterman Dec. ¶1.

The construction and operation of the Box Canyon Dam Project by the PUD has had a profound impact on the natural resources managed and relied upon by the Tribe. Osterman Dec. ¶7. Despite the requirements of the Federal Power Act, for most of the PUD's initial 50-year license the PUD unlawfully avoided the placement of any conditions on the Project to protect the natural resources of the Reservation. *See, e.g*, *Pend Oreille* II, 28 F.3d at 1548, 1551. As a result, the habitat for fish and wildlife in and near the Kalispel Reservation has been reduced dramatically by the Box Canyon Project. Osterman Dec. ¶7.

Because of the impact the Box Canyon Dam project has had on the Tribe and its natural resources, during the relicensing process the Tribe actively participated in efforts to place conditions on the operations of the Box Canyon Project that will eliminate or mitigate those impacts. Osterman Dec. ¶¶8, 10-14. Those efforts have involved extensive tribal participation at

both technical and policy levels with the Department of Interior and other federal agencies as they determined the conditions they would require the PUD to comply with as part of a renewed FERC license.  Osterman Dec. ¶¶8, 10-14.  The Tribe also developed its own recommendations to FERC for conditions that should be required of the PUD in its relicense, many of which were adopted by FERC.  Osterman Dec. ¶¶8-9.  The mandatory conditions of the new license issued for the Box Canyon Project are thus of great importance to the Tribe in maintaining the integrity of the purposes for which the Kalispel Indian Reservation was established.  Therefore, in every instance where the Tribe has become aware that the PUD was attempting to delay, reconsider, or defeat such conditions, the Tribe has opposed such efforts.  Osterman Dec. ¶14.

The Tribe has a particular interest in avoiding even a delay in implementation of Interior's conditions.  Delay not only will postpone the time when the Tribe's natural resources can be restored to a healthy or improved condition, it will increase the risk that some resources may never be able to recover.  Osterman Dec. ¶15.  That is particularly true of bull trout, which are listed as a threatened species under the Endangered Species Act.  Osterman Dec. ¶15.  *See also Order Denying Stay And Granting Extension of Time*, November 17, 2005, 113 FERC ¶61,166, pp. 4-5, where FERC refused to delay implementation of license conditions intended to protect bull trout because to do so "could present an unacceptable risk to those species…." *Id*. at 5.

Finally, the Tribe's interest in conditions placed upon the operation of the Box Canyon Project is expressly recognized in the Federal Power Act, §§4(e) and 10(e), as the Ninth Circuit acknowledged.  It noted that allowing the PUD to circumvent the terms of sections 4(e) and 10(e) would "deprive the Indians of their right, granted under §4(e) and §10(e), to influence the terms upon which the licensee uses reservation land. *Pend Oreille II*, 28 F.3d at 1551.

For all these reasons, the Tribe has a cognizable interest in the claims made by the PUD in this case.

### D.     The Tribe's Ability To Protect Its Interests May Be Impaired.

The PUD's present action challenging Interior's procedures in establishing conditions intended to protect resources of vital interest to the Tribe are, in the Tribe's view, another attempt to circumvent the protections and trust responsibility obligations afforded the Tribe by federal law.  If the PUD were to succeed in having the terms of the EPAct applied retroactively to its license application, the Department of Interior and other federal agencies would be required to substantially start over in formulating conditions for inclusion in the PUD's FERC license. The effect of such a ruling would be, at a minimum, to delay the time when the PUD would be required to implement conditions intended to protect the resources upon which the Tribe depends.  The effect of such a ruling could also include changes in the existing conditions that would provide less protection for the resources the Tribe depends upon.  In addition, a ruling permitting the PUD a second opportunity to advocate its opposition to natural resource protection conditions on its FERC license would lead to even greater expenditures of time, personnel and funds by the Tribe than it has already endured by the PUD's attempts to avoid or minimize conditions of importance to the Tribe.

As a practical matter, then, the Tribe's ability to protect its interests may be impaired by the outcome of this action.

### E.     Representation By Interior May Be Inadequate.

Intervention on the side of the United States Government has been permitted when representation is found actually or potentially inadequate.  *Trbovich v. United Mine Workers,* 404 U.S. 528 (1972);  *Atlantic Refining Co. v. Standard Oil Co.*, 304 F.2d 387 (D.C. Cir. 1962).

8

"The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich,* 404 U.S. at 538 n.10. Courts "have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

In this case, although the Tribe's interest is generally aligned with the Department of Interior, there is the potential for different strategies or positions to be taken by the Tribe and the government. One reason that may occur is that the Department of Interior has also been sued with respect to the same regulations in a different court where plaintiffs seek relief that conflicts with the relief sought by the PUD here. In the related case of *American Rivers et al. v. United States Department of Interior, et al.*, No. C05-2086P, (W.D. Washington), the plaintiffs contend that regulations implementing the EPAct go too far in permitting applicants for FERC licenses to avail themselves of the new regulations (this contrasts with the relief sought by the PUD, which contends that Interior did not go far enough in making the new procedures available). Thus it is possible that, as a result of defending its regulations in the *American Rivers* case, the government may choose not to make arguments that the Kalispel Tribe may advocate in this litigation regarding the proper effective date for implementation of the EPAct. This potential conflict in positions is sufficient to establish that the Department of Interior may not adequately represent the interests of the Kalispel Tribe.

## II.  IN THE ALTERNATIVE, APPLICANTS SHOULD BE PERMITTED TO INTERVENE.

Alternatively, the Court should allow permissive intervention. Rule 24(b) provides that: "[u]pon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In

9

exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b). The court has broad discretion to permit intervention and in this Circuit permissive intervention has been given a "flexible approach." *EEOC v. National Children's Center*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

As discussed above, the Tribe's motion is timely, there are common questions of law and fact, and intervention will not unduly delay or prejudice the rights of any party. Thus the Tribe has also established that the Court should exercise its discretion to permit the Tribe to intervene.

## CONCLUSION

For the reasons stated above, the Court should grant Kalispel Tribe's leave to intervene as a defendant in this action.

Dated this 8th day of May, 2006.

Respectfully submitted,

  /s/ Riyaz A. Kanji
Riyaz A. Kanji (D.C. Bar No. 455165)
KANJI & KATZEN, PLLC
101 N. Main Street, Suite 555
Ann Arbor, MI 48104
Telephone: 734-769-5400
Fax: 734-769-2701
Email: rkanji@kanjikatzen.com

Phillip E. Katzen
KANJI & KATZEN, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
Telephone: 206-344-8100
Fax: 866-283-0178
Email: pkatzen@kanjikatzen.com

*Attorneys for the Kalispel Tribe of Indians*