**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PUBLIC UTILITY DISTRICT NO. 1 OF PEND OREILLE COUNTY, WASHINGTON </br></br>Plaintiff, </br></br> v. </br></br> UNITED STATES DEPARTMENT OF THE INTERIOR </br></br> Defendant | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) Civil Action No. 1:06CV00365RMC </br> ) </br> ) </br> ) </br> ) </br> ) |

**DECLARATION OF DEANE OSTERMAN IN SUPPORT OF KALISPEL TRIBE OF INDIANS' MOTION TO INTERVENE**

Deane Osterman declares as follows:

1. I am the Director of the Kalispel Tribe of Indians' Natural Resources Department (KNRD). I have been employed by KNRD for approximately 12 years and I have served as its director for about 7 years. As director I supervise a staff of approximately 30 persons, including professional biologists, anthropologists, and others.

2. As part of my job duties I have become familiar with the history and current circumstances of the Kalispel Tribe, including specifically the natural resources upon which the Tribe depended in the past and those upon which it currently relies. It is also an important part of my duties to understand the Tribe's goals for its natural resources in the future.

3. KNRD has the responsibility to protect, enhance and further the sound management of natural resources of importance to the Tribe. Those resources include all the fish, wildlife, historic properties, water, and vegetation within the Kalispel Indian Reservation along with fish, wildlife and vegetation in areas outside the Reservation that are or may be utilized by the Tribe and its members. To carry out its responsibilities KNRD participates in surveys, assessments and other methods of acquiring detailed knowledge of the past, present and future conditions of fish, wildlife and vegetative resources and their habitats. Additionally, the KNRD monitors water quality and other environmental data. These data are used to analyze the state of the resource and any limiting factors affecting the resource. These data are then measured against a desired future condition and then the appropriate mitigation strategies are developed and implemented to bridge the gap between the present and desired future condition.

4. The Kalispel Indian Reservation was established for the principal purpose of providing a homeland for members of the Kalispel Indian Tribe, a place where those members could continue their traditional practices of hunting, fishing and gathering. The Reservation currently comprises about 5,060 acres in rural northeast Washington, near the town of Usk. Almost 10% of the Reservation, 493.03 acres, are flooded by the Box Canyon Dam.

5. From time immemorial, the Tribe's members have relied upon fishing, hunting, and gathering vegetative resources, for subsistence, commercial, cultural and other purposes. Fish, game and vegetative resources continue to be of vital

importance to the Tribe, both within the Reservation and in other nearby areas outside the Reservation.

6. The area comprising the Kalispel Indian Reservation provides the Tribe with access to and use of fish, wildlife, and vegetative resources in and along a ten-mile stretch of the Pend Oreille River and two of the river's tributaries, Cee Cee Ah Creek and Calispel Creek, that flow through the reservation.

7. However, the habitat available on the reservation for fish and wildlife has been reduced dramatically by the Box Canyon Dam Project; it has severely diminished the amount of fish, game, and vegetative matter that would otherwise be available to the Tribe on and near the reservation. The best and only places where tribal members could fish, hunt and gather on the Reservation in a way consistent with their traditional practices are no longer available due to the construction and operation of the Box Canyon Project.

8. As part of my responsibilities for KNRD I and my staff have supported the Tribe's role as an intervenor in the Box Canyon Dam Project relicensing proceeding. In fulfilling that role KNRD has expended tremendous time and effort and actively participated in evaluating the effects of the Box Canyon Project Dam on the natural resources managed by and of concern to the Kalispel Tribe. This has included a great deal of time and effort in developing proposed conditions for the operation of the Box Canyon Project that will protect the Tribe's natural resources to the greatest extent possible. The Tribe's efforts have included direct participation with United States Department of the Interior as the Department developed its mandatory conditions during the relicensing process for

Box Canyon Dam. The Tribe has also developed its own recommendations to FERC for measures needed to protect the Tribe's resources.

9. The Tribe's efforts to protect its natural resources have been successful, at least in part, because the Department of Interior adopted mandatory conditions for the PUD's FERC relicense that will provide much higher levels of protection for fish, wildlife, and other resources important to the Tribe; those conditions were then adopted by FERC as part of the relicense for Box Canyon. In addition, many of the additional protections recommended by the Tribe were also adopted by FERC in the relicense.

10. The Tribe's efforts to protect its natural resources from the adverse impacts of the Box Canyon Project have also included opposition to the Public Utility District's persistent attempts to delay and weaken the conditions that Interior and other agencies have imposed. When the PUD attempted to appeal Interior's conditions with Interior, and also to FERC directly, before the relicense was issued, the Tribe opposed those efforts.

11. After a relicense was issued in July, 2005, the PUD tried to stay the implementation of many of the conditions included in their license by Interior and other federal agencies and the Tribe opposed that stay. The PUD also attempted to have the conditions sent back to Interior for a new hearing based upon the Energy Policy Act of 2005; the Tribe opposed those efforts as well.

12. When the PUD sought emergency relief from the Interior and other federal agency mandatory conditions in the circuit court in Washington D.C., the Tribe opposed that request.

13. When the PUD sued the Environmental Protection Agency over its water quality conditions certification included as part of the relicense, the Tribe intervened in that case to oppose the PUD's claims.

14. When the PUD sued Interior in this case to attempt to avoid compliance with Interior's conditions in the license, the Tribal Council again voted to seek intervention in order to protect the Tribe's interests in having those conditions implemented without any further delay. To the best of my knowledge, the Tribe has opposed every attempt by the PUD delay, reconsider or defeat conditions needed to protect the natural resources of importance to the Tribe.

15. Avoiding any further delay in implementation of Interior and the other conditions imposed in the FERC license to protect natural resources is important to the Tribe. Each additional delay not only postpones the time when the natural resources that are important to the Tribe can be restored to a healthy or improved condition, it increases the risk that the resources may never be able to recover. This is demonstrated most obviously in the case of bull trout, a species which is listed as threatened species in the Pend Oreille River under the Endangered Species Act.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed this 2nd day of May, 2006.

                                         /s/ Deane Osterman
                                           Deane Osterman