UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC UTILITY DISTRICT NO. 1 OF
PEND OREILLE COUNTY,
WASHINGTON

                                                      Civil Action No. 1:06CV00365RMC

Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE
INTERIOR

Defendant.

---

**APPLICANT FOR INTERVENTION KALISPEL TRIBE OF INDIANS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

---

      Applicant for intervention Kalispel Tribe of Indians respectfully moves to dismiss all claims asserted by Plaintiff Public Utility District No 1 of Pend Oreille County, Washington ("PUD"). This motion is supported by Applicant For Intervention Kalispel Tribe Of Indians' Brief In Support Of Motion To Dismiss For Lack Of Subject Matter Jurisdiction. The grounds for this motion are that the PUD's claims in Counts I through IV of its Complaint, regarding the Department of Interior's procedures for establishing mandatory licensing conditions, are subject to the exclusive jurisdiction of the circuit courts of appeal pursuant to 16 U.S.C. § 825*l* and this Court thus lacks subject matter jurisdiction.

      The Tribe therefore requests that the PUD's Complaint be dismissed in its entirety.

Dated this 9th day of May, 2006.

Respectfully submitted,

| | |
|---|---|
| /s/ RIYAZ A. KANJI | /s/ PHILLIP E. KATZEN |
| Riyaz A. Kanji (D.C. Bar No. 455165) | Phillip E. Katzen |
| KANJI & KATZEN, PLLC | KANJI & KATZEN, PLLC |
| 101 N. Main Street, Suite 555 | 100 S. King Street, Suite 560 |
| Ann Arbor, MI 48104 | Seattle, WA 98104 |
| Telephone: 734-769-5400 | Telephone: 206-344-8100 |
| Fax: 734-769-2701 | Fax: 866-283-0178 |
| Email: rkanji@kanjikatzen.com | Email: pkatzen@kanjikatzen.com |

*Attorneys for the Kalispel Tribe of Indians*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PUBLIC UTILITY DISTRICT NO. 1 OF
PEND OREILLE COUNTY,
WASHINGTON

Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE
INTERIOR

Defendant.

Civil Action No. 1:06CV00365RMC

**APPLICANT FOR INTERVENTION KALISPEL TRIBE OF INDIANS' BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

I.  INTRODUCTION

Applicant for Intervention Kalispel Tribe of Indians ("Tribe") respectfully requests that the Court dismiss all claims[1] asserted by Public Utility District No. 1 of Pend Oreille County, Washington ("PUD") against the United States Department of Interior ("Interior") for lack of subject matter jurisdiction.

The PUD's claims regarding Interior's procedures for establishing mandatory licensing conditions should be dismissed because they constitute an impermissible collateral attack on the terms of the federal license issued to the PUD by the Federal Energy Regulatory Commission ("FERC") regarding the Box Canyon Hydroelectric Project ("the Project"). Challenges to mandatory license conditions imposed by federal agencies are subject to the exclusive jurisdictional provision of the Federal Power Act ("FPA"), 16 U.S.C. § 825*l*. This

---

[1] Counts I through IV.

1

provision vests exclusive jurisdiction in the courts of appeals for all challenges to the terms and conditions of hydropower licenses, a point admitted by the PUD in another case pending in this Court (*Public Utility District No. 1 v. EPA*, 1:04cv2224 (RCL), discussed below). In enacting this exclusive review process, Congress sought to prevent the splintered review of FERC license terms and the attendant waste of judicial resources that the PUD invites here.

II.  FACTS AND ADMINISTRATIVE BACKGROUND

On January 21, 2000, the PUD filed an application with FERC for a new license authorizing continued operation of the Project for a new fifty-year term. Complaint at ¶ 18. Mandatory terms, conditions, and prescriptions were issued by Interior, the United States Forest Service ("Forest Service"), the Environmental Protection Agency ("EPA"), and the United States Fish & Wildlife Service ("FWS"). Interior, which supervises the Kalispel Indian Reservation, and the Forest Service, which supervises Colville National Forest, prescribed conditions under § 4(e) of the FPA, 16 U.S.C. § 797(e). The EPA issued a certification as required by § 401 of the Clean Water Act (33 U.S.C. § 1341) for inclusion in the license. The FWS prescribed mandatory fish-passage conditions pursuant to § 18 of the FPA, 16 U.S.C. § 810. Other resource managers filed numerous recommended conditions, pursuant to §§ 10(a) and 10(j) of the FPA. *Pub. Util. Dist. No. 1 of Pend Oreille County, Project No. 2042-013,* Order Issuing New License, ("Licensing Order"), July 11, 2005, 112 FERC ¶ 61,055, §§ 7, 38-60.

On December 23, 2004, the PUD filed a complaint in the United States District Court for the District of Columbia to challenge the § 401 certification that EPA had issued in connection with the PUD's application for a new license. *Public Utility District No. 1 of Pend Oreille County, Washington v. Environmental Protection Agency*, No. 04-2224. That

2

case is currently stayed pending the United States Supreme Court's resolution of *S.D. Warren Co. v. Maine Board of Environmental Protection*, No. 04-1527.

On July 11, 2005, FERC entered the order granting a new license to the PUD. The mandatory conditions imposed by Interior, the § 401 certification by the EPA, as well as other terms and conditions imposed by other federal agencies, were made part of the license. Licensing Order, §§ 38-60. The Interior conditions that are the subject of this litigation are set forth in Appendix A of the new license.

On August 8, 2005, the Energy Policy Act of 2005 ("EPAct"), Public Law 109-58, was enacted. On August 10, 2005, the PUD requested by letter that Interior apply the terms of § 241 of the new statute to hold a trial type evidentiary hearing regarding the Interior conditions. Complaint ¶ 40. This request was rejected by Interior on September 23, 2005. Complaint ¶ 41. Also on August 10, 2005, the PUD filed its rehearing request with FERC; that request included objections to the conditions imposed by Interior, objections to the certification by the EPA, and a request to reopen the license proceeding and apply the procedures of section 241 of the EPAct to the determination of the Interior conditions. Complaint ¶ 33. Within 30 days of the issuance of the new license, the Tribe, Interior and other federal agencies, as well as other parties, also sought rehearing of the FERC licensing order. All the requests for rehearing are pending. Under 16 U.S.C. § 825*l*, this rehearing process is a precondition to judicial review of the license.

On November 17, 2005, Interior and other federal agencies adopted and made effective regulations to implement § 241 of the EPAct. 70 Fed. Reg. 69,804. The PUD then again sought a hearing from Interior pursuant to the terms of the EPAct and its implementing regulations. Complaint ¶ 42. That request was also rejected by Interior. Complaint ¶ 43.

By the instant action and its pending case against the EPA, therefore, the PUD mounts two separate challenges to the license conditions imposed by two federal agencies and simultaneously challenges the same conditions imposed by those agencies pursuant to the FERC rehearing process.

## ARGUMENT

III. <u>INTERIOR'S MANDATORY LICENSING CONDITIONS ARE NOT SUBJECT TO REVIEW UNDER THE APA BECAUSE THEY FALL WITHIN THE EXCLUSIVE JURISDICTION OF THE COURTS OF APPEALS</u>

The PUD asserts that jurisdiction to review the mandatory conditions imposed by Interior as part of the PUD's FERC license resides in the district court pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706. Complaint ¶¶ 9, 10 12. Final agency actions for which there are no other adequate remedies available are subject to APA review. 5 U.S.C. § 704 (2005). However, when review is available in the courts of appeals pursuant to a specific statute, that review is adequate and the APA is inapplicable. *See, e.g., Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 77-78 (D.C. Cir. 1984).

A license issued by FERC is subject to review under 16 U.S.C. § 825*l*. Section 825*l*(b) provides, in pertinent part:

> Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals ….

The terms and conditions of a license, as mandated by other federal agencies, such as Interior and EPA, are therefore subject to circuit court review under this provision. *See, e.g., Escondido Mut. Water Co. v. La Jolla Band of Mission Indians*, 466 U.S. 765, 772, 778 (1985); *Southern California Edison Co. v. FERC*, 116 F.3d 507, 517-20 (D.C. Cir. 1997). Review under the APA is therefore not available in this case.

4

The APA is also unavailable here because the jurisdiction of the courts of appeals to review mandatory FERC license conditions imposed by federal agencies has been construed to be *exclusive*. "It is well settled that even where Congress has not expressly stated that statutory jurisdiction is 'exclusive,' . . . a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *Telecommunications Research & Action Ctr.*, 750 F.2d at 77 (footnote and citation omitted). *See also City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336, 339 (1958) (§ 825*l*(b) seeks to preclude "piecemeal litigation" and "all other modes of judicial review.")

The review process enacted by Congress in 16 U.S.C. § 825*l*(b) clearly demonstrates its intent that review of FERC licensing decisions lies within the exclusive jurisdiction of the courts of appeals. In addition to specifically identifying the courts of appeals as having jurisdiction, § 825*l*(b) provides that FERC must file the record of its proceeding with the appropriate court of appeals in accordance with 28 U.S.C. § 2112. That statute sets out a process for FERC to know in which court of appeals the record should be filed in the event that multiple parties appeal from an order in different courts of appeals. Once the correct court of appeals has been identified and the record filed in that court, by the express terms of § 825*l*(b), jurisdiction in that court of appeals is "exclusive."

28 U.S.C. § 2112(d) makes § 2112 inapplicable to cases where an administrative order is reviewable by law in the district courts. Because Congress, pursuant to § 825*l*(b), expressly made review of FERC orders reviewable in the circuit courts of appeal, and applied the terms of 28 U.S.C. § 2112 to those appeals, it clearly did not intend review to be available by law in the district courts. The jurisdiction of the courts of appeals is therefore exclusive

5

(with the choice between circuit courts governed by section 2112), and district court jurisdiction does not lie over this action.

Although the PUD styles its claims as arising under the EPAct, rather than the FPA, federal courts have disallowed such attempts to circumvent the exclusivity of § 825*l*. The recent case of *City of Tacoma v. National Marine Fisheries Service*, 383 F.Supp.2d 89 (D.D.C. 2005), illustrates this principle. In that case, after the City of Tacoma had been issued a new hydropower project license by FERC, the National Marine Fisheries Service ("NMFS") issued a biological opinion to FERC regarding the potential effect of the project on fish species listed under the Endangered Species Act. 383 F.Supp.2d at 90-91. The biological opinion concluded that certain environmental conditions imposed by the FERC license were warranted. Tacoma simultaneously appealed those conditions to the court of appeals and filed a separate action in the district court against NMFS to challenge the conditions. *Id.*

The district court granted NMFS' motion to dismiss for lack of subject matter jurisdiction. The court held that the FPA "establishes *a separate and exclusive procedure* that governs review" of FERC licensing decisions. 383 F.Supp.2d at 92 (emphasis in original). The court rejected Tacoma's argument that the exclusive procedure of 16 U.S.C. § 825*l* did not apply because the suit was against NMFS for violation of the procedures of the Endangered Species Act, saying:

> [a]lthough the City carefully crafts its complaint to avoid directly implicating the FPA, it is clear that the suit is a thinly veiled collateral attack on the FERC licensing process. Indeed, plaintiff's challenge to the Cushman Project final BiOp has no apparent significance whatever when separated from the FERC licensing order.

*Id.*

The court went on to explain that Congress had a "clear intent" in enacting the review process for FERC decisions:

> [a]s with many administrative review provisions, exclusive appellate review of FERC licensing orders was established to promote efficiency by eliminating redundancy and inconsistence at the district court level. ... Adopting the City's approach to jurisdiction would, in effect, resurrect the very problems that Congress sought to eliminate....

*Id.* at 93 (internal citation omitted). Other courts have come to the same conclusion. *See, e.g., Idaho Rivers United v. Foss*, 373 F. Supp. 2d 1158, 1159-60 (D. Idaho 2005), where the court dismissed for lack of subject matter jurisdiction plaintiff's challenge to a biological opinion, issued by the FWS in connection with a FERC license, on the grounds that plaintiff was challenging "agency decisions that were incorporated into FERC licenses." *Id.* at 1160. *See also DiLaura v. Power Auth. of New York*, 982 F.2d 73, 79-80 (2d Cir. 1992) (FERC licensee's actions may not be attacked in federal court action not arising under § 825*l*); *Southwest Ctr. for Biological Diversity v. FERC*, 967 F. Supp. 1166, 1172-77 (D. Ariz. 1997) (§ 825*l* vests exclusive jurisdiction with circuit court to hear claim challenging FERC's and Forest Service's alleged failure to consult with FWS under ESA regarding effects of hydropower project on listed species).

Similarly, in *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d F.2d 908 (9th Cir. 1989) ("*Save Our Streams*"), plaintiffs sought district court review of FERC license conditions imposed by the Forest Service. The Forest Service imposed those conditions to ensure compliance with the mandates of the National Environmental Policy Act ("NEPA") and the Native American Religious Freedom Act ("NARFA"). *Id.* at 910. Plaintiffs argued that they were not attacking the FERC licensing decision because they had named the Forest

7

Service as the defendant and alleged claims under NEPA and NAFRA, statutes outside the purview of the FPA. *Id.* at 911-12. The Ninth Circuit disagreed, giving three reasons.

First, the court pointed out that where two jurisdictional statutes provide different routes of appeal, the more specific controls over the more general. *Id.* at 911. The Ninth Circuit observed, referring to the FPA, "[t]o read the specific – and independently complete – statute as only supplementary to the more general legislation would render 'nugatory' the carefully crafted scheme of review." *Id.* (citation omitted).

Second, the court reasoned that:

> [A]lthough appellants seek to characterize the proceedings as an attack on the Forest Service's actions, it is clear that the suit is an attempt to restrain the licensing procedures authorized by FERC. The 4(e) conditions imposed by the Service have no significance outside the licensing process, and we do not believe that the jurisdictional remedy prescribed by Congress hangs on the ingenuity of the complaint. "The choice of forum is . . . for Congress and we cannot imagine that Congress intended the exclusivity *vel non* of statutory review to depend on the substantive infirmity alleged." [*City of Rochester v. Bond*, 603 F.2d 927 (D.C. Cir. 1979)]. Ultimately, appellants object to the proposed conditions only because they are included in the FERC license. Thus, even if they attempt to style this as an independent claim against the Forest Service, the practical effect of the action in district court is an assault on an important ingredient of the FERC license.

*Id.* at 912.

Third, the court noted that the goal of avoiding "duplication and inconsistency" could be frustrated by permitting the same claims to be raised in both a district court and a court of appeals. *Id.* The court therefore held that § 825*l* barred subject matter jurisdiction in the district court. *Id.*

The PUD's objective in this action is precisely the same as that of plaintiffs in *Tacoma v. NMFS*, *Save Our Streams*, and the other cases cited above. The PUD challenges Interior's conditions on its license on procedural grounds because those conditions were

8

incorporated into the hydropower license issued to the PUD by FERC under the FPA. But for the PUD's license application, Interior would not have issued any conditions in the first instance. Thus, "it is clear that the suit is an attempt to restrain the licensing procedures authorized by FERC," and the PUD "object[s] to the proposed conditions only because they are included in the FERC license." *Save Our Streams*, 887 F.2d at 912. There can be no question that Congress did not intend the jurisdictional exclusivity outlined in § 825*l* to hinge on a race to the courthouse steps, where plaintiffs could challenge FERC license conditions imposed by sister agencies in district court so long as plaintiffs initiated such challenges prior to appealing those conditions pursuant to § 825*l*.

The rationale of *Tacoma v. NMFS* and *Save Our Streams* applies regardless of the statute under which plaintiffs purportedly mount their challenge to FERC license conditions. Thus, the fact that the PUD challenges Interior's application of the EPAct – just as sister agencies have prescribed license conditions pursuant to standards outlined by the ESA, NEPA, and NARFA – does not bear on the exclusivity of § 825*l*, which applies to all actions attacking, directly or indirectly, FERC license conditions.

Indeed, the PUD has *conceded* the exclusivity of appellate court review of mandatory conditions imposed by Interior in its case pending in this Court against EPA. In response to the Kalispel Tribe's motion to dismiss that case, also in part on the basis that the Court lacks subject matter jurisdiction because of the exclusive review provisions of § 825*l*, the PUD attempted to draw a distinction between the § 401 certification by EPA in that case and mandatory conditions imposed by other federal agencies pursuant to § 4(e) of the FPA. In arguing that distinction, the PUD admitted that "…it is true that the Court of Appeals has exclusive jurisdiction over appeals of mandatory license conditions filed by the Secretary

under Sections 4(e) and 18 of the FPA and Biological Opinions filed by FWS in FERC relicensing proceedings...." *Public Utility District No. 1 v. EPA*, No. 1:04cv2224 (RCL), Document 44, Plaintiff's Opposition To Defendant-Intervenor Kalispel Indian Tribe's Motion To Dismiss, filed November 4, 2005, at 9. Later, the PUD reaffirmed that position, saying "[t]he PUD acknowledges that it cannot challenge the mandatory conditions imposed pursuant to Section 4(e) and 18 of the FPA by any means other than appellate court review pursuant to § 825*l*." *Id.* at 12. Those concessions should be binding on the PUD here.

The breadth of § 825*l*'s jurisdictional exclusivity is rooted in fundamental and compelling policy concerns. Just at the district court did in *Tacoma v. NMFS*, the Ninth Circuit outlined these concerns in *Save Our Streams*:

> The purpose of by-passing the district court is to avoid the redundancy of compiling separate records before the agency and the trial court. Exclusive review provisions avoid the duplication of district and appellate review which crowds the timely and efficient disposition of administrative decisions .... It provides a single and expeditious procedure for resolving licensing disputes. Appellants theory would resurrect the very problems that Congress sought to eliminate. We do not believe, just as the District of Columbia Circuit in *Bond* did not believe, that Congress would involuntarily create a glaring loophole that would undermine the efficacy of the expedited process it adopted.

887 F.2d at 911-12 (citations omitted). In the case cited by the Ninth Circuit, *City of Rochester v. Bond*, the D.C. Circuit considered whether a challenge to a Federal Aviation Administration ("FAA") administrative determination, which became part of a Federal Communications Commission ("FCC") order, was subject to its exclusive jurisdiction when relevant statutes dictated such exclusivity for all challenges to FAA and FCC orders. 603 F.2d 927, 930-32 (D.C. Cir. 1979). The *Bond* court held that it was and reasoned:

> The rationale for statutory review is that coherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular courts. ... The policy behind having a special review procedure in the first place

10

similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals.

603 F.2d at 936.

In this case, these policy concerns are particularly amplified. The hydropower license issued by FERC to the PUD incorporates mandatory conditions from Interior (*Appendix A*), the Forest Service (*Appendix B*), FWS (*Appendix C*), and EPA (*Appendix E*). Each agency, of course, undertook agency actions in issuing these conditions. Here, the PUD challenges one such set of actions – those of Interior. At the same time, in a different action pending in this district court, the PUD is separately challenging EPA's certification that is a part of the same license. The PUD is also simultaneously seeking review of the Interior conditions and the EPA certification before FERC as part of the rehearing process mandated by 16 U.S.C. § 825*l*.

The PUD apparently aspires to be the poster child for piecemeal, redundant litigation of a FERC license. If the PUD is permitted to proceed, there would be nothing to stop the PUD from filing additional separate actions challenging conditions imposed by other agencies, such as the Forest Service and FWS. Every FERC licensing order could be hopelessly fractured and subject to collateral attack in numerous district courts even while FERC is already considering the aggrieved party's license rehearing petition, as in this case.

In the face of collateral district court challenges like the PUD's here, following rehearing, a circuit court would be confronted with a panoply of jurisdictional and preclusion riddles. This colossal waste of judicial resources is aptly illustrated by the PUD's pending multiple actions before this Court and FERC itself.

Finally, the standard of review the PUD invokes here is similar to the standard of review the PUD would enjoy in the appropriate circuit court. The PUD asserts that Interior's

11

procedures to set the mandatory conditions are arbitrary, capricious, and otherwise contrary to law. Complaint ¶¶ 9, 49, 53, 55. Similarly, license conditions imposed under § 797(e) must be reasonable, consistent with the law, and supported by substantial evidence in the record. *See, e.g., Ecsondido Mut. Water Co.*, 446 U.S. at 777 n.17; *Southern California Edison Co.*, 116 F.3d at 519. The D.C. Circuit has also recognized that license conditions challenged under § 825*l* are reviewable on arbitrary and capricious grounds. *Bangor Hydro-Elec. Co. v. FERC*, 78 F.3d 659, 663 (D.C. Cir. 1996). And, the FPA substantial evidence test "is no more than a recitation of the application of the 'arbitrary and capricious' standard to factual findings." *Maryland People's Counsel v. FERC*, 761 F.2d 768, 774 (D.C. Cir. 1985). Accordingly, if the Court finds it lacks subject matter jurisdiction to review Interior's actions, those actions will be subject to a similar level of scrutiny before the circuit court.

IV.   CONCLUSION

Because claims the PUD has regarding the Interior conditions imposed by the FERC license must exclusively be heard in the court of appeals, this case should be dismissed.

Dated this 9th day of May, 2006.

Respectfully submitted,

/s/ RIYAZ A. KANJI
Riyaz A. Kanji (D.C. Bar No. 455165)
KANJI & KATZEN, PLLC
101 N. Main Street, Suite 555
Ann Arbor, MI 48104
Telephone: 734-769-5400
Fax: 734-769-2701
Email: rkanji@kanjikatzen.com

/s/ PHILLIP E. KATZEN
Phillip E. Katzen
KANJI & KATZEN, PLLC
100 S. King Street, Suite 560
Seattle, WA 98104
Telephone: 206-344-8100
Fax: 866-283-0178
Email: pkatzen@kanjikatzen.com

*Attorneys for the Kalispel Tribe of Indians*