**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PUBLIC UTILITY DISTRICT NO. 1 OF | ) | |
| PEND OREILLE COUNTY, WASHINGTON | ) | |
| P.O. Box 190 | ) | |
| Newport, WA 99156-0190 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06CV00365RMC |
| | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| THE INTERIOR, | ) | |
| 1849 C Street, N.W. | ) | |
| Washington, D.C. 20240 | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S AND KALISPEL TRIBE'S MOTIONS TO DISMISS**

Plaintiff Public Utility District No. 1 of Pend Oreille County, Washington ("District"),

pursuant to Local Rule LCvR7(b), hereby submits this memorandum of points and authorities in

opposition to Defendant United States Department of the Interior's May 8, 2006 Motion to

Dismiss ("Interior's Motion") and Intervenor Kalispel Tribe of Indian's May 9, 2006 Motion to

Dismiss ("Kalispel's Motion"). Neither of the Motions raise any arguments that would justify

dismissal of the captioned Complaint, and both Motions should be denied.

**I.     SUMMARY OF THIS RESPONSE**

The District initiated this Complaint to challenge Interior's issuance, and implementation,

of regulations that, contrary to the specific intent of Section 241 of the Energy Policy Act of

2005 ("EPAct 2005"), unlawfully denied the District the benefit of specific statutory rights with

respect to conditions that Interior may impose on the District's hydroelectric license. This Court

has subject matter jurisdiction to review Interior's actions challenged here pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500, *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Federal question jurisdiction pursuant to 28 U.S.C. § 1331. Interior's Motion rests on two arguments: (1) that under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), this Court must be stripped of subject matter jurisdiction because, Interior alleges, the District is challenging conditions to its license as issued by the Federal Energy Regulatory Commission ("FERC") pursuant to the Federal Power Act ("FPA"), and the FPA requires that such challenges may only be made to a Court of Appeals; and (2) that under FRCP 12(b)(6), the District's Complaint fails to state a claim upon which relief may be granted because, Interior alleges, the statutory language of Section 241 clearly defeats the District's Complaint. The Kalispel Motion makes one argument that is similar to Interior's Rule 12(b)(1) argument.

Interior's and Kalispel's Rule 12(b)(1) arguments fail because they mischaracterize what the District is challenging in its Complaint. The District is not, as asserted by Interior and Kalispel, challenging in the present Complaint any specific condition that Interior has submitted to FERC for inclusion in the license. Rather, the District is challenging Interior's issuance and implementation of regulations pursuant to the EPAct 2005 that deprived the District of significant procedural and substantive rights mandated by Congress in EPAct 2005. The District's reference to the unreasonableness of Interior's conditions in its Complaint was only to show how the District was being concretely and adversely affected by conditions that were imposed in the absence of the significant procedural and substantive rights to which the District is statutorily entitled. The District is not asking this Court to invalidate any license conditions because they are unreasonable or onerous, but rather, the District is asking this Court to declare

that Interior violated a Congressional mandate to establish regulations that would provide the District specific rights to procedural and substantive safeguards. This Court has subject matter jurisdiction over this case pursuant to Federal question jurisdiction and the APA, which allows for judicial review of agency actions.

Interior's Rule 12(b)(6) argument fails because Interior's contention that Section 241 of EPAct 2005 clearly does not apply to the District is based upon an incorrect interpretation of the text and an incorrect assumption about when FERC licenses become final. Contrary to Interior's argument, Section 241's use of the term "license applicant" does not provide clear guidance as to the temporal applicability of the statute. Moreover, based upon a proper interpretation as to license status pending a rehearing request, FERC precedent as to when a license becomes final, and how the effective date of a newly enacted statute should be determined, it is clear that Section 241 does apply to the District.

Accordingly, the Interior Motion and the Kalispel Motion should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

As the relevant factual background for the Complaint was set forth in the Complaint and in Interior's Motion, the District will not recite all details herein, but provides the following concise background and will refer to relevant facts as necessary in the Argument section below.

### A.    The District

The District is a municipal corporation that owns and operates an electric and water utility serving about 7,000 customers in Pend Oreille County, Washington. In 1952, the Federal Power Commission granted the District a license pursuant to the FPA authorizing construction and operation of the Box Canyon Hydroelectric Project ("Box Canyon Project" or "Project") on the Pend Oreille River for a 50-year term, which the District has operated since that time.

## B.    The Relicensing Process

On January 21, 2000, the District filed an application with the FERC for a new license authorizing the continued operation of the Box Canyon Project beyond its initial license term. The Box Canyon Project is located primarily on non-federal lands.  Because approximately 493 acres of land within the Project area are located on lands of the Kalispel Indian Reservation and are potentially affected by the Project reservoir, under Sections 4(e) and 18 of the FPA, 16 U.S.C. §§ 797(e) and 811 (2000), Interior has the right to prescribe certain conditions that must be included in the hydroelectric license issued by the FERC for the protection of the reservation. Accordingly, during the relicensing process, Interior filed certain mandatory conditions and fishway prescriptions for the Project. On July 11, 2005, the FERC issued an order granting a new 50-year license for the Project that included these mandatory conditions and prescriptions.[1]

The FPA provides an opportunity for parties to seek rehearing within 30 days of issuance of an order, and the District filed such a request for rehearing on August 10, 2005, challenging certain aspects of the licensing order, including aspects related to Interior's conditions and prescriptions.  As of the date of this Response, the District's request for rehearing remains pending at FERC.

## C.    Energy Policy Act of 2005

On August 8, 2005, fundamental changes in the law applicable to Interior's mandatory license conditions occurred with the enactment of the EPAct 2005.  Section 241 of the new Act specifically addresses several fundamental due process inadequacies in the FPA regarding mandatory conditioning authority, including the provision that license applicants and other

---

[1] *Order Issuing New License,* 112 FERC ¶ 61,055 at paragraphs 44-45, 49 (2004).

parties are now entitled to a trial-type hearing of any disputed issues of material fact with respect to mandatory prescriptions and conditions.

In addition, Section 241 provides license applicants and other parties the right to propose alternative conditions to those submitted by the agency. The EPAct 2005 sets forth procedures for the consideration of alternative conditions and prescriptions that require Interior and other conditioning agencies to demonstrate that they have applied "equal consideration" to several factors, including energy supply and costs. Moreover, the FERC is now charged with the duty to make findings as to whether each of the mandatory conditions and prescriptions is consistent with the FPA and other applicable law.

Section 241 provides that within 90 days of the date of enactment of the EPAct 2005, "the Secretaries of the Interior, Commerce, and Agriculture shall establish jointly, by rule, the procedures" for trial-type hearings. On November 17, 2005, the Departments of Interior, Commerce, and Agriculture jointly issued an Interim Final Rule implementing the trial-type hearing provisions of Section 241.[2] The Rule was issued without the benefit of public comment and was a "final" rule made effective immediately to determine the rights of the parties subject to it. (See Exhibit A to the District's Complaint). A provision of the Interim Final Rule, with no basis in the EPAct 2005, restricts application of the statutory rights relating to licensing conditions to "any hydropower license proceeding for which the license has not been issued as of November 17, 2005."[3]

---

[2] Resource Agency Procedures for Conditions and Prescriptions in Hydropower Licenses, 70 Fed. Reg. 69,804 (Nov. 17, 2005) (to be codified at 7 C.F.R. pt. 1 (Agriculture), 43 C.F.R. pt. 45 (Interior), and 50 C.F.R. pt. 221 (Commerce)).

[3] See "What is the purpose of this subpart, and to what license proceedings does it apply?", 43 C.F.R. § 45.1(d)(1), 70 Fed. Reg. at 69808, 69829-30.

### D.     The District's Requests for and Interior's Denials of the Application of the Substantive and Procedural Rights of the EPAct 2005

Two days following enactment of the EPAct 2005, on August 10, 2005, the District wrote a letter to the Secretary of the Interior, the Honorable Gale A. Norton, requesting that Interior comply with its new hearing obligations under EPAct 2005 in a timely manner.  In a letter, dated September 23, 2005, Lawrence A. Finfer, Interior Acting Director, Office of Policy Analysis, replied that the new statutory provisions would not be applied to the Box Canyon proceeding.

On December 19, 2005, the District filed with Interior a formal request for hearing and proposed alternative conditions and prescriptions for the Box Canyon Project, in accordance with the procedures established under the Interim Final Rule's implementation of the EPAct 2005. By letter dated February 1, 2006, Interior advised the District that it was rejecting the District's request for hearing and alternative conditions.  Interior's explanation for the rejection relied upon its new regulations promulgated by the Interim Final Rule that limited the hearing procedures to those proceedings in which the FERC had not issued a licensing order as of November 17, 2005. (See Exhibit B to the District's Complaint).

### E.     Proceedings in This Court

The District filed a complaint in this Court on March 1, 2006, seeking administrative review of Interior's actions pursuant to the APA.  Specifically, the District requested that this Court hold unlawful and set aside certain of Interior's regulations and decisions that have denied the District access to a trial-type hearing and the other statutory requirements of Section 241 of the EPAct 2005; and declare that the District has a right to a hearing, to propose alternative conditions, and to have applied to the Box Canyon Project license the other provisions of Section 241.

### III.    ARGUMENT

#### A.    THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER THE APA

It is clear that under typical circumstances, this Court would have subject matter jurisdiction over the challenged regulations pursuant to the APA, because there is no other review procedure provided by any relevant statute. *Wellife Products v. Shalala*, 52 F.3d 357, 358 (D.C. Cir. 1995) (explaining that where federal statute made no provision for judicial review of regulations promulgated under the statute, action for judicial review of such a regulation fell within scope of district courts' general federal question jurisdiction and did not fall within Court of Appeals' jurisdiction); *International Brotherhood of Teamsters v. Pena*, 17 F.3d 1478 (D.C. Cir. 1994) (concluding that unless statute provide otherwise, persons seeking review of agency action go first to district court rather than to Court of Appeals); *Public Citizen v. Federal Trade Commission*, 829 F.2d 149 (D.C. Cir. 1987) (holding that where regulations promulgated by FTC pursuant to federal statute that did not contain judicial review provision covering regulations in questions "those regulations may be reviewed, in the manner prescribed by the APA, 5 U.S.C. 702, in a district court").

Interior and the Tribe argue that the District's Complaint must be dismissed because the District's claims must be removed from review under the APA in this Court, and must be brought exclusively in the federal appellate courts under the FPA's review provision at Section 313, 16 U.S.C. § 825*l* (2000).  However, the very first sentence of Interior's argument on this point reveals the fallacy upon which the argument is based.  Interior's Motion asserts that "Plaintiff presents what is in reality a challenge to its FERC license under the guise of a procedural challenge to the inclusion of certain mandatory conditions in its hydropower license." (Interior Motion at 12).  However, the District is <u>not</u> in this case challenging its FERC license,

7

nor is the District's Complaint even "under the guise" of making a "procedural challenge" to the "inclusion" of certain conditions in its license. Rather, as clearly stated in the District's Complaint, it is challenging the lawfulness of regulations issued by Interior that were supposed to implement the mandates of Section 241 of the EPAct 2005 but did not do so, and Interior's reliance on those unlawful regulations to deny the District the procedural and substantive rights that the District is entitled to as a result of Section 241.

Congress charged Interior and the other agencies with mandatory conditioning authority to promulgate regulations that would faithfully implement Section 241. Contrary to that charge, Interior has promulgated regulations that are inconsistent with Section 241, and _that_ is the agency action that the District seeks review of in this Court under the APA. As stated in Count 1 of the District's Complaint:

> Interior's promulgation of an applicability provision of the Interim Final Rule, specifically 43 C.F.R. §45.1(d)(1), which deprives the District access to a trial-type hearing on mandatory licensing conditions, is directly contrary to Section 241 of the EPAct, which provides that the District is entitled to such a hearing and license conditions that are based thereon. This provision of Interior's Interim Final Rule is therefore not in accordance with law, in violation of 5 U.S.C. § 706(2)(A).

Accordingly, the District is clearly not in this case challenging its FERC license or the substance of any specific license condition mandated by Interior. The District is not asking this Court to review any specific licensing conditions or to determine that any specific conditions mandated by Interior are unreasonable or unsupported by substantial evidence, which would likely be the province of a reviewing authority other than this Court. However, this Court has jurisdiction to review under the APA whether Interior lawfully carried out a Congressional directive that specifically tasked Interior with implementing Section 241, and that is what the District is asking the Court to do.

The cases cited by Interior's Motion and Kalispel's Motion to support their Rule 12(b)(1) argument are distinguishable from this case. Generally, these cited cases stand for the proposition that if a party wishes to challenge the substance of a condition or a conclusion of an agency that by law may make specific determinations that are binding with respect to a specific license issued by FERC, that challenge must occur in the context of judicial review of the FERC-issued license pursuant to Section 313 of the FPA. For example, Interior and Kalispel cite to *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989), where the court held that a challenge to U.S. Forest Service license conditions mandated under FPA Section 4(e) could not be brought in the district court, even if the challenger wished to demonstrate that the Forest Service failed to follow distinct statutory procedures such as the National Environmental Policy Act ("NEPA"). The principal distinction between that case and this one is that the plaintiff there sought to challenge the legality of conditions that the Forest Service prescribed for a specific hydroelectric license. The sole purpose of the Forest Service action challenged in *California Save Our Streams* was to develop conditions for a unique hydroelectric license, and in the absence of that specific license application, the action would not have been taken.

In the present case, the District is not challenging the specific conditions that Interior developed for the District's unique Project. Rather, the District is challenging the regulations of general applicability that Interior promulgated at the direction of Congress to implement statutory commands. If this Court does not have subject matter jurisdiction to review these regulations of general applicability apart from a licensing appeal, it would mean that this extensive set of general regulations issued by three agencies could never be subject to judicial

review except through court of appeals reviews of specific licensing orders. This would be a result contrary to the APA.

All of the cases cited by Interior and Kalispel holding that the FPA Section 313 court review provisions must prevail over district court APA jurisdiction involved agency actions that were undertaken to support a specific hydroelectric license application. Thus, in several of the cited cases, the issue was whether a consulting agency's actions were lawful under the Endangered Species Act. *See City of Tacoma v. NMFS*, 383 F. Supp. 2d 89 (D. D.C. 2005) (challenge in district court to a biological opinion issued by National Marine Fisheries Service ("NMFS") pursuant to the Endangered Species Act in the course of a FERC license proceeding); *Idaho Rivers United v. Foss*, 373 F. Supp. 2d 1158 (D. Idaho 2005) (plaintiffs challenged a Biological Opinion prepared by the U.S. Fish and Wildlife Service in a FERC licensing proceeding); *Southwest Ctr. for Biological Diversity v. FERC*, 967 F. Supp. 1166 (D. Ariz. 1997) (plaintiff challenged FERC's failure to consult FWS in a proceeding under FPA). The significant point in all of these cases is that the plaintiffs were challenging actions that were taken in connection with a specific FERC licensing proceeding, and the challenged actions would not have been taken but for that specific FERC licensing proceeding. The courts concluded that agency decisions made in connection with a specific FERC licensing application should be reviewed together by the courts of appeals pursuant to the FPA review provisions.

That the critical fact in these cases was the direct connection between an agency action and a FERC licensing proceeding was made clear in *National Parks & Conservation Ass'n v. FAA*, 998 F.2d 1523, 1528-29 (10th Cir. 1993). Although not a FERC case, *National Parks* relied on the same precedent and principles cited in Interior's and Kalispel's Motions. As relevant, one issue was whether the decision by the Bureau of Land Management ("BLM") to

dispose of land for purposes of building an airport could be reviewed separately in a district court

or had to be reviewed in the court review of the Federal Aviation Administration's ("FAA")

decision approving airport construction. The Tenth Circuit Court of Appeals, to resolve this

issue, asked whether the BLM action was taken to "facilitate" the FAA action, stating:

> In order to find appellate jurisdiction in this case, we must
> determine that the actions of the BLM were taken to facilitate the
> actions of the FAA, and that such facilitation places the BLM's
> actions under our jurisdiction.

*Id.* at 1528. Upon review of the facts, the court determined that "the BLM's decision-making

process was initiated by the provisions of the FAA Act," and "the actions of the BLM were made

at the request of and as part of the FAA's planning process." *Id.* at 1528-29. The court

emphasized that this analysis of the direct nexus between the FAA action and the BLM action

allowed it to conclude that it had jurisdiction to review the BLM action along with the FAA

review.

In the present case, the action Plaintiffs are challenging – the promulgation of regulations

of general applicability by Interior – was not initiated by FERC or as the result of a FERC

licensing proceeding. Rather, Interior had an independent responsibility required by statute to

draft regulations of general applicability to implement Section 241 of the EPAct 2005. It is

Interior's exercise of that rulemaking responsibility that the District is challenging in the present

Complaint. The fact that there is a rough coincidence of timing between Congress' requirement

that Interior promulgate regulations governing mandatory licensing conditions and the issuance

of the District's license by FERC is not a sufficient nexus to pull judicial review of the former

into the review proceedings for the latter.

Accordingly, the present case does not fit the mold of the *California Save Our Streams*

case or the other cases cited by Interior and Kalispel where the challenged agency action was an

action taken specifically to support a particular FERC license proceeding. Interior's promulgation of the challenged regulations would have been required even in the absence of the District's FERC licensing proceeding. That independent action by Interior is subject to judicial review under the APA in this Court as there is no other forum where review would be appropriate. The District acknowledges that the cases cited by Interior and Kalispel indicate that the District could not challenge the substance of the mandatory conditions imposed pursuant to Sections 4(e) and 18 of the FPA by any means other than appellate court review pursuant to FPA Section 313, 16 U.S.C. § 825*l* (2000). However, as stated above, the District is not attempting in this case to challenge the substance of the Interior conditions mandated for its Project.

Interior's specific denial of the District's hearing request by its February 1, 2006 letter was based exclusively on Interior's regulations. It is therefore those regulations that are being challenged in this case, and this Court has subject matter jurisdiction to review them.

**B.    The District Has Stated a Claim Upon Which Relief Can Be Granted, Because It Is Clear That Interior's Regulations Violate the Requirements of Section 241 of the EPAct 2005**

Interior argues that the District's Complaint should be dismissed pursuant to FRCP 12(b)(6) on the grounds that the District has not stated a claim upon which relief can be granted. (Interior Motion at 19). Interior's argument is based upon its assertion that "Congress provided clear and explicit guidance as to the temporal reach of the provision for trial-type hearings in section 241." Interior then proceeds to engage in an interpretation of the language of Section 241 and asserts that its "plain meaning" shows that the District has "failed to state an actionable claim." (*Id.* at 23). Indeed, only if the statute plainly precluded any interpretation other than that theorized by Interior would a Rule 12(b)(6) dismissal be appropriate. Under Rule 12(b)(6), "the defendant has the burden of showing no claim has been stated." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406,1409 (3d Cir.), *cert. denied*, 501 U.S. 1222

(1991).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41,45-46 (1957).  Here, as shown below, Interior has not satisfied its burden of demonstrating that Section 241 clearly precludes the District's claim; if anything, the statute must be interpreted in a manner contrary to what Interior claims is its "plain meaning."

Interior's "plain meaning" interpretation of Section 241 of the EPAct 2005 is based on its contention that the statute uses the term "license applicant" to refer to the entity that is entitled to the new rights under that section, and that once FERC issues an order granting the license, "license applicant" status automatically and necessarily ceases.  Therefore, according to Interior, the statute could only apply to "license applicants," and not entities that had received a FERC license order, at the time the statute became effective.

There are a number of problems with Interior's "plain meaning" analysis, not the least of which is Interior's frank admission that the term "license applicant" is nowhere defined in relevant legislation, which means that Interior is forced to make up its own definition for the term. (Interior Motion at 20).  This is hardly the stuff that "plain meaning" is made of.  Another problem, which will be discussed more below, is that Interior's own "plain meaning" analysis would require that Section 241 apply to every "license applicant" existing on the August 8, 2005 date of enactment of the statute, but its regulations select the date of November 17, 2005 as the date of demarcation between licensees and license applicants for purposes of applicability.  This inconsistency suggests that the plain meaning of the statute is not as plain as Interior argues.

Notably, Interior does not claim any *Chevron*[4] deference for its interpretation of

Section 241, which is understandable because no deference is due. Interpretations of an agency

that were not derived from notice-and-comment or adjudicatory actions, and that were without

evidence of careful consideration, are due no *Chevron* deference. *See Christensen v. Harris*

*County*, 529 U.S. 576, 586-87 (2000); *United States v. Mead Corporation*, 533 U.S. 218, 228

(2001); *see also N.Y. State Bar Ass'n v. FTC*, 276 F.Supp.2d 110, 139 (D.D.C. 2003), *aff'd*,

*American Bar Ass'n v. F.T.C.*, 430 F.3d 457 (D.C. Cir. 2005) (court held FTC interpretation of

statute was due no deference "because the FTC's interpretation appears to have been made

without any degree of deliberation, thoughtful consideration or comments from the public.")

"That counsel advances a particular statutory interpretation during the course of trial does not

confer upon that interpretation any special legitimacy. Deference under *Chevron*, even in the

context of informal adjudication, can be accorded only to a judgment of the agency itself." *City*

*of Kansas City, Missouri v. HUD*, 923 F.2d 188, 192 (D.C.Cir.1991). In the present case,

Interior's regulations, which were not subject to notice-and-comment, offered no explanation for

the date chosen for effectiveness, and the explanation that is made in Interior's Motion to

Dismiss is made by Counsel here for the first time. Thus, the statutory interpretation advanced

by Interior in its Motion is entitled to no special respect.

        1.      **Interior's Emphasis on Section 241's Use of the Term "License**
                        **Applicant" Does Not Mean That Interior's Interpretation of the**
                        **Statute is Correct**

Interior argues that use of the term "license applicant" in Section 241 necessarily could

not apply to the District, to whom a license order had been issued on July 11, 2005, and

therefore, Interior's regulations that precluded the District from Section 241 rights could not be

---

[4] *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81
L.Ed.2d 694 (1984).

unlawful on that basis. For a number of reasons, Interior's emphasis on the term "license applicant" does not reveal the clear meaning of the statute that Interior asserts it has. Even if Section 241 had given the new rights only to "license applicants," (it did not – it also gave them to "any party to the proceeding" as discussed below), Interior admits that the term "license applicant" is not defined. Thus, Interior supplies its own definition to suit its argument. It argues, without any support, that "license applicant" status must cease the moment FERC issues its order that grants the license, *i.e.,* that "license applicant" status and "licensee" status are mutually exclusive.

This argument fails because there is no authority for the proposition that "license applicant" status ends upon FERC's issuance of the license order, especially where, as here, the licensee contests the licensing conditions through a rehearing request. Pursuant to Section 6 of the FPA, 16 U.S.C. § 799 (2000), issued licenses are conditioned upon <u>acceptance</u> by the licensee of all of the terms and conditions of the license. The license issued is in effect a conditional license until formally accepted by the entity to whom it was issued. The FERC has held that a license is deemed to have been accepted if the licensee does <u>not</u> file a request for rehearing or otherwise declare non-acceptance within 30 days. *City of Tacoma*, 73 FERC ¶ 61,210 at 61,578 (1995). In this *Tacoma* case, the license applicant rejected the license within 30 days. As a result, FERC rescinded the order issuing the license and dismissed the <u>license application</u>. Notably, even though FERC had issued a licensing order, it subsequently rescinded the order and dismissed the license application because the license had not yet been accepted.

Similarly, in *City of Richmond*, 38 FERC ¶ 61,100 at 61,267 (1987), a licensing order was issued in August 1982, and Richmond filed a request for rehearing. After four years, while

its rehearing request was still pending, Richmond filed to withdraw its <u>license application</u>.

FERC granted the request, stating:

> Pursuant to Section 6 of the Federal Power Act, licenses are issued subject to the licensee's acceptance of their terms and conditions. The license orders state that failure to file a request for rehearing shall constitute acceptance of the license. <u>As Richmond did file for rehearing, it has not yet accepted the licenses, and may request to withdraw its license applications.</u>

This case demonstrates that until a license is accepted, even if four years after the license order, the license application is deemed to remain alive to the extent that it may be withdrawn. *Accord Montana Power Co. and Granite County*, 62 FERC ¶61,166 at 62,144 (1993) (applicant given until 90 days after rehearing order to accept license, and if it did not, its "license application" will be dismissed); *Appomattox River Water Authority*, 60 FERC ¶61,083 at 61,259 (1992) (licensee's rejection of license after rehearing order was treated as a "withdrawal of its license application").

These cases show that FERC considers a license application to remain alive and subject to withdrawal or dismissal in the time period after license issuance and before license acceptance. Given that the license application remains alive after license issuance, Interior's contention that the "license applicant" as an entity necessarily disappears at the moment of issuance of the licensing order is not consistent with FERC precedent. These cases also undermine Interior's contention that licensee status "will not change" regardless of any actions during the rehearing period. (Interior Motion at 21). Accordingly, contrary to Interior's interpretation of "license applicant" which relies on nothing but Interior's proffered semantics, it is quite conceivable that Congress intended to encompass within the scope of Section 241 all license applicants that have not yet accepted their licenses, regardless of whether FERC has issued a licensing order. This interpretation is in fact perfectly logical because then the remedial

statute that was intended to cure deficiencies in the mandatory conditioning process would apply to any entity still legally challenging the conditions at the date of enactment.

In the District's case, it did request rehearing of a number of the conditions included in the licensing order, and that rehearing request is pending. As such, the District has not yet accepted its license, which means that FERC considers its license application to still be alive and the District could still be considered a license applicant pursuant to FERC precedent. As Interior has stated in another case, "the sole question in determining the applicability of the new [Section 241] procedures is whether an application remains pending before FERC."[5] Given that the District has requested rehearing of its conditions and has not yet formally accepted its license, its license proceeding remains pending before FERC.

### 2. Interior's Emphasis on Section 241's Use of the Term "License Applicant" Ignores the Fact That Section 241 Gives the Same Rights to "Any Party to the Proceeding"

Throughout its argument, Interior refers only to the "license applicant" as being given the hearing and other rights under Section 241. In further support of the fact that Interior has misinterpreted the intended scope of Section 241 rights, at each relevant point in Section 241, the entitlements are not just given to "license applicant," but are given to the "license applicant <u>and any party to the proceeding</u>." It is clear that FERC's licensing proceeding does not end with the issuance of the license order, but continues up until the time FERC issues its final order on rehearing. For example, FERC has specific rules prohibiting ex parte communications throughout a "contested on-the-record proceeding," which is defined to encompass the period up to the final order on rehearing. *See* 18 C.F.R. §385.2201(d) (2005). In FERC's Notice of Proposed Rulemaking that promulgated these regulations, it explained:

---

[5] *American Rivers, et al. v Interior, et al.*, Civ. No. C 05-2086-MJB (W.D. Wash.), Defendant's Motion to Dismiss, filed March 15, 2006, at p. 15.

> The prohibitions would remain in force until <u>final disposition of the proceeding</u> by the Commission, or until the opposition, complaint or protest is withdrawn. <u>Final disposition refers to the final Commission decision and the rehearing of that decision, where applicable.</u> This means the prohibitions would continue until the Commission has acted on petitions for rehearing, rehearing has been denied by operation of law, the time for petitions for rehearing has passed and none has been filed, an application is withdrawn, or, in matters where there is no right to rehearing (e.g., DOE remedial order cases), when the Commission issues its final decision.

*Regulations Governing Off-the-Record Communications*, 63 Fed. Reg. 51312, CCH Regulation Preambles FERC Stats. & Regs. ¶32,534 at 33,504 (1998). Accordingly, FERC's general rule is that "proceedings" in a case continue until a final FERC decision on any rehearing requests.

Because the District filed for rehearing of its licensing order and that rehearing request remains pending, the District's licensing proceeding is still ongoing. Thus, even if one were to accept Interior's argument that the District was not a "license applicant" as of the August 8, 2005 date of enactment of the EPAct, the District was certainly a "party" to its ongoing licensing "proceeding" as of that date. While Interior's interpretation of "license applicant" would create an inconsistency with the "party to the proceeding" phrase, the District's interpretation, which, as discussed in the previous section would make Section 241 applicable to any case where the licensee has not yet accepted the license, makes the two phrases consistent.

### 3.    Interior's Interpretation of Section 241 is Logically Inconsistent With Interior's Implementing Regulations

Interior's interpretation of Section 241, with its emphasis on "license applicants" existing as of the August 8, 2005 effective date of Section 241, makes the case that Congress intended the entitlements in that section to apply to all license applicants with that status as of that date. Its argument that the issuance of the licensing order extinguishes the "license applicant" could therefore lead to only one result as to the applicability of the Section 241 rights, namely that they

would apply in all cases where a license order had not been issued prior to August 8, 2005. This is the necessary outcome of Interior's alleged "plain meaning" of the statute. Interior refers to this as Congress' "clear direction as to the applicability of the Act."[6] (Interior Motion at 22).

However, this "clear direction" was not so clear to Interior and the other agencies when they promulgated their implementing regulations challenged here. There, Interior decided that Section 241 applies only where a license had not been issued as of November 17, 2005. 43 C.F.R. § 45.1(d)(2005). Although the District does not believe that there is any rational basis for the selection of November 17, 2005, the inconsistency between the "clear" August 8, 2005 date resulting from the alleged plain meaning of the statute as argued in Interior's Motion and the date chosen by Interior in its implementing regulations can mean only one of two things: either Section 241 is not as plain and clear as Interior argues here, or Interior blatantly ignored the plain meaning of the statute when it adopted its regulations. As the District does not believe that Interior and the other agencies would deliberately ignore the plain meaning of the statute, it must be the case that Interior's arguments here about the plain meaning of the statute cannot prevail.

## C.    A Proper Interpretation of Section 241 Requires the Conclusion That it was Intended to Apply to Proceedings That Remained Under Review at FERC

The discussion in the preceding sections demonstrates that the "plain meaning" of Section 241 cannot be what Interior claims it to be, *i.e.*, that it does not apply to any case where FERC issued a licensing order. A more logical reading of the statute shows that Congress likely intended it to apply to any entity that still had the legal right to contest its license conditions at FERC. However, even if Section 241 were deemed to be silent or ambiguous as to its

---

[6] *See also* Interior's Motion to Dismiss a separate complaint regarding the applicability of Section 241, where it stated, "the Act applies to all license applications pending before FERC at the time of its enactment." *American Rivers, et al. v Interior, et al.*, Civ. No. C 05-2086-MJB (W.D. Wash.), Defendant's Motion to Dismiss, filed March 15, 2006, at p. 17.

application, the law in such a case requires that Section 241 be interpreted to apply to entities that had the District's status as of the date of enactment.

      **1.     There is no Specification in Section 241 as to which Proceedings it Applies, and it must therefore be Presumed to Apply to all Open Licensing Proceedings as of the Date of Enactment**

There is no language in Section 241 of the EPAct 2005 specifying its effective date, so according to established statutory interpretation principles, it is effective on the date of enactment, *i.e.*, the date signed by the President.[7]  The EPAct 2005 was signed into law by the President on August 8, 2005, which accordingly is its effective date.  Section 241 is a remedial statute, intending to remedy several fundamental due process inadequacies that were in the FPA regarding mandatory conditioning authority.  Among the new rights and safeguards regarding the promulgation of Section 4(e) conditions and Section 18 prescriptions are the following:

    (1)    A license applicant and other parties are given the right to a determination on the record, after opportunity for a trial-type hearing before the relevant agency, including discovery and cross-examination of witnesses, of any disputed issues of material fact with respect to the mandatory conditions or prescriptions.

    (2)    A license applicant and other parties are given the right to propose a cost or energy-saving alternative condition or prescription that must be accepted by the relevant Secretary upon a showing that the alternative condition provides adequate protection to the reservation or that the alternative prescription will be no less protective than the condition initially prescribed by the Secretary.

    (3)    In considering such an alternative, the relevant Secretary must consider evidence in the record including implementation costs and operational impacts for electricity production.

---

[7] *See Sutherland Statutory Construction*, § 33:6 (6th ed. 2001), and cases cited therein.

(4)    For any Section 4(e) condition or Section 18 prescription or alternative measure adopted, the relevant Secretary is obligated to submit a written statement explaining the basis for the condition or prescription, and reason for not accepting a proposed alternative. The statement must demonstrate that the Secretary gave equal consideration to the effects of the condition, prescription and alternatives not adopted on energy supply, distribution, cost, and use; flood control; navigation; water supply; and air quality (in addition to the preservation of other aspects of environmental quality).

(5)    FERC has an obligation to review these final conditions and prescriptions, and make a finding as to whether they are consistent with Part I of the FPA or other applicable law; FERC may also refer such disputes to the FERC's Dispute Resolution Service for an advisory.

Unlike other legislation in which Congress specified that amendments to the FPA would be effective only for future orders or proceedings, Section 241 of the EPAct 2005 is conspicuously silent on this issue. For example, the last time Congress substantially modified the law applicable to hydroelectric licensing, the Electric Consumer Protection Act of 1986 ("ECPA"), Section 18 of that Act specified that most of the amendments made by that Act would take effect with respect to each license, permit, or exemption issued "after the date of enactment."[8] Thus, if Congress wanted the amendments it was enacting to apply to only licenses issued after the date of enactment, it is clear that it knew how to include such language and it would explicitly state that intent. The absence of such language in Section 241 demonstrates that such is not what Congress intended; rather, it intended the new provisions to be applicable to all

---

[8] *See Rock Creek Limited Partnership*, 53 FERC ¶ 61,314 (1990) (since license issued before date of enactment, ECPA not applicable).

pending and non-final licensing proceedings. Other well-established legal principles, discussed *infra*, also support this conclusion.

> **2.    Because the License Order is not Final, There is no Reason Not to Apply Section 241's Remedial Provisions to the District**

Because the District has filed a timely request for rehearing of FERC's July 11, 2005 licensing Order in this proceeding, the order and the license remain non-final and subject to alteration by FERC. Therefore, application of Section 241 to the District's Project does not raise issues of retroactivity. It only raises issues of application of a remedial statute to non-final, pending proceedings at FERC.

Finality of a proceeding for purposes of proceedings under the FPA does not occur until after any requests for rehearing have been addressed. Section 313(a) of the FPA provides that an entity may not seek judicial review of a Commission order under the FPA unless the entity "made application to the Commission for a rehearing thereon." 16 U.S.C. § 825l(a) (2000). Accordingly, a FERC order issuing a license does not have statutory finality until all issues on rehearing have been addressed.

This non-finality of orders subject to rehearing has been explicitly applied by FERC to license orders for hydroelectric projects. FERC has succinctly stated this principle of non-finality during the period a license order remains subject to rehearing and judicial review as follows:

> Because of the pending Steidl rehearing request, <u>our order issuing license does not become final until we take action on that rehearing request,</u> and we can amend or otherwise modify the license, or even rescind it, until we take such action.[9]

---

[9] *Jack M. Fuls*, 36 FERC ¶ 61,136 (1986) (emphasis added).

In the present case, the District filed its timely request for rehearing of the July 11, 2005 licensing Order.[10]  Accordingly, that licensing Order, as in the case quoted above, remains non-final and subject to alteration by the Commission.  The FERC has often considered additional record evidence after a license order was issued but before it became final,[11] even to the extent that it has rescinded previously issued licenses when circumstances changed or additional information came to light.[12]

Given that the FERC is still considering a non-final licensing order, and the FERC routinely adduces additional record evidence during the pendency of non-final licensing orders, there is no proper reason to deny application of the new statutory provisions of Section 241 to the Box Canyon licensing proceeding.  Indeed, not to do so would be at odds with FERC precedent and fundamentally unfair to the District in that it would deny it the rights expressly conferred by Congress.

### 3.    Court Precedent Requires the Application of the New Statutory Provisions to Pending Proceedings

There is a well-established legal principle recognized by the courts, including the Supreme Court, that when there is a change in law between the time an agency or lower court renders a decision and the time of decision by a reviewing appellate court, the appellate court is required to apply the new law in effect at the time of its decision.  In one Supreme Court case,

---

[10] On September 9, 2005, the FERC granted rehearing for the sole purpose of allowing more time for further consideration of the rehearing requests before it.

[11] *See City of Tacoma, Washington*, 104 FERC ¶ 61,324 (2003) (FERC entered formal consultation under Endangered Species Act regarding license conditions after remand of licensing order from court).

[12] *See, e.g., Public Utility District No. 1 of Okanogan County, Washington*, 90 FERC ¶ 61,169 (2000).  This case is another example of license rescission while the license was non-final pending judicial review in the case of the Blue Ridge Pumped Storage Project.  There, while the license was pending judicial review, Congress passed amendments to the Wild and Scenic Rivers Act that foreclosed the building of the project.  The U.S. Court of Claims held that the licensee was not entitled to compensation for its lost license because the license was not sufficiently final at the time of the new legislation due to the fact that it was still subject to judicial review.  *Appalachian Power Company v. U.S.*, 607 F.2d 935 (Ct. Cl. 1979).

the Department of Housing and Urban Development issued new regulations governing evictions after an eviction proceeding had commenced, and the issue was whether the new regulations should apply to the pending proceeding. The Court held they must, stating, "The general rule, however, is that an appellate court must apply the law in effect at the time it renders its decision."[13] The Supreme Court followed the same rationale when it held that new legislation on attorneys' fees was applicable to a proceeding that had already commenced.[14]

Interior itself has fully acknowledged the validity of the rule that new laws can be applicable to pending proceedings. In its Motion to Dismiss a separate complaint challenging the Section 241 Interim Final Regulations in the United States District Court in Washington State, Interior cited the Supreme Court case of *Ex Parte Collett*, 337 U.S. 55 (1949), for the holding that newly enacted venue provisions should apply to pending civil cases, not just subsequently filed cases. After quoting from *Collett*, Interior stated with respect to Section 241:

> The same is true in the instant case: it is impossible to read the Act as excising applicants (with respect to whom prescriptions and conditions have been filed) from the Act's grant of new procedures to "license applicants." Because Congress made no distinction between license applications at various stages, the Act must be read to apply to all applicants. Its reach is unmistakable.[15]

Although Interior was likely using the term "applicants" in the same narrow sense it asserts in its Motion in this case, it is significant that Interior endorses the concept that Section 241 must

---

[13] *Thorpe v. Housing Authority*, 393 U.S. 268, 281-2 (1969).

[14] *Bradley v. School Bd. of Richmond*, 416 U.S. 632, 711 (1974). In at least two cases, the D.C. Circuit has remanded decisions to FERC to require that FERC decide whether to apply a new rule adopted by FERC since issuance of the decision being appealed. *Williston Basin Interstate Pipeline Co. v. FERC*, 165 F.3d 54, 62 (D.C. Cir 1999); *Panhandle Eastern Pipeline Co. v. FERC*, 890 F.2d 435, 438-9 (D.C. Cir. 1989). This also supports the conclusion that the FERC itself, and by extension the conditioning agencies, may apply changes in the law to cases that are still before them, as is the present case.

[15] *American Rivers, et al. v Interior, et al.*, Civ. No. C 05-2086-MJB (W.D. Wash.), Defendant's Motion to Dismiss, filed March 15, 2006, at p. 16.

apply to pending cases even after the conditions and prescriptions were already made by the mandating agencies.

In a case that thoroughly analyzed the application of new law to pending cases, the Supreme Court in the *Landgraf* case[16] discussed the apparent tension between the rule that a court must apply the new law in effect at the time of its decision, and the axiom disfavoring the retroactive effect of laws. The Court resolved that tension by finding that the axiom disfavoring the retroactive effect of laws applied primarily in the circumstances when the law would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. In the present case, there is no such concern with retroactivity. As discussed above, the license Order is non-final and the FERC has often addressed new evidence at this stage in the licensing proceeding. Moreover, the conditions and prescriptions at issue do not touch on past conduct. To the contrary, they only apply prospectively to future modifications and operations of the Project.

That the new rights and remedies conferred by Congress should apply to any case that remains non-final is further supported by the principle that people should be allowed to take advantage of situations where an old unfavorable rule was replaced with a favorable rule. The Supreme Court cited approvingly of this principle, namely, "that the government should accord grace to private parties disadvantaged by an old rule when it adopts a new and more generous one."[17] In the present case, the District was disadvantaged by the old rule that Congress sought to fix in Section 241. There is no reason to foreclose it from taking advantage of the new rule.

---

[16] *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994) ("*Landgraf*").

[17] *Landgraf v. USI Film Products*, 511 U.S. at 276 n. 30, *citing DeGurules v. INS*, 833 F.2d 861, 862-63 (9th Cir. 1987).

    **4.**    **Even if the Application of Section 241 Were Analyzed Under Principles of Retroactive Application of Laws, Section 241 Should Still Be Considered Applicable to Those in the District's Situation**

Because the District's license is non-final, there is no real issue as to whether retroactive application of Section 241 would be appropriate. However, even under an analysis of retroactive application of law, the application of Section 241 to the District would still be appropriate. In *Landgraf*, where the Court discussed this issue extensively, it expressed less concern about permitting retroactive application in cases where there were no Constitutional concerns:

> The Constitution's restrictions, of course, are of limited scope. Absent a violation of one of those specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope. Retroactivity provisions often serve <u>entirely benign and legitimate purposes</u>, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, <u>or simply to give comprehensive effect to a new law Congress considers salutary</u>.

*Id.* at 267-68 (emphasis added, footnote omitted). Under this analysis, Section 241 must be considered to contain provisions for an "entirely benign and legitimate purpose" and its application to the Box Canyon proceeding would "simply give comprehensive effect to a new law Congress considers salutary."

The Supreme Court in *Landgraf* recognized exceptions to the presumption against retroactivity in cases where new legislation is jurisdictional, procedural, or remedial in nature. Section 241 and the interim final rule carry aspects of each of these exceptions. The *Landgraf* Court emphasized: "Although we have long embraced a presumption against statutory retroactivity, for just as long we have recognized that, in many situations, a court should 'apply the law in effect at the time it renders its decision,' even though that law was enacted after the events that gave rise to the suit." *Landgraf*, 511 U.S. at 273 (quoting *Bradley*, 416 U.S. at 711) (citation omitted). The Court maintained that "[e]ven absent specific legislative authorization,

application of new statutes passed after the events in suit is unquestionably proper in many

situations." *Landgraf*, 511 U.S. at 273.

In *Landgraf*, the Court observed that "[c]hanges in procedural rules may often be applied

in suits arising before their enactment without raising concerns about retroactivity."

*Landgraf*, 511 U.S. at 275. The Court explained that this exception was reasonable because of

"the diminished reliance interests in matters of procedure." *Id.* (*citing Ex parte Collett*, 337

U.S. 55, 71 (1949), because that opinion held that "28 U.S.C. § 1404(a) governed the transfer of

an action instituted prior to that statute's enactment"). Moreover, the Court stated: "Because

rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural

rule was instituted after the conduct giving rise to the suit does not make application of the rule

at trial retroactive." *Landgraf*, 511 U.S. at 275.

The *Landgraf* Court cited to its prior opinion in *Thorpe v. Housing Auth. of Durham*, 393

U.S. 268 (1969). In *Thorpe*, the Court held that an agency rule that required a local housing

authority to provide notice and an opportunity to respond before evicting a tenant was applicable

to an eviction proceeding that was pending when the regulation was issued. The *Thorpe* Court

concluded that the new eviction procedures were "essential to remove a serious impediment to

the successful protection of constitutional rights." *Thorpe*, 393 U.S. at 283.

The *Landgraf* Court also noted that it had "sometimes said that new 'remedial' statutes,

like new 'procedural' ones, should presumptively apply to pending cases." *Landgraf*, 511 U.S.

at 285 n.37. *See, e.g. Ex parte Collett*, 337 U.S. at 71, and n.38 ("Clearly § 1404(a) is a remedial

provision applicable to pending actions"); *Beazell v. Ohio*, 269 U.S. 167, 171 (1925) (explaining

that the Ex Post Facto Clause does not limit "legislative control of remedies and modes of

procedure which do not affect matters of substance"); *Goodyear Tire & Rubber Co. v. Dep't of*

*Energy*, 118 F.3d 1531, 1537-38 (Fed. Cir. 1997) (holding that DOE's Office of Hearings and Appeals did not unlawfully apply its 1992 product eligibility rule in a retroactive manner where OHA permissibly corrected its pre-1992 rule and 1992 rule did not impose new duties or attach new disabilities).

As stated above, the Section 241 provisions for trial-type hearings were designed by Congress to fix flaws and unfairness in the licensing process that have jeopardized the due process rights of license applicants and that have interfered with national policy favoring the development of renewable and domestic energy resources.  Therefore, application of Section 241 to the Box Canyon proceeding would merely effectuate the EPAct 2005's remedial intent.

The Court in *Landgraf* also explained that "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Landgraf*, 511 U.S. at 273 (emphasis added).  In particular, the Court cited to its opinion in *American Steel Foundries v. Tri-City Cent. Trades Council*, 257 U.S. 184 (1921), wherein the Court held that § 20 of the Clayton Act, which was enacted while the case was on appeal, "governed the propriety of injunctive relief against labor picketing." *Landgraf*, 511 U.S. at 273. The concept of "prospective relief" also includes provisions providing for something other than injunctive relief. *See City of Chicago v. United States Dep't of the Treasury, Bureau of Alcohol, Tobacco & Firearms*, 423 F.3d 777, 783 (7th Cir. 2005) (explaining that appropriations legislation prohibiting use of federal funds to process a request for disclosure of information contained in ATF databases was a "potential future event," and was not retroactively applied because statute affected propriety of prospective relief).

The mandatory conditions and prescriptions for a new hydroelectric license operate *in futuro*.  They regulate prospectively in that they govern operations and modifications of the

Project over the <u>next</u> thirty to fifty years under the new license. They have no applicability

whatsoever to prior conduct or expectations; thus application of the Interim Final Rule to the

Box Canyon proceeding the does not trigger the general prohibition against retroactivity.

## IV.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Court to issue an Order denying the

Defendant's and Kalispel Tribe's Motions to Dismiss. This Court has subject matter jurisdiction

because the case arises under the United States Constitution and the laws of the United States,

giving the Court Federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331

(2000), and the Court has judicial review authority over actions of an administrative agency

action pursuant to the APA, 5 U.S.C. §§ 701-706 (2000). This Court's jurisdiction is not

superseded by the review provisions of the FPA, because the agency action being challenged,

*i.e.*, the issuance and implementation of unlawful regulations, was not undertaken to facilitate the

District's FERC licensing proceeding, and the District is not seeking to challenge here any

specific provision of its license. Further, Interior has not come close to meeting its burden to

show that there is not a claim upon which relief can be granted, in that its "plain meaning"

interpretation of Section 241 is plainly wrong.

Respectfully submitted,

James B. Vasile (D.C. Bar No. 205591)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, NW, Suite 450
Washington, DC 20005
(202) 508-6600 (telephone)
(202) 509-6699 (facsimile)

Dated: May 30, 2006                    Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PUBLIC UTILITY DISTRICT NO. 1 OF )<br>PEND OREILLE COUNTY, WASHINGTON )<br>P.O. Box 190 )<br>Newport, WA 99156-0190 )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>THE INTERIOR, )<br>1849 C Street, N.W. )<br>Washington, D.C. 20240 )<br>)<br>Defendant )<br>_____ ) | Civil Action No. 1:06CV00365RMC |

**[PROPOSED] ORDER DENYING DEFENDANT'S**
**AND KALISPEL TRIBE'S MOTIONS TO DISMISS**

Upon consideration of Defendant's Motion to Dismiss and Kalispel Tribe's Motion to

Dismiss and Plaintiff Public Utility District No. 1 of Pend Oreille County, Washington's

Response in Opposition to Defendant's and Kalispel Tribe's Motions to Dismiss, it is hereby

ORDERED that Defendant's Motion to Dismiss and Kalispel Tribe's Motion to Dismiss is

hereby DENIED.

_____
U.S. District Judge Rosemary M. Collyer

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May, 2006, copies of the foregoing Plaintiff's Response in Opposition to Defendant's and Kalispel Tribe's Motions to Dismiss was served by electronic filing on the following:

John S. Most                          Riyaz A. Kanji
Department of Justice                 Kanji & Katzen, PLLC
P.O. Box 663                          101 North Main Street
Washington, D.C. 20044-0663           Suite 555
(202) 616-3353 (telephone)            Ann Arbor, MI 48104
(202) 305-0274 (facsimile)            (734) 769-5400 (telephone)
                                      (734) 769-2701 (facsimile)

James B. Vasile (D.C. Bar No. 205591)
DAVIS WRIGHT TREMAINE LLP
1500 K Street, NW, Suite 450
Washington, DC 20005
(202) 508-6600 (telephone)
(202) 509-6699 (facsimile)