# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PUBLIC UTILITY DISTRICT NO.1 OF
PEND OREILLE COUNTY, WASHINGTON

     Plaintiff,

              v.

UNITED STATES DEPARTMENT OF THE
INTERIOR,

     Defendant.

KALISPEL TRIBE OF INDIANS,

     Defendant-Intervenor.

Civil Action No. 1:06cv00365 (RMC)

---

PONDERAY NEWSPRINT COMPANY,

     Plaintiff,

              v.

UNITED STATES DEPARTMENT OF THE
INTERIOR,

     Defendant.

KALISPEL TRIBE OF INDIANS,

     Defendant-Intervenor.

Civil Action No. 1:06cv00768 (RMC)

## PLAINTIFF PONDERAY NEWSPRINT COMPANY'S
## RESPONSE IN OPPOSITION TO MOTIONS TO DISMISS

## TABLE OF CONTENTS

**Page**

Introduction..................................................................................................................1

BACKGROUND ...........................................................................................................2

I.      Plaintiffs Challenge DOI's Interim Final Rule, 43 CFR § 45.1(d)......................................2

II.     Section 241 Provides Remediation in FERC Licensing Proceedings...................................3

III.    The Final Interim Rules Deny Section 241's Remedial Provisions to Pending
        License Applications.................................................................................................3

IV.     The Complaints Challenge the Generic Rules ..................................................................4

DISCUSSION ................................................................................................................5

I.      THE DISTRICT COURT HAS JURISDICTION OVER PNC'S CLAIMS
        UNDER THE APA BECAUSE PNC IS CHALLENGING A GENERIC,
        STAND-ALONE DOI RULE ........................................................................................5

        A.     Challenge of DOI Rules is to the District Court Under the APA ............................6

        B.     Nothing in the FPA Requires Review of DOI Rules in the Court of
               Appeals ........................................................................................................7

        C.     The DOI Rule is Not "Inescapably Intertwined" with PUD's Licensing
               Action Before FERC........................................................................................8

               1.     The challenged DOI Rule is a rule of general applicability and is
                      not for the purposes of providing individualized input to FERC for
                      PUD licensing proceeding ............................................................................9

               2.     There is no overlap of evidence or testimony between the record
                      for the DOI Rule and PUD's licensing proceeding before FERC .................12

        D.     Merely Because DOI Relief Upon a Generic Rule in Providing Input to
               FERC Does Not Mean That a Challenge to That Generic Rule Must Be
               Only Through a Challenge to a FERC Adjudication ....................................14

II.     THE COMPLAINTS STATE LEGAL CLAIMS...............................................................17

CONCLUSION.............................................................................................................20

**Introduction**

Section 241 of the Energy Policy Act of 2005 ("Section 241") authorizes applicants for licenses from the Federal Energy Regulatory Commission ("FERC") to propose alternative conditions and provides those applicants with certain hearing rights.  The question presented in these consolidated actions is whether Final Interim Rules promulgated by three agencies, including the Department of the Interior ("DOI"), to comply with Section 241 violates that statute or are otherwise arbitrary and capricious and not in accordance with the law, because they make Section 241's remediation unavailable to applicants for whom FERC has issued an initial license determination before the date the Rules were promulgated, even when those determinations were not final as of that date or the date Section 241 became effective, and the license applications remain pending before FERC.

In their Motions to Dismiss, DOI and the Intervenor-Defendant Kalispel Tribe of Indians ("the Tribe") assert two arguments:  (1) the district court lacks subject matter jurisdiction to hear these claims, which are asserted under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and the Court's general federal question jurisdiction, 28 U.S.C. § 1331; and (2) the complaints fail to state a claim as a matter of law.

The Motions to Dismiss brought by Defendants DOI and the Tribes (hereinafter the "Defendants") should be rejected.  Subject matter jurisdiction exists because Plaintiffs challenge DOI's generic rule, and not individual administrative input into a specific FERC adjudication; and nothing in the plain text of Section 241 indicates that its provisions should not apply to pending applications.

## BACKGROUND

**I.    Plaintiffs Challenge DOI's Interim Final Rule, 43 CFR § 45.1(d).**

Plaintiff Ponderay Newsprint Company ("PNC") owns a newsprint mill, which is the largest consumer of electricity from Plaintiff Public Utility District No. 1 of Pend Oreille County, Washington ("PUD").  (PNC Complaint (April 26, 2006), ¶ 13.)  When PUD applied to FERC to re-license its Box Canyon hydroelectric project, FERC granted PNC intervention into that proceeding – any increases in the cost of electricity produced by PUD will be passed on to PNC.  (*Id.*)  As PUD discussed in its Response in Opposition to Defendant's and Kalispel Tribe's Motions to Dismiss ("PUD Response"), that licensing proceeding remains pending before FERC. (PUD Response at 22, *et seq.*; *see also* PNC Complaint, ¶ 29.)

 PUD filed its Complaint on March 1, 2006; PNC filed suit the next month.  Both actions challenge DOI's Interim Final Rule, 43 CFR § 45.1(d), under the APA, naming DOI as the Defendant.

The Tribe moved to intervene on the side of DOI; DOI moved to dismiss PUD's Complaint; the Tribe filed a short motion adopting DOI's argument; PUD filed a Response opposing the Motions to Dismiss; and on June 16, 2006, this Court entered an order granting the Tribe's motion to intervene, consolidating the two actions, and setting a schedule for PNC to respond to the Motions to Dismiss.  This is PNC's Response.

PNC does not repeat PUD's arguments, but rather incorporates them as its own as if they were set forth in full herein.  The purpose of this Response is to highlight and expand upon specific points previously raised as to why Defendants' Motions should be rejected.

**II.    Section 241 Provides Remediation in FERC Licensing Proceedings.**

As DOI explained in its Motion to Dismiss and Supporting Memorandum ("Motion") at 5-7, when an applicant applies for a hydroelectric facility license, FERC must accept conditions imposed by other "resource" agencies, including DOI, on the license.  In Section 241, Congress provided that applicants must be given the opportunity to propose alternative conditions to the resource agencies proposing the conditions, and are entitled to trial-type hearings before those resource agencies concerning any factual dispute regarding the conditions.  Pub. L. No. 109-58, §241(a),(b), (c); 16 U.S.C. §§ 797(e), 811, 823d(a)(1), 823d(b)(1).

Section 241 became effective on August 8, 2005.  Pub. Law 109-58, 119 Stat. 595 (2005).  It instructed the resource agencies to promulgate rules to establish the trial-type hearing procedures within 90 days.[1]

**III.    The Final Interim Rules Deny Section 241's Remedial Provisions to Pending License Applications.**

Approximately 100 days later, on November 17, 2005, DOI, jointly with the Departments of Commerce and Agriculture, issued "Interim Final Rules."  70 Fed. Reg. 69804, *et seq.*  The agencies state that the Rules were enacted to fulfill the statutory mandate to establish trial-type hearings, as well as to "establish[] procedures for the consideration of alternative conditions and prescriptions submitted by any party to a license proceeding, as provided in [Section 241]."  70 Fed Reg. 69804.  No notice and comment preceded the issuance of these Rules, which became effective immediately.  *Id.*

---

[1] *See* Section 241(a), 16 U.S.C. § 797(e) ("Within 90 days of August 8, 2005, the Secretaries of the Interior, Commerce, and Agriculture [the resource agencies] shall establish jointly, by rule, the procedures for such expedited trial-type hearing, including the opportunity to undertake discovery and cross-examine witnesses, in consultation with the Federal Energy Regulatory Commission.")

The DOI version of these Rules, [2] provides in relevant part:

> Applicability. (1) This part applies to any hydropower license proceeding for which the license has not been issued as of November 17, 2005 and for which one or more preliminary conditions, conditions, preliminary prescriptions, or prescriptions have been or are filed with FERC.

43 CFR § 45.1(d).

As discussed in DOI's Motion and PUD's Response, this language means that the remedial provisions of Section 241 are unavailable to license applicants that obtained initial licensing determinations from FERC at any date prior to November 17, 2005 – even if those determinations are not final, and the proceedings remain pending before FERC pursuant to requests for rehearing, which applicants must file under 16 U.S.C. § 825l before obtaining any judicial review. The generic DOI Rule cuts off access to the remedial provisions of Section 241 as to this entire class of license applications.

## IV.     The Complaints Challenge the Generic Rules.

In its Complaint, PNC, like PUD, alleges that the DOI Rules conflict with Section 241 and that DOI otherwise violated the APA by cutting off access to Section 241's remedial provisions. (*E.g.*, PNC Complaint, ¶ 33.) PNC has standing to raise this claim because, as noted above, PUD's re-licensing application was (and remains) pending before FERC, and PNC is a large energy consumer and a party in that re-licensing proceeding. FERC issued its initial PUD licensing determination on July 11, 2005; both PUD and PNC filed requests for rehearing within the thirty days allowed; and FERC has not yet ruled on those rehearing requests. (*Id.*, ¶¶ 20, 29.) Because PUD's application was pending on August 8, 2005, the date Section 241 became effective (and indeed remained pending as of November 17, 2005 and thereafter), PUD – like any applicant with an application pending as of August 8, 2005 – is entitled to the remedial

---

[2] As DOI explains (Motion at 7), the three agencies' Rules are substantively identical.

provisions of Section 241.  45 CFR § 45.1(d) should be stricken insofar as it cuts off access to

Section 241's remedial provisions to any licensing application pending as of the date Section 241

went into effect.

## DISCUSSION

DOI and the Tribe assert two defenses:  (I) lack of subject matter jurisdiction; and (II)

failure to state a claim as a matter of law.  Neither has merit.

**I.      THE DISTRICT COURT HAS JURISDICTION OVER PNC'S CLAIMS UNDER THE APA BECAUSE PNC IS CHALLENGING A GENERIC, STAND-ALONE DOI RULE.**

DOI and the Tribe argue that Section 313(b) of the Federal Power Act ("FPA"), 16

U.S.C. § 825l(b),[3] deprives this District Court from entertaining challenges to DOI's Interim

Final Rules.  Any challenge to a generic DOI rule, according to DOI and the Tribe, may only be

asserted as part of a petition for review before the Court of Appeals challenging an individual

FERC licensing adjudication.

---

[3] Section 313(b) provides in relevant part:

(b) Judicial review

Any party to a proceeding under this chapter aggrieved <u>by an order issued by the Commission in such proceeding may obtain a review of such order in the United States court of appeals</u> for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part…. <u>Upon the filing of such petition such court shall have jurisdiction, which</u> upon the filing of the record with it <u>shall be exclusive, to affirm, modify, or set aside such order</u> in whole or in part….

(Emphasis supplied).

In support of this position, DOI cites a Ninth Circuit decision in which the Court of Appeals held that when an agency adjudication depends upon individualized input and analysis from another agency regarding that specific adjudication, and the adjudication of the agency receiving the input is reviewed in appellate court, a challenge to the other agency's individualized input is subsumed in the appeal of the ultimate adjudication and not in a separate APA challenge to the individualized input.  See DOI Motion at 3, 13, citing *California Save Our Streams Council, Inc. v. Yeutter,* 887 F.2d 908, 912 (9th Cir. 1989).  In that case, the other agency, the U.S. Forest Service, had provided individualized input and conditions under the National Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq.* ("NEPA").  DOI cites other non-D.C. Court of Appeals decisions that have similarly concluded that individualized input from other agencies comprising a part of an adjudication of another agency is subsumed in the appeal of the ultimate adjudication.  (*See, e.g*., DOI Motion at 18, n.12, citing case involving a Bureau of Land Management land plan facilitation of Federal Aviation Administration ("FAA") decision.)

### A.    Challenge of DOI Rules is to the District Court Under the APA.

Here, PUD's and PNC's challenges are not to such individualized agency input into another agency's adjudication, but rather to a generic, stand-alone DOI rule.  DOI has cited no authority for the proposition that a challenge to one agency's generic rule may proceed only through an appeal of a specific adjudication by another agency.

The analysis starts with a review of the claims asserted and the statutory text.  *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994) (to determine if an avenue for challenge is exclusive, the court examines whether the plaintiff's claims "are of the type Congress intended to be reviewed within this statutory structure.").

PUD and PNC challenge a generic DOI rule. Neither Section 241 nor any other DOI enabling statute indicates that the avenue for challenging this DOI rule is the court of appeals. Hence, as the case law cited by PUD indicates (PUD Response at 7), in the absence of any specific appeal provision in DOI's enabling statutes, the proper avenue for challenge is by asserting an APA claim before the district court.

**B.      Nothing in the FPA Requires Review of DOI Rules in the Court of Appeals.**

No language in Section 313(b) of the FPA suggests an intent to strip the district court of jurisdiction to challenge a non-FPA rule, a forum established by Congress for such challenges. As the text of Section 313(b) provides (*supra* at footnote 3), Congress channeled challenges to "orders issued by [FERC]" to the court of appeals. The FPA, unsurprisingly, says nothing about challenges to rules of other agencies. Thus, this Court begins with the unremarkable premise that when a statute such as Section 313(b) provides that an aggrieved person challenges a FERC order before the court of appeals, the statute means and Congress intended exactly that – and does not include challenges to generic DOI rules. *Cf.* 16 Charles Alan Wright, *et al., Federal Practice & Procedure,* § 3943 ("Even if court of appeals jurisdiction is expressly made exclusive as to the matters specified, it is interpreted not to exclude district court review of other matters.").

One does not ordinarily challenge DOI rules under the FPA, and FERC has no expertise in DOI matters. *See Thunder Basin*, 510 U.S. at 212 (one factor in determining whether claim is governed by jurisdictional statute is whether the issue involved in the claim lies within the agency's expertise). FERC is not even a defendant to this action, because the Final Interim Rules were promulgated by DOI, and because the remedial provisions of Section 241 affect DOI conduct and instruct DOI, not FERC, to promulgate rules.

In sum, because neither Section 241 nor Section 313(b) provides that a challenge to the DOI Rule must proceed under Section 313(b), PUD's and PNC's instant challenge to the DOI Rule falls within Section 313(b) only if Defendants meet the burden of demonstrating that DOI's issuance of the challenged generic Rule is "inescapably intertwined" with one specific FPA adjudication, which is apparently what they are arguing. *See Merritt v. Shuttle, Inc.,* 245 F.3d 182, 189 (2d Cir. 2001) (applying "inescapably intertwined" test and holding that the FAA appeal statute (49 U.S.C. § 46110) did not bar a district court claim under the Federal Tort Claim Act.).

### C.     The DOI Rule is Not "Inescapably Intertwined" with PUD's Licensing Action Before FERC.

In *Merritt*, the Second Circuit discussed the "seminal" Supreme Court decision, *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320 (1958), which held that a state court suit was barred by Section 313(b). *Merritt,* 245 F.3d at 187. The Court of Appeals noted that language in *Tacoma,* describing the "inescapably intertwined" test as whether the issue in the action inheres in the controversy subject to court of appeals review, "must be read in relation to the Supreme Court's other statements that, under Section 313(b), a party aggrieved by an administrative *order* may seek judicial review of the order in the courts of appeals, that the courts of appeals have exclusive jurisdiction to affirm, modify or set aside such *orders*, and that all objections to such *orders* must be made in the courts of appeals or not at all." *Id.* at 188 (emphasis in original). Mere overlap of evidence and testimony adduced in the two proceedings or mere overlap of findings is insufficient to preclude district court jurisdiction, because the focus is on the nexus between the conduct claimed to be unlawful or improper in the action before the district court and a specific order subject to exclusive court of appeals review. *See id.* at 189.

The decisions cited by DOI in its Motion, such as *California Save Our Streams*, could be deemed to fall within the inescapably intertwined test, because these decisions involve individualized input into agency adjudications - the agency issuing the adjudication is incorporating individual input from another agency, created exclusively for the purpose of that other agency's adjudication, and is thus intertwined with and has no life independent from that adjudicatory order.  It is simply a building block of the adjudication, and nothing else.

      1.      <u>The challenged DOI Rule is a rule of general applicability and is  not for the purposes of providing individualized input to FERC for PUD licensing proceeding.</u>

When, however, as here, the plaintiff is challenging a generic rule promulgated not for the purpose of providing individualized input into another agency's adjudication, but rather to create a generically applicable standard – particularly when the rule is promulgated <u>not</u> by the agency whose exclusive review process is invoked – then the situation is different and the test has not been met.  *See generally National Mining Association v. Department of Labor,* 292 F.3d 849 (D.C. Cir. 2002) ("*NMA*").

*NMA* involved a challenge to a generic Department of Labor ("DOL") rule regarding black lung benefits; the plaintiff argued, *inter alia*, that the rule was impermissibly retroactive. *Id.* at 853.  (In the instant situation, the claim is functionally similar, only the flipside – DOI made its Rule impermissibly <u>not</u> applicable to pending applications.)  The Court of Appeals held that the district court had jurisdiction over pre-enforcement challenges to the DOL rule and struck down the retroactive aspect of that rule.

Like here, the DOL argued that aggrieved persons had to challenge the rule "piecemeal, insofar as particular provisions are brought into question, by an appeal directly to the Court of Appeals."  *Id.* at 856.  There, the particular individual adjudication that DOL argued was the only

avenue for judicial review was a challenge to an individual compensation order from the Benefits

Review Board. *Id.* The Black Lung Benefits Act, similar to the language in Section 313(b),

provided that a person "adversely affected or aggrieved by a final *order* of the Board may obtain

review of that *order* in the United States court of appeals for the circuit in which the injury

occurred ...." *Id.* at 856, citing 33 U.S.C. § 921(c) (emphasis added in *NMA*). (Compare with

Section 313(b), *supra* n. 3.)

Unlike the instant situation, in *NMA* the regulation challenged was issued by the same

agency whose appeal statute was being invoked by the defendant as the exclusive avenue for

reviewing the regulation, but the court still did not require the regulation to be challenged in the

Court of Appeals. In rejecting the government's argument, the Court of Appeals noted the

difference between an adjudicatory order and a generic rule:

> The obvious difficulty with the government's position is that this provision
> putting exclusive review jurisdiction in the Court of Appeals speaks of orders, but
> Congress in passing the APA drew a distinction between orders, which typically
> follow adjudications, and regulations. *See National Treasury Employees Union v.
> Weise,* 100 F.3d 157, 160 (D.C.Cir. 1996) (explaining that courts and Congress
> use the terms "regulation" and "rule" interchangeably); *compare* 5 U.S.C.
> § 551(4) (defining "rule") *with id.* § 551(6) (defining "order").

*NMA*, 292 F.3d at 856.

Assuming that challenges to <u>FERC</u> regulations are pursued under Section 313(b) as

challenges to "order[s] issued by the Commission," *see supra* n.3, Section 313(b) is silent

regarding challenges to generic, stand alone non-FPA rules. That silence argues in favor of the

APA avenue of review in the district court. *NMA*, 292 F.3d at 856 ("Since Congress was silent

on how review of regulations was to be accomplished, it would appear accordingly that persons

seeking such review would be directed by the APA to go to district court.") (citation omitted).

Notably, the *NMA* Court continued:

In that regard, the Supreme Court's decision in *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479 … (1991), instructs us to read very carefully legislative restrictions on district court review of generic challenges to agency action. In the Immigration Reform and Control Act of 1986, Congress provided that there would be "no administrative or judicial review of a determination respecting an application for adjustment of status" except in accordance with that subsection, which eventually provided for judicial review in the Court of Appeals. 8 U.S.C. § 1160(e). The Court held that § 210(e) of the Reform Act did not deprive a district court of subject matter jurisdiction of "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." *McNary,* 498 U.S. at 492….

The Court read the phrase "determination respecting an application for adjustment of status" to refer only to an individual adjudication - not a determination made in a regulation. In our case, the word order is more obviously confined to an adjudication than the word determination, so therefore this case, linguistically, appears *a fortiori* to *McNary*. [FN1] ….

> FN1. The Second Circuit has also recognized that the term "order" carries a limited meaning. In *Merritt v. Shuttle, Inc.,* 187 F.3d 263 (2d Cir.1999) (*Merritt I*), that court held that Merritt could not bring a *Bivens* claim challenging an FAA order suspending his pilot's certificate because 49 U.S.C. § 46110(a) vested review of an FAA "order" in the Court of Appeals and his *Bivens* claim challenged the merits of the administrative adjudication. By contrast, in *Merritt v. Shuttle, Inc*., 245 F.3d 182, 188 (2d Cir.2001) (*Merritt II*), the Second Circuit clarified that § 46110(a), which referred only to an FAA order, did not preclude district court jurisdiction over Merritt's FTCA claim, which did not claim that he was either injured or aggrieved by the order suspending his license.

*NMA*, 292 F.3d at 856-57 (emphasis supplied).

In sum, one should not presume that generic challenges to regulations fall within the ambit of a statute providing for review of agency orders by the court of appeals, and there is certainly no reason to assume that here, given that the generic rule at issue was promulgated by a

different agency.[4]  Generic rules are different from individualized, non-stand alone inputs to individual adjudications.

      2.      <u>There is no overlap of evidence or testimony between the record for the DOI Rule and PUD's licensing proceeding before FERC.</u>

In this case, there is not even any overlap of evidence and testimony (although even such overlap, as noted by the Second Circuit in *Merritt, supra,* would not be dispositive of any inescapable intertwining.).  The focus of the merits analysis in the instant action is the promulgation of a generic DOI rule.  The relevant record relates to that promulgation and DOI's conduct in issuing that generic rule.  The question presented in this case is not what specific conditions are appropriate in PUD's individual licensing proceeding, but rather whether the generic DOI Interim Final Rule complies with the statutory directive of Section 241 and should apply across-the-board in licensing proceedings that are not final at the time the statutory amendment issued.

---

[4]  The Court of Appeals in *NMA* discussed *Thunder Basin*, *supra,* as follows:

> In that case, a mine operator refused to post the names of two United Mine Workers of America employees - not employees of the mine operator - who had been chosen by its employees as their representatives to "walk around" with federal inspectors.  The Mine Safety statute authorized the Secretary of Labor to seek enforcement of the posting in proceedings before the Federal Mine Safety and Health Review Commission.  Before the Secretary could do so, the mine operator, claiming rights under both the National Labor Relations Act and the Constitution, sought an injunction against the Labor Department's position that the mine operator was obliged to post the names.  The Court held that the District Court lacked jurisdiction over *"such"* a pre-enforcement challenge in light of the comprehensive administrative and judicial review procedures culminating in the Court of Appeals.  *Id*. at 208 …. Although the statute was silent on pre-enforcement review, this sort of case was thought to be implicitly precluded.  The company had simply jumped the gun by suing before the Secretary issued a citation, and the company's argument that both the Constitution and the National Labor Relations Act allowed it to exclude non-employee representatives could be meaningfully reviewed in the Court of Appeals.  <u>It is important to note that the case did not involve a regulation, which is typically treated differently from an adjudication.</u> *United States v. Florida East Coast Ry. Co.,* 410 U.S. 224, … (1973).

*NMA,* 292 F.3d at 857 (emphasis supplied).

The individual PUD licensing proceeding and related conditions referenced in the Complaints are relevant for standing purposes, to show how PUD and PNC fall within the zone of interests to complain about the challenged aspect of the generic Rule, and how striking the offensive part of the Rule would benefit them. Although DOI relied on its generic Rule to deny PUD the benefit of the remedial provisions of Section 241, DOI's specific conditions themselves are immaterial to the merits of the APA cause of action.

This lack of overlap in evidence and testimony, and the disconnect between the claims in the instant action and the specific PUD licensing proceeding, is graphically reflected in the sections of DOI's Motion and PUD's Response regarding Defendants' second argument, that PUD's and PNC's Complaints fail to state a claim. Nothing in those sections of the parties' submissions relates to the merits of FERC's individual PUD licensing adjudication, or the contents of the specific conditions imposed. The only relevant question, and the issue discussed, is whether Congress intended that PUD and similarly situated license applicants (*i.e.,* those with applications prior to November 17, 2005) should have the opportunity to be heard regarding alternative conditions (whatever they might be), and to trigger the hearing procedure made available to them under Section 241. *See NMA*, 292 F.3d at 858:

> [T]he regulations before us are challenged primarily on the ground that they are impermissibly retroactive. To determine whether that is true it is necessary to analyze carefully all of the regulations together as well as the entire rulemaking process, which would not be feasible in individual adjudications dealing with particular regulatory provisions.

Similarly, here, the issue presented in the instant Complaints is not whether PUD has met any applicable test to prove its alternative conditions should be adopted, nor what substantive evidence supports or does not support the particular DOI conditions imposed or alternatives. Rather, the question is the legality of a generic DOI rule.

**D.    Merely Because DOI Relied Upon a Generic Rule in Providing Input to FERC Does Not Mean That a Challenge to That Generic Rule Must Be Only Through a Challenge to a FERC Adjudication.**

Contrary to DOI's claim, PNC does not seek to evade the obviousness of the Section 313(b) avenue through artful pleading.  Whatever the particular language contained in the Complaints, the gravamen of their claims is a challenge to an independent, generic, generally-applicable rule, versus a non-stand-alone, individual building block input to a specific adjudication.  *See Dougherty v. Carver Fed. Sav. Bank,* 112 F.3d 613, 620 (2d Cir. 1997) (holding that a securities fraud claim was not subject to exclusive jurisdiction under an Office of Thrift Supervision ("OTS") appeal provision although the claim arose in the course of an OTS conversion approval; "Defendants, as well as plaintiffs, must be presumed to be skilled in the craft of artful pleading, and if care is not taken, clever defendants will quickly learn how to characterize properly pleaded securities fraud claims as 'disguised collateral attacks,' to circumvent liability that may be imposed on them by the antifraud statutes.").

In *Dougherty,* the Second Circuit concluded that the OTS avenue did not bar the district court suit in part because the OTS approval of a conversion did not lift from the shoulders of the bank, its managers and agents the obligation to conduct the sale of its stock in an honest and straightforward manner so that investors are not misled.  112 F.3d at 620; *see also Ordower v. OTS*, 999 F.2d 1183, 1188 (7th Cir. 1993) (also finding that the OTS exclusive avenue statute did not preclude the district court from reviewing the accuracy of proxy materials noting because it was not a function of the OTS to review them).  Similarly, here, it is not a FERC function to issue or opine upon a generic DOI rule.

Just because FERC must incorporate another agency's individual input does not mean that jurisdiction to review the generic rule, on which the other agency relies in providing

individual input, falls within the exclusive avenue of review under Section 313(b).  For example, a state water quality certification is also a prerequisite for a FERC license.  Any challenge to a state certification decision, however, is not subsumed in Section 313(b); to the contrary, a license applicant may only appeal in state court.  *See PUD No. 1 of Jefferson County v. Washington Dep't of Ecology,* 511 U.S. 700, 734 & 734 n.5 (1994) ("federal courts have uniformly held that FERC has no power to alter or review § 401 conditions, and that the proper forum for review of those conditions is state court") (Thomas, dissenting, citing multiple court of appeals decisions).

Here, moreover, Defendants are not just arguing that the equivalent to the water quality certification must be challenged under Section 313(b) – under their logic, any generic state rule or regulation pursuant to which the state issued the water quality certification was issued would have to fall within exclusive federal review under Section 313(b) as well.

The illogic of this premise is obvious.  Agencies rely on generic rules for hosts of individual adjudications.  Whether an aggrieved party may only challenge a generic rule issued by that agency to the court of appeals as a part of a challenge to a specific adjudication by that agency is a question dependent upon the specific text of that agency's statutory framework.  Here, however, Defendants again go one step further.  They are not claiming that a generic FERC rule must be challenged under Section 313(b).  Nor is the question here whether DOI's individual input on a specific licensing adjudication is meritorious.  Rather, Defendants are arguing that because DOI relies on a generic rule to provide individual input into FERC licensing adjudications, a challenge to that DOI generic rule – outside of providing individual input – may proceed only through a challenge to an individual FERC adjudication under the FPA.  No authority or logic supports this view.  Under this scenario, <u>any</u> generic rule issued by <u>any</u> resource agency providing input to FERC could <u>only</u> be challenged under Section 313(b)

whenever that resource agency relied, however tangentially, in any way on that generic rule in providing individual input (*e.g.*, here, in determining what law applies to a category of applications). This makes no sense.

For example, under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, *et seq.*, DOI must, by regulation, determine whether species are endangered or threatened, must publish a list of such species in the Federal Register, and must identify any critical habitat for such species. 16 U.S.C. §§ 1533(a)(1), (c)(1). The ESA also requires federal agencies to confer with DOI regarding any agency action, including permitting or licensing actions, where the agency action is likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction of critical habitat. 16 U.S.C. § 1536. Assume for the sake of the argument that DOI had listed a particular species as endangered or threatened, and that such species would be impacted by a FERC licensing action involving PUD. Following Defendants' logic (or illogic), if PUD or PNC wanted to challenge DOI's listing of such species, then PUD's or PNC's challenge could not occur in the context of an APA challenge before this Court, but could take place only as part of a challenge to FERC's licensing adjudication before the court of appeals. This, of course, makes no sense, and flies in the face of established principles of law.

By way of illustration, in *Friends of the Wild Swan, Inc. v. United States Fish & Wildlife Service,* the plaintiffs challenged DOI's treatment of bull trout under the ESA, as warranting listing but precluded from being listed because the threat against the trout was not sufficiently great. 945 F. Supp. 1388 (D. Or. 1996). Although the DOI record discussed how <u>hydropower dams</u>, presumably subject to FERC licensing, affected populations of bull trout, 945 F.Supp. at 1387, the district court did not require that the challenge to DOI's generic treatment of bull trout be challenged in the context of the FPA. Rather, the district court reviewed DOI's actions under

the APA. 945 F.Supp. at 1394. *See also, e.g., Carlton v. Babbitt*, 26 F. Supp. 2d 102, 106 (D.D.C. 1998) (DOI decisions under the ESA are reviewed by the district court under the APA).

Similarly, in *City of Klamath Falls v. Babbitt*, the City of Klamath Falls (the "City") sought to construct a hydroelectric project on the Klamath River, for which it needed a license from FERC; the City applied for a license in 1986. 947 F. Supp. 3, 1 (D.D.C. 1996). In 1994, however, while the City's application was pending, DOI designated the Klamath River as a National Scenic River, which designation prohibited FERC from licensing the hydroelectric project and precluded the City from continuing to seek the FERC license. *Id.* at 3-4. The City decided to challenge the procedures DOI followed in designating the Klamath River as a National Scenic River, and did so pursuant to an APA challenge in this Court. *Id.* at 4. Rather than dismissing the challenge and requiring the City to challenge the designation in the context of a challenge to FERC's lack of action in the court of appeals – as Defendants would argue if following their logic in this case – this Court reached the merits of the City's APA challenge. *Id.* at 8.

In sum, Defendants' argument fails because neither Section 241 nor 313(b) contains language channeling challenges to generic DOI rules to the court of appeals under the FPA, and a generic DOI rule is neither dependent nor inescapably intertwined with any particular FERC adjudicatory order.

## II.    THE COMPLAINTS STATE LEGAL CLAIMS.

As a threshold matter, Defendants do not argue that the challenged Interim Final Rule is entitled to any deference, and they are correct in not so claiming – this Court reviews the Rule independently, *de novo*.

This is not only because, as noted by PUD, the Rules were preceded by no notice-and-comment, but also because, as DOI properly notes, these Rules were issued jointly by multiple agencies.  (*See* DOI Motion at 7.)  As Judge Urbina of this court noted:

> When an agency shares responsibility for the administration of a statute with other agencies, the court owes the agency's statutory interpretation no *Chevron* deference.  *Rapaport v. Dep't of Treasury,* 59 F.3d 212, 216-17 (noting that to hold otherwise would lay the groundwork for a regulatory regime in which either the same statute is interpreted differently by several agencies or the one agency that reaches the courthouse first is allowed to fix the meaning of the text for all); *Salleh v. Christopher,* 85 F.3d 689, 692 (D.C.Cir.1996) (listing decisions in which the court declined to defer to the agency's interpretation of a statute because more than one agency had the authority to interpret the statute).

*Lipsman v. Secretary of the Army,* 257 F. Supp. 2d 3, 8 (D.D.C. 2003)

Additionally, no deference is due because the Rules contain no reasoned decision-making.  *See, e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (agency must provide a reasoned basis for its actions); *General Elec. Co. v. U.S. Dep't of Commerce*, 128 F.3d 767, 774-75 (DC. 1997) (no deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837 (1984), because agency did not explain itself) (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

At the beginning of the Summary provided by the issuing agencies, including DOI, 70 Fed. Reg. 69804, the agencies indicate that these Rules are to be effective immediately "so that interested parties may avail themselves of the new hearing right and alternatives [sic] processes created by [Section 241]."  To the extent this language suggests any reasoning, it supports application of the Rules to all pending applications, so that all interested parties can avail themselves of the statute's provisions – precisely contrary to what the Rules in fact do.

None of the remainder of the agencies' discussion includes any reference to the limit on applicability imposed in the Rules, except the following language.

> Paragraph (d) provides that these regulations apply to any hydropower license proceeding for which the license has not been issued as of the effective date of these rules and for which the Department involved has developed or develops one or more preliminary conditions, conditions, preliminary prescriptions, or prescriptions.

70 Fed. Reg. 69808 (under "Section-By-Section Analysis"). There is no explanation as to <u>why</u> paragraph (d) so provides – what the reasoning or basis for this limitation is or could be. In the absence of any reasoning, there can be no deference.

Therefore, in these Motions to Dismiss, the Court is left with the plain text of the statute, Section 241, and should dismiss these actions only if that statutory text plainly and unambiguously provides that it does not apply to pending applications. Section 241 is silent as to applicability. This Court's review of these Motions can thus end here, and the Motion should be denied.

DOI's argument that someone is either a "licensee" or a "license applicant," and by using the term "license applicant," Congress clearly meant that the remedial provisions it enacted should not apply to pending applications when FERC has issued its initial decision, is unsupported by either authority or logic for all the reasons PUD articulated in its Response.

Setting aside the fact that Congress gave "any party to the proceeding" as well as "applicants" access to these remedial provisions, *see, e.g.,* Section 241(a), 16 U.S.C. § 797(e), contrary to DOI's position, status as a "licensee" or an "applicant" is not an either-or proposition. For example, PUD is involved in a <u>re</u>-licensing. At all times, therefore, from the first moment that PUD filed its re-licensing application, it was already a "licensee." It never magically switched from being only an "applicant" with access to remedial provisions to a "licensee" allegedly foreclosed from access to those provisions.

Moreover, even though, as PUD notes in its response, application of Section 241 to pending applications would not be "retroactive," there is nonetheless a presumption that an agency change in law, *i.e.*, a rule, <u>is</u> applied retroactively. *See Consolidated Edison Co. of New York v. FERC*, 315 F.3d 316, 323 (DC Cir. 2003) ("If an agency adopts a new rule that reflects a change in 'law,' we presume that the new rule will be given retroactive application."); *see also id.* at 323-324 (holding that not arbitrary and capricious for FERC not to apply new policy statement to pending application, where the statement was merely a non-binding policy and not a change in a formal rule, and where FERC proffered a rational justification of administrative convenience because the record was already developed.).

Here, the generic rules are not simply non-binding policy statements, and the purpose of Congress's enactment of Section 241 was to give applicants the significant remedial ability to develop an alternative record. Hence, there would be no backtracking here on the existing record, but rather supplementation – precisely what Congress intended.

Defendants have offered nothing to overcome this presumption. As PUD notes, if in spite of the fact that this is a motion to dismiss, the Court went beyond the silence in Section 241 on this point, rules of statutory interpretation and other authority, as well as the purpose of the enactment, would all militate in favor of a finding that Congress intended the remedial provisions of Section 241 to apply to all pending applications, and DOI Rules should so provide.

## CONCLUSION

For the reasons given above and in PUD's Response to the Motions to Dismiss, the

Motions should be denied.

Dated: July 5, 2006                                   Respectfully submitted,

                                                      /s/ Eric J. Wycoff
                                                      Margaret M. O'Keefe (D.C. Bar No. 448778)
                                                      mokeefe@pierceatwood.com
                                                      Eric J. Wycoff (D.C. Bar No. 469939)
                                                      ewycoff@pierceatwood.com
                                                      PIERCE ATWOOD LLP
                                                      One Monument Square
                                                      Portland, ME  04101
                                                      (207) 791-1100 (telephone)
                                                      (207) 791-1350 (facsimile)

                                                      *Attorneys for Plaintiff Ponderay Newsprint
                                                      Company*

# UNITED STATES DISTRICT COURT

# DISTRICT OF COLUMBIA

I hereby certify that on the 5th day of July, 2006, copies of the foregoing Plaintiff

Ponderay Newsprint Company's Response in Opposition to Motions to Dismiss, was served by

electronic filing on the following:

John S. Most, Esq.
john.most@usdoj.gov
Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC  20044-0663
(202) 616-3353 (telephone)
(202) 305-0274 (facsimile)

James B. Vasile, Esq.
jimvasile@dwt.com
DAVIS WRIGHT TREMAINE LLP
1500 K Street, NW, Suite 450
Washington, DC  20005
(202) 508-6600 (telephone)
(202) 509-6699 (facsimile)

Riyaz A. Kanji, Esq.
rkanji@kanjikatzen.com
Kanji & Katzen, PLLC
101 N. Main Street, Suite 555
Ann Arbor, MI 48104
734-769-5400 (telephone)
734-769-2701 (facsimile)

/s/ Eric J.Wycoff
Eric J. Wycoff

PIERCE ATWOOD LLP
One Monument Square
Portland, ME  04101
(207) 791-1100
ewycoff@pierceatwood.com