IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC UTILITY DISTRICT NO. 1 OF PEND OREILLE COUNTY, WASHINGTON<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendant,<br><br>KALISPEL TRIBE OF INDIANS,<br><br>Defendant-Intervenor. | Case No. 1:06cv365 RMC<br>(consolidated actions) |
| PONDERAY NEWSPRINT COMPANY<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendant,<br><br>KALISPEL TRIBE OF INDIANS,<br><br>Defendant-Intervenor. | |

FEDERAL DEFENDANT'S RESPONSE TO PLAINTIFF PONDERAY
NEWSPRINT COMPANY'S OCTOBER 11, 2006 LETTER
<u>REGARDING RECENT DECISION IN WESTERN DISTRICT OF WASHINGTON</u>

Federal Defendant the United States Department of the Interior hereby responds to an October 11, 2006 letter ("the letter") sent to the Clerk of the Court by Plaintiff Ponderay Newsprint Company ("Ponderay"). The letter was submitted for the purpose of "inform[ing] the Court of a recent decision" which Ponderay believes is relevant to the pending motions to dismiss. Letter at 1. Specifically, the letter refers to and attaches Judge Pechman's recent order in <u>American Rivers v. United States Department of the Interior</u>, No. C05-2086P (W.D. Wash. October 3, 2006) (hereafter "Order"), a challenge to the same interim final rules at issue in this case, although founded upon different legal theories.

As an initial matter, the letter mischaracterizes the applicability provision in the interim final rules, 43 C.F.R. § 45.1(d), stating that the changes mandated by section 241 of the Energy Policy Act of 2005, Pub. L. No. 109-58, § 241, will be applied only to proceedings in which "no <u>initial</u> license order had been issued" as of November 17, 2006. Letter at 1 (emphasis in original). Ponderay thus draws a distinction between final license orders and initial license orders. In Ponderay's view, an "initial" license order is one for which rehearing has been requested before FERC. <u>Id.</u> However, in both the FERC licensing process and the Interim Final Rules, no distinction exists between "initial" and "final" license orders, and Ponderay cites no authority for its contrary view. An applicant for a hydropower license either receives a license from FERC or it does not. The applicability provision which Ponderay refers to makes no mention of initial license orders:

> This part applies to any hydropower license proceeding for which the license has not been issued as of November 17, 2005 and for which one or more preliminary conditions, conditions, preliminary prescriptions, or prescriptions have been or are filed with FERC.

43 C.F.R. § 45.1(d)(1). The utility in this case, PUD No. 1, received its license on July 11, 2005,

1

nearly a month prior to enactment of the Energy Policy Act of 2005 and nearly four months prior to promulgation of the implementing regulations. The license became effective upon issuance.[1] See Defendant's *Motion to Dismiss* at 21. If FERC grants PUD No. 1's request for rehearing, and ultimately agrees that modification of the license is appropriate, it will issue an amended license order. Id. at 22. But until then, the current license is in full force and effect.

Second, Ponderay contends that the holding in American Rivers undermines defendant's argument that Congress's use of the phrase "license applicant" meant that Congress did not intend to make the new procedural rights available to licensees. Defendant disagrees. As explained below, the American Rivers holding in no way undermines defendant's argument that the new rights were not made available to licensees.

Plaintiffs in American Rivers were environmental groups that had worked to achieve the inclusion of environmental conditions and prescriptions in license proceedings in which applications were pending because FERC had not yet issued a license. The conditions and prescriptions had been filed with FERC prior to November 17, 2005. Plaintiffs challenged the

---

[1] As noted in defendants *Motion to Dismiss*, since FERC issued the new license, Plaintiff PUD No. 1 has made several unsuccessful attempts to avoid its binding effect. First, the PUD sought to stay most of the license conditions, but FERC denied this request. Public Utility District No. 1 of Pend Oreille County, 113 FERC ¶ 61,166 (Nov. 17, 2005) (Order Denying Stay and Granting Extension of Time). Next, the PUD sought similar relief through a writ of mandamus filed in the District of Columbia Court of Appeals. The court issued an administrative stay for 47 days while it considered the merits of the PUD's motion, then denied the motion, and dissolved the stay. In re: Public Utility District No. 1 of Pend Oreille County, Washington, No. 05-1307, 2005 U.S. App. Lexis 20935 (D.C. Cir. Sept. 26, 2005). Finally, the PUD sought from FERC a six-month extension of license deadlines, in effect asking again for a stay of the license. FERC also denied this request. Public Utility District No. 1 of Pend Oreille County, P-2042-032 (Nov. 22, 2005) (Order Denying Extension of Time To Comply With License Conditions). Plaintiff's new license has been effective since issuance on July 11, 2005, and with the exception of the 47 days during the Court of Appeals' administrative stay, it has been binding on plaintiff, a licensee, since that date.

applicability provision because it provided an avenue by which the protective conditions and prescriptions might be modified or withdrawn prior to license issuance.  Plaintiffs argued that the rules were impermissibly retroactive, because they made the new procedures available in proceedings where conditions and prescriptions had been filed with FERC, even though they had not yet been included in a license order.  In addition, they argued that Congress intended the new procedures to be available only in license proceedings commenced after the effective date of the regulations, that is, November 17, 2005.  The government countered by arguing that the phrase "license applicant" meant any and all license applicants at any stage in the proceedings, as long as a license "ha[d] not been issued as of November 17, 2005."

Because plaintiffs in American Rivers had challenged the applicability provision as impermissibly retroactive, a claim not made by plaintiffs in the instant case, it was necessary for the court to analyze the claim under Landgraf v. USI Film Products, 511 U.S. 244 (1994).  As the Supreme Court explained in that case, when analyzing whether a particular statute is to operate retroactively, a reviewing court's "first task is to determine whether Congress has expressly prescribed the statute's proper reach." Landgraf, 511 U.S. at 280.  Continued the Court:

> If Congress has done so, of course, there is no need to resort to judicial default rules.  When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.

Id.  Thus, the court in American Rivers was required to decide, under the first step of the Landgraf analysis, whether the phrase "license applicant" included only future applications or

3

both future *and* pending applications. The Court concluded that Congress had not "expressly prescribe[d] whether the new law would apply to license proceedings that were pending when the statute was enacted." Order at 13. Accordingly, the Court turned to the second step in the Landgraf analysis, and it examined whether the provision in question impairs rights, increases liabilities, or imposes new duties. In the end, the court concluded that it did not, and thus the regulations were not impermissibly retroactive. Id. at 22.

In this case, the Court is not presented with such a narrow question, and the Landgraf factors are not implicated, because plaintiffs have not challenged the interim final rules as impermissibly retroactive. Here, the question is whether section 241 and its implementing regulations apply only to license applicants or to licensees as well. The Court need only satisfy itself that the plain meaning of the phrase "license applicant" does not include licensees. Because the holding in American Rivers was limited to the narrow question of section 241's applicability to pending and future license applications, the holding does not undermine or have any bearing on defendant's argument here that the new procedures are unavailable to licensees. Moreover, this argument was presented in the alternative to defendant's principal argument that the Court lacks jurisdiction because Congress has vested exclusive jurisdiction over license challenges in the Courts of Appeal. See FPA § 313, 16 U.S.C. § 825*l*(b).

Third, Ponderay quotes Judge Pechman's statement that "conditions and prescriptions that have not been included in a final FERC license cannot be regarded as completed events that give rise to the type of settled expectations protected under Landgraf." Letter at 2, quoting the Order at 13 (emphasis in Letter, not Order). Harkening back to its fallacious distinction between interim license orders and final license orders, Ponderay seizes on Judge Pechman's use of the

4

word "final" to describe a FERC license, notes that PUD No. 1's license in this case is the subject of a request for rehearing, and concludes that the recent decision in American Rivers therefore supports their view on applicability of the new provisions. Ponderay's premise, i.e., that its license application is still pending, is simply wrong, as defendant explains in its *Motion to Dismiss* at 21.

      Finally, Ponderay asserts that defendant has acted inconsistently "by arguing that there is a lack of subject matter jurisdiction in the instant action but not in American Rivers." Letter at 3. There is nothing inconsistent in how the government has defended these two cases. Although the interim final rules are at issue in both cases, each case has its own particular set of facts and each is based on distinct legal theories. In American Rivers, plaintiffs contended that the rules were impermissibly retroactive. In the instant case, plaintiffs contend in essence that the rules were not made retroactive enough so as to encompass pre-existing licensees. Moreover, in American Rivers, plaintiffs did not challenge an existing license or seek relief from conditions that had been included in a license, and thus the exclusive review provision at 16 U.S.C. § 825*l*(b) is not even applicable. This is so because section 825*l*(b), by its very terms, applies only to parties "aggrieved by an order issued by the Commission." In fact, plaintiffs in American Rivers had sought to sustain conditions in the hopes that they would one day be incorporated in a FERC license order.

      In contrast, plaintiffs here challenge license conditions. Although plaintiffs characterize the complaints not as challenges to the license conditions themselves, but instead as challenges to the interim final rules and to Interior's February 1, 2006 letter rejecting a request for a hearing, among other things, plaintiffs are certainly seeking relief from the license conditions.

See PUD No. 1's Complaint at ¶ 24 (referring to the "burdensome license conditions"); ¶26 (referring to the "unnecessary and unsupported conditions" as causing the "cost of project power" to "nearly double"). As defendant argued in its *Motion to Dismiss*, plaintiffs seek trial-type hearings to convince Interior that the conditions should be modified, and to ensure that such modifications are incorporated into an amended FERC license. *Motion to Dismiss* at 18. Under such circumstances, it is perfectly appropriate for defendant to argue that jurisdiction over the license challenges is exclusively vested in the courts of appeals.

November 15, 2006                                     Respectfully submitted,

                                                      SUE ELLEN WOOLDRIDGE
                                                      Assistant Attorney General
                                                      Environment & Natural Resources Division


                                                             /S/  JOHN S. MOST
                                                      JOHN S. MOST, Virginia Bar #27176
                                                      Trial Attorney, Natural Resources Section
                                                      Environment & Natural Resources Division
                                                      United States Department of Justice
                                                      P.O. Box 663
                                                      601 D Street Room 3536
                                                      Washington, D. C.  20004
                                                      (202) 616-3353, (202) 305-0274 (fax)

                                                      Counsel for Federal Defendant

CERTIFICATE OF SERVICE

      I hereby certify that on this 15th day of November, 2006, copies of the foregoing *Federal Defendant's Response to Plaintiff Ponderay Newsprint Company's October 11, 2006 Letter Regarding Recent Decision in Western District of Washington* were served by electronic filing on the following:

    James B. Vasile, Esq.
    DAVIS, WRIGHT, TREMAINE, LLP
    1500 K Street, N. W.  Suite 450
    Washington, D. C.  20005
    For Plaintiff PUD No. 1 of Pend Oreille County, Washington

    Eric J. Wycoff, Esq.
    PIERCE ATWOOD, LLP
    One Monument Square
    Portland, ME 04101
    For Plaintiff Ponderay Newsprint Company

    Phil Katzen, Esq.
    Riyaz A. Kanjii, Esq.
    KANJI & KATZEN, PLLC
    100 South King Street, Suite 560
    Seattle, Washington  98104
    For Intervenor-Defendant Kalispel Tribe of Indians

                                /S/   JOHN S. MOST
                                    JOHN S. MOST